**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Joseph A. Kanefield (No. 15838)
Brunn (Beau) W. Roysden III (No. 28698)
Drew C. Ensign (No. 25463)
James K. Rogers (No. 27287)
2005 N. Central Ave
Phoenix, AZ 85004-1592
Phone: (602) 542-8540
Joseph.Kanefield@azag.gov
Beau.Roysden@azag.gov
Drew.Ensign@azag.gov
James.Rogers@azag.gov
*Attorneys for Plaintiffs Mark Brnovich and the State of Arizona*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Brnovich, in his official capacity as Attorney General of Arizona, and the State of Arizona,<br><br>  Plaintiffs,<br>  v.<br>Joseph R. Biden in his official capacity as President of the United States; Alejandro Mayorkas in his official capacity as Secretary of Homeland Security; United States Department of Homeland Security; Troy Miller in his official capacity as Senior Official Performing the Duties of the Commissioner of U.S. Customs and Border Protection; Tae Johnson in his official capacity as Senior Official Performing the Duties of Director of U.S. Immigration and Customs Enforcement.<br><br>  Defendants. | No. 21-_____<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

# INTRODUCTION

1. This case presents circumstances that would have been unthinkable to our Founding Fathers. The Executive Branch has adopted an unconstitutional policy of *favoring* aliens that have unlawfully entered the United States over actual U.S. citizens, both native and foreign born, with the inalienable right to live here. In doing so, the Biden Administration respected the putative rights of those illegally entering the United States, while simultaneously showing contempt for the actual rights of U.S. citizens. This preference is unlawful and violates the Equal Protection Clause.

2. Specifically, the Biden Administration has disclaimed any COVID-19 vaccination requirement for unauthorized aliens, even those being released directly into the United States. Although the Department of Homeland Security ("DHS") offers vaccination to aliens it apprehends unlawfully entering the United States, it does not insist that they be vaccinated—even if they are being released into the U.S., rather than being immediately deported. Many refuse: reporting indicates that roughly 30% decline the offer of vaccination.[1] That is so even though COVID-19 is prevalent among migrants: "more than 18% of migrant families who recently crossed the border tested positive for COVID before being released by Border Patrol. Another 20% of unaccompanied minors tested positive for the virus."[2]

3. The upshot is that aliens unlawfully crossing into the United States are not bound by any federal vaccination requirement whatsoever. Their rights to choose to be vaccinated—*or not*—command the unadulterated respect of Defendants. Those of U.S. citizens: not so much. The same Administration that would not dream of infringing upon the right of unauthorized aliens to choose whether to be vaccinated (or not), has no equivalent regard for the rights of United States citizens.

---

[1] Michael Lee, "Biden's vaccination mandate doesn't include illegal immigrants," *Fox News* (September 9, 2021), https://www.foxnews.com/politics/biden-plan-for-forced-vaccinations-doesnt-include-illegal-immigrants (accessed September 10, 2021).

[2] *Id.*

4. Instead, the Biden Administration has announced multiple, unprecedented federal mandates requiring U.S. citizens to be vaccinated against COVID-19, upon pain of losing their jobs or their livelihood. In particular, on September 9, 2021, President Biden pronounced that his "patience is wearing thin"[3] with Americans who choose not to receive the COVID-19 vaccine. President Biden announced plans to require that all private employers with more than 100 employees impose COVID-19 vaccine mandates on their employees; that all federal employees and contractors receive the COVID-19 vaccine; and that virtually all health care providers receive the COVD-19 vaccine.

5. At the same time, driven by President Biden's campaign promises of lax immigration enforcement and loose border security, Defendants have created a crisis at the southern border leading to an unprecedented wave of unlawful immigration into the U.S. And even though about one in five aliens arriving in the United States without authorization are infected with COVID-19, Defendants let these aliens refuse vaccination, thus protecting aliens' freedom and bodily autonomy more than for American citizens.[4]

6. Indeed, as Table 1 (taken from Defendants' own website) shows, DHS encounters with unauthorized aliens are at their highest level in years, and continually increasing.

---

[3] Joseph Biden, Remarks at the White House (September 9, 2021), https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-biden-on-fighting-the-covid-19-pandemic-3/ (accessed September 10, 2021)
[4] *Supra*, note 1.

## Table 1: CPB Encounters With Unauthorized Aliens By Month



Source: https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters

7.      Although the precise contours of the federal vaccination mandates are not yet clear, the violation of the Equal Protection Clause is already evident and egregious. In a nutshell: unauthorized aliens will not be subject to *any* vaccination requirements even when released directly into the United States (where most will remain), while roughly a *hundred million* U.S. citizens will be subject to unprecedented vaccination requirements. This reflects an unmistakable—and unconstitutional—brand of favoritism in favor of unauthorized aliens.

8.      This discrimination in favor of unauthorized aliens violates the Equal Protection Clause. Notably, alienage is a suspect class that triggers strict scrutiny. More typically (and almost invariably previously), this discrimination was *against* aliens rather than for them. *See*, *e.g.*, *Graham v. Richardson*, 403 U.S. 365, 371, 375-376 (1971); *Application of Griffiths*, 413 U.S. 717, 721 (1973). But the same principle applies to favoritism *against* U.S. citizens in favor of aliens. Defendants' actions could never conceivably pass strict scrutiny.

9.      Moreover, even if only rational basis review applied, Defendants' discrimination is still unconstitutional. Given that, on information and belief, hundreds of thousands of aliens apprehended by Defendants are being released into the United States, and given Defendants' palpable indifference to whether these aliens are vaccinated, Defendants' simultaneous and unhealthy fixation as to whether U.S. citizens are vaccinated is irrational and indefensible. Defendants' policy of *absolutely excluding* unauthorized aliens from *all vaccination requirements*, while subjecting U.S. citizens to *multiple, unprecedented, sweeping, and intrusive* mandates is wildly unconstitutional and should not stand.

10.     Because Defendants' respect for individual rights vis-à-vis vaccination mandates appears to extend *only* to unauthorized aliens, and not U.S. citizens, their actions violate the Equal Protection Clause and should be invalidated. American citizens should

be entitled to treatment at least as favorable as what Defendants afford to unauthorized aliens. This Court should accordingly declare this preferential treatment unlawful and enjoin actions taken pursuant to it.

11. The illegality and incoherence of Defendants' policies is also apparent in their differential treatment among immigrants. Those who illegally enter the United States will not be subject to *any* vaccination mandate. In stark contrast, aliens who go through legal channels to obtain work visas, lawfully enter the United States, and are employed by a company with more than 99 workers, *will* be subject to the vaccination mandate. Defendants' policies thus discriminate between immigrants by unconstitutionally favoring those who *illegally* entered the United States over those who lawfully did so.

12. Defendants' unlawful actions here, however, are but one piece of a greater series of constitutionally improper actions: one of the greatest infringements upon individual liberties, principles of federalism, and separation of powers ever attempted by *any* administration in the history of our Republic. Defendants' ambitions are not limited to exceeding their delegated powers and violating the Constitution *merely* through unconstitutional discrimination alone. Instead, they intend *inter alia* to (1) violate the rights of citizens to bodily integrity, (2) violate principles of federalism, under which the federal government has only enumerated powers, by exercising the sort of general police power reserved *solely* to the States under the Tenth Amendment, and (3) unconstitutionally subvert Congress's authority by exercising quintessentially *legislative* powers, and in a manner that could never pass either (let alone both) Houses of Congress today—which is precisely why Defendants have no intent whatsoever to ask for legislative authorization to take such unprecedented actions. Under our Constitution, the President is not a king who can exercise this sort of unbridled power unilaterally. And even George III wouldn't have dreamed that he could enact such sweeping policies by royal decree alone.

13. Recognizing that the Federal Government lacks the authority to directly impose a mandate, even the President's own Chief of Staff retweeted that what the administration was planning for citizens (but not unauthorized aliens) would be the "ultimate work-around."

> **Matthew Hamilton** @MatthewDavidHa4
> WH Chief of Staff might regret this retweet.
>
> Courts consider the intent and purpose of policies and Klain just endorsed the notion that OSHA rule is a "work-around" to enact flagrantly illegal federal vaccine mandates.
>
> ⟲ Ronald Klain Retweeted
> **Stephanie Ruhle** ✓
> @SRuhle
>
> OSHA doing this vaxx mandate as an emergency workplace safety rule is the ultimate work-around for the Federal govt to require vaccinations.
>
> 4:25 PM · Sep 9, 2021 · Twitter for iPhone
>
> 9:30 PM · Sep 9, 2021
>
> ♡ 5K    ⚡ See the latest COVID-19 information on Twitter

Source: https://www.foxnews.com/politics/klain-vaccine-coronvirus-mandate

14. The inadvertent admission in the preceding paragraph makes all of the administration's actions constitutionally suspect. These other violations will be the subject of future challenges. Courts will have an opportunity to review and invalidate those forthcoming mandates as to private employers, federal contractors, federal employees, and health care workers. But this particular component—*i.e.*, the unconstitutional discrimination against U.S. citizens, lawful permanent residents, and aliens lawfully residing and working in the U.S.—is ripe for judicial review and invalidation now.

# PARTIES

15. Plaintiff Mark Brnovich is the Attorney General of the State of Arizona. He is the State's chief legal officer and has the authority to represent the State in federal court. Plaintiff State of Arizona is a sovereign state of the United States of America.

16. Arizona is one of four states on the United States-Mexico border. As a border state, it suffers disproportionately from immigration-related burdens.

17. Defendant Joseph R. Biden is the President of the United States. President Biden is sued in his official capacity.

18. Defendant Alejandro Mayorkas is the Secretary of Homeland Security. Secretary Mayorkas is sued in his official capacity.

19. Defendant United States Department of Homeland Security is a federal agency.

20. Defendant Troy Miller serves as Senior Official Performing the Duties of the Commissioner of U.S. Customs and Border Protection ("CBP"). Acting Commissioner Miller is sued in his official capacity.

21. Defendant Tae Johnson serves as Deputy Director and Senior Official Performing the Duties of Director of U.S. Immigration and Customs Enforcement. Acting Director Johnson is sued in his official capacity.

## JURISDICTION AND VENUE

22. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1346, and 1361.

23. The Court is authorized to award the requested declaratory and injunctive relief under 5 U.S.C. § 706, 28 U.S.C. § 1361, and 28 U.S.C. §§ 2201-2202.

24. Venue is proper within this District pursuant to 28 U.S.C. § 1391(e) because (1) Plaintiff resides in Arizona and no real property is involved and (2) "a substantial part of the events or omissions giving rise to the claim occurred" in this District.

## LEGAL BACKGROUND

25. The Supreme Court established in *Bolling v. Sharpe*, 347 U.S. 497, 498 (1954) that the Equal Protection Clause of the Fourteenth Amendment is incorporated against the federal government through the Fifth Amendment's Due Process Clause. *See also Sessions v. Morales*, 137 S. Ct. 1678, 1686 n.1 (2017) (the Supreme Court's "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment").

26. Aliens and citizens are protected classes in equal protection jurisprudence, triggering strict scrutiny when the government has a differential policy based on such classifications. *See Graham v. Richardson*, 403 U.S. 365, 371, 375-376 (1971); *Application of Griffiths*, 413 U.S. 717, 721 (1973). Generally, prior case law in this area has involved discrimination *against* aliens as a class. But the reverse preference in *favor* of authorized aliens is just as constitutionally suspect.

27. Under principles of federalism, the federal government has only enumerated powers and not the sort of general police power reserved *solely* to the States under the Tenth Amendment. *Printz v. United States*, 521 U.S. 898, 919 (1997) ("Residual state sovereignty was also implicit, of course, in the Constitution's conferral upon Congress of not all governmental powers, but only discrete, enumerated ones, Art. I, § 8, which implication was rendered express by the Tenth Amendment's assertion that '[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.'"). "The powers reserved to the several States will extend to all the objects which, in the ordinary course of affairs, concern the lives, liberties, and properties of the people, and the internal order, improvement, and prosperity of the State." The Federalist No. 45 (James Madison).

# FACTUAL BACKGROUND

28. On September 9, 2021, President Biden announced his "new plan to *require* more Americans to be vaccinated" by imposing "new vaccination *requirements*" that "*require* all employers with 100 or more employees, that together employ over 80 million workers, to ensure their workforces are fully vaccinated or show a negative test at least once a week." He also announced plans to "*require[e]* vaccinations" of "those who work in hospitals, home healthcare facilities, or other medical facilities — a total of 17 million healthcare workers." He further announced that he would "sign an executive order that will now *require* all executive branch federal employees to be vaccinated — all. And I've signed another executive order that will *require* federal contractors to do the same." And finally, he announced that he would "*require* all of nearly 300,000 educators in the federal paid program, Head Start program" to get vaccinated.[5]

29. Following President Biden's remarks, the White House released a webpage with further information about Defendants' "COVID Plan." The White House stated that "[t]he Department of Labor's Occupational Safety and Health Administration (OSHA) ... will issue an Emergency Temporary Standard (ETS) to implement" the requirement that "all employers with 100 or more employees to ensure their workforce is fully vaccinated or require any workers who remain unvaccinated to produce a negative test result on at least a weekly basis." The White House webpage also stated that the Centers for Medicare & Medicaid Services (CMS) would "require COVID-19 vaccinations for workers in most health care settings that receive Medicare or Medicaid reimbursement..., apply[ing] to approximately 50,000 providers and cover[ing] a majority of health care workers across the country."[6]

30. Upon information and belief, neither OSHA nor CMS have yet published any regulations regarding the planned vaccine mandates.

---

[5] *Supra* note 3 (emphasis added).
[6] https://www.whitehouse.gov/covidplan/ (accessed September 10, 2021)

9

31. On September 9, 2021, President Biden signed an Executive Order imposing on federal contractors "COVID [s]afety [p]rotocols" to be published at a later date by the Safer Federal Workforce Task Force.[7] The Executive Order did not explicitly make any provision for religious or medical exemptions to the "safety protocols." On information and belief and based on President Biden's prior remarks, Plaintiffs allege that the COVID-19 "safety protocols" for contractors will include a vaccine mandate.

32. On September 9, 2021 President Biden also signed an Executive Order requiring that "[e]ach agency shall implement ... a program to *require* COVID-19 vaccination for all of its Federal employees."[8] The Executive Order made no explicit provision for any religious or medical exemptions to the vaccination requirement.

33. Defendants have dismantled much of the country's border enforcement infrastructure, for example, 1) by imposing a near-moratorium on alien removals through a memorandum issued on January 20, 2021, and then through interim guidance issued by DHS on February 18, 2021; 2) by abandoning the Migrant Protection Protocols (MPP) requiring that aliens from third countries requesting asylum at the border with Mexico must wait in Mexico while awaiting adjudication of their asylum application[9]; and 3) by abandoning construction of already-planned and funded border wall and fencing. Defendants' actions have led to an enormous increase in attempted border crossings by eliminating disincentives to being caught.

---

[7] Exec. Order No. 14042, 86 Fed. Reg. 50985, "Ensuring Adequate COVID Safety Protocols for Federal Contractors," (Sept. 9, 2021).

[8] Exec. Order No. 14043, 86 Fed. Reg. 50989, "Requiring Coronavirus Disease 2019 Vaccination for Federal Employees," (Sept. 9, 2021).

[9] Defendants' attempt to abandon MPP was enjoined by a district court, and both the Fifth Circuit and U.S. Supreme Court have denied the federal government's requests for a stay pending appeal. *See Biden v. Texas*, No. 21A21, 2021 WL 3732667 (Aug. 24, 2021); *State v. Biden*, No. 21-10806, 2021 WL 3674780, at *1 (5th Cir. Aug. 19, 2021).

34. DHS's own statistics reveal the unprecedented surge of unlawful migration and the collapse of DHS's control of the border. July 2021 had the highest number of encounters in *decades*—"the highest monthly encounter number since Fiscal Year 2000."[10] DHS data show that the number of border encounters in July 2021 was more than five times the July 2020 and July 2018 numbers, and roughly 2.5 times July 2019.[11] DHS itself has admitted that it is "encountering record numbers of noncitizens ... at the border" that "have strained DHS operations and caused border facilities to be filled beyond their normal operating capacity."[12]

35. Secretary of Homeland Security Alejandro Mayorkas recently acknowledged that the Department of Homeland Security has lost control of the border, lamenting that the current situation is "unsustainable," that it "cannot continue," that the system is getting close to "breaking," and that "we're going to lose."[13]

36. In addition, Defendants' actions directly injure the State's quasi-sovereign "interest, independent of the benefits that might accrue to any particular individual, in assuring that the benefits of the federal system are not denied to its general population," as well as its "interest in securing residents from the harmful effects of discrimination." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ("Snapp")*, 458 U.S. 592, 607-09 (1982). Defendants' policies directly injure these interests, by subjecting Arizona residents to unlawful discrimination and denying them of the benefit of the Equal Protection Clause.

---

[10] Declaration of David Shahoulian (DHS Assistant Secretary for Border and Immigration Policy) at 1-2, *Huisha-Huisha v. Mayorkas*, No. 21-cv-100 (D.D.C. August 2, 2021)

[11] https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters

[12] *Supra*, note 10.

[13] Edmund DeMarche, Emma Colton, and Bill Melugin, "Mayorkas says border crisis 'unsustainable' and 'we're going to lose' in leaked audio," *Fox News* (August 13, 2021), https://www.foxnews.com/politics/mayorkas-leaked-audio-border.

37. Notwithstanding this crisis, on September 10, 2021, White House Press Secretary Jen Psaki confirmed that COVID-19 vaccinations are not required for unauthorized aliens at the border. Psaki refused, however, to explain why Defendants would require such vaccinations of American citizens and aliens authorized to work in the United States, but at the same time give aliens the right to choose whether to be vaccinated.[14]

38. Upon information and belief, Defendants also do not impose weekly COVID-19 testing requirements on aliens who have unlawfully entered the United States, as it plans to do for unvaccinated employees of private employers covered by the planned ETS from OSHA.

**CLAIM FOR RELIEF**

**Unconstitutional Preference For Unauthorized Aliens Over U.S. Citizens Regarding COVID-19 Vaccine Requirements**

**(Asserted Under the Equal Protection Clause of the Fourteenth Amendment, As Incorporated Against the Federal Government Under the Fifth Amendment)**

39. The allegations in the preceding paragraphs are reincorporated herein.

40. The Equal Protection Clause of the Fourteenth Amendment, which is incorporated against the Federal Government Under the Due Process Clause of the Fifth Amendment, guarantees equal protection of the laws and forbids the government from treating persons differently than similarly situated individuals on the basis of race, religion, national origin, or alienage. *Sessions v. Morales*, 137 S. Ct. 1678, 1686 n.1 (2017); *Bolling v. Sharpe*, 347 U.S. 497, 498 (1954).

41. Defendants' imposition of vaccine mandates on U.S. citizens and lawfully employed aliens, but not on unauthorized aliens at the border or already present in the

---

[14] Andrew Mark Miller, "Psaki stands by having employer vaccine mandate while illegal immigrants get a pass," *Fox News* (September 10, 2021), https://www.foxnews.com/politics/psaki-stands-by-employer-vaccine-mandate-while-illegal-immigrants-remain-unvaccinated-thats-correct (accessed September 10, 2021).

United States, constitutes discrimination on the basis of national origin and alienage in violation of the Equal Protection Clause.

42. Defendants' failure to articulate any justification for their differential, favorable treatment of unauthorized aliens demonstrates discriminatory intent.

43. Defendants' overt statements and expressive acts, including those of President Biden stating his "patience is wearing thin" with Americans who choose not to receive the COVID-19 vaccine and his Chief of Staff retweeting that the plan was the "ultimate work-around" further indicate discriminatory intent.

44. There is no rational basis for Defendants' differential, favorable treatment of unauthorized aliens. For relevant purposes, unauthorized aliens and U.S. citizens/lawful permanent residents are similarly situated.

45. Defendants' differential treatment between immigrants lawfully present in the United States and unauthorized aliens—with vaccination mandates only to apply to the former—is similarly unconstitutional and irrational.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request that this Court enter judgment:

A. Declaring unconstitutional, pursuant to 28 U.S.C. § 2201, Defendants' differential COVID-19 vaccination policies regarding (1) unauthorized aliens and (2) U.S. citizens/lawful permanent residents, including by declaring that Defendants do not have authority to impose the vaccination mandate on U.S. citizens and lawful permanent residents, let alone discriminate against them as compared to unauthorized aliens;

B. Enjoining Defendants from engaging in unconstitutional discrimination against U.S. citizens, lawful permanent residents, and lawfully present aliens, and specifically enjoining Defendants from imposing on U.S. citizens, lawful permanent residents, and lawfully present aliens any COVID-19 vaccination policies different from those

imposed on unauthorized aliens already present in the United States and on aliens illegally entering the United States;

C. Awarding Plaintiffs costs of litigation, including reasonable attorneys' fees, under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

D. Granting any and all other such relief as the Court finds appropriate.

RESPECTFULLY SUBMITTED this 14th of September, 2021.

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By: /s/ James K. Rogers
    Joseph A. Kanefield (No. 15838)
    Brunn W. Roysden III (No. 28698)
    Drew C. Ensign (No. 25463)
    James K. Rogers (No. 27287)

*Attorneys for Plaintiffs*