**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Joseph A. Kanefield (No. 15838)
Brunn (Beau) W. Roysden III (No. 28698)
Drew C. Ensign (No. 25463)
James K. Rogers (No. 27287)
2005 N. Central Ave
Phoenix, AZ 85004-1592
Phone: (602) 542-8540
Joseph.Kanefield@azag.gov
Beau.Roysden@azag.gov
Drew.Ensign@azag.gov
James.Rogers@azag.gov
*Attorneys for Plaintiffs Mark Brnovich and*
*the State of Arizona*

**WILENCHIK & BARTNESS PC**

Jack Wilenchik (No. 029353)
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, AZ 85004
Phone (602) 606-2816
JackW@wb-law.com
*Attorney for Plaintiff John Doe*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

Mark Brnovich, in his official capacity as Attorney General of Arizona; and the State of Arizona,

               Plaintiffs,

        v.

Joseph R. Biden in his official capacity as President of the United States; Alejandro Mayorkas in his official capacity as Secretary of Homeland Security; United States Department of Homeland Security; Troy Miller in his official capacity as Senior Official Performing the Duties of the Commissioner of U.S. Customs and Border Protection; and Tae Johnson in his official capacity as Senior Official Performing the Duties of Director of U.S. Immigration and Customs Enforcement; United States Office of Personnel Management; Kiran Ahuja in her official capacity as director of the Office of Personnel Management and as co-chair of the Safer Federal Workforce Task Force; General Services Administration; Robin

No. 2:21-cv-01568-MTL

**PLAINTIFFS' CORRECTED REPLY IN SUPPORT OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Carnahan in her official capacity as administrator of the General Services Administration and as co-chair of the Safer Federal Workforce Task Force; Office of Management and Budget; Shalanda Young in her official capacity as Acting Director of the Office of Management and Budget and as a member of the Safer Federal Workforce Task Force; Safer Federal Workforce Task Force; Jeffrey Zients in his official capacity as co-chair of the Safer Federal Workforce Task Force and COVID-19 Response Coordinator.

Defendants.

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

ARGUMENT ................................................................................................................. 3

I.  This Court Has Jurisdiction Over The State Plaintiffs' Claims ............................... 3

    A.  The State Has Standing To Challenge The Contractor Mandate ................... 3

    B.  The State Is Suffering Under Defendants' "Maximum Pressure" Campaign To Impose The Contractor Mandate .............................................. 4

    C.  This Is Not A Contract Dispute, And The Court Of Federal Claims Has No Jurisdiction Over This Case ...................................................................... 5

        1.  The Tucker Act Does Not Apply ........................................................ 6

            a)  Plaintiffs Do Not Seek Money Damages And Are Not Asking The Court To Decide Contractual Rights ..................................... 6

            b)  This Case Is Not A Bid Protest To Which 28 U.S.C. § 1491(b) Applies .......................................................................................... 7

        2.  Decisions From The Court Of Federal Claims, The Federal Circuit, And The Ninth Circuit Establish That The Court Of Federal Claims Lacks Jurisdiction Over Plaintiffs' Claims ............................................ 7

        3.  Sovereign Immunity Does Not Bar Plaintiffs' Claims Under The Procurement Act And the Procurement Policy Act ............................... 9

    D.  The Contract Disputes Act Does Not Apply To This Case ........................... 11

    E.  The Notice-And-Comment Requirements Of Section 1707 Apply To The SFWTF Guidance And The FAR Council's Deviation Contract Clause ...... 12

II.  This Court Has Jurisdiction Over Plaintiff Doe's Claims ....................................... 12

    A.  Plaintiff Doe's Claims Are Ripe ................................................................... 13

    B.  Plaintiff Doe's Claims Are Not Precluded By The Civil Service Reform Act ................................................................................................................. 13

III.  Plaintiffs Are Likely To Succeed On The Merits .................................................... 14

    A.  There Is No Nexus Between The Contractor Mandate And Economy And Efficiency ..................................................................................................... 14

    B.  Defendants Violated The Requirements Of 41 U.S.C. § 1707 By Failing To Publish For Notice-And-Comment The SFWTF Contractor Guidance .. 15

i

C.   The Vaccine Mandates Are Unlawful Under the EUA Statute.................... 15

    1.   Defendants' Own Response Admits That No FDA-Approved Vaccine Is Available, And Defendants' Mandates Therefore Violate The EUA Statute.................................................................................. 17

    2.   Plaintiffs Have A Cause Of Action Under The APA To Challenge The Vaccine Mandates' Violation Of The EUA Statute ..................... 17

D.   Defendants' Policy Of Mandating Vaccines For Citizens And Not Aliens Violates The Equal Protection Clause.......................................................... 18

E.   The Constitutional Rights To Bodily Integrity and To Choose Medical Treatment Include The Right To Refuse Defendants' Vaccine Mandates.... 19

F.   The Contractor Mandate Violates The Tenth Amendment ........................... 20

**INTRODUCTION**

Defendants are talking out of both sides of their mouths. On the one hand, they deny any imminence here to the State's claims and further argue that claims are unripe because, in their view, nothing will occur in the immediate future. But, in virtually the same breath, they argue that the challenged mandates are essential to addressing the COVID-19 pandemic *now*, and could not be possibly delayed even two weeks by a TRO without gravely injuring the public interest. Nor do they deny that the Employee Mandate deadline to get injected is *today*, the Contractor Mandate will be mandatory for all federal contracts as of November 14, 2021, and that the deadline for federal contractors to get injected is November 24, 2021, while simultaneously disclaiming any imminence. Because the Contractor and Employee mandates suffer from myriad legal deficiencies, this Court should enter a TRO and subsequent preliminary injunction.

As to standing, the State has demonstrated that Defendants are attempting to regulate State agencies *directly*, including the Attorney General's Office ("AGO"). Standing is generally "self-evident" where, as here, the complainant is "'an object of the action (or forgone action) at issue[.]'" *Sierra Club v. EPA*, 292 F.3d 895, 899-900 (D.C. Cir. 2002) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992)). Similarly, Plaintiff John Doe has standing in this court to challenge the Employee Mandate.

Moreover, Defendants' chief objection to the State's standing is that it is not "imminent" because AGO may not be compelled to accede to the Contactor Mandate "for several months" (Doc. 52 "Opp." at 16) and because Defendant Doe will have two weeks to get injected after his medical exemption is denied. (*Id*. at 11.) That is wrong: few cases can be adjudicated to final judgment in "several months," let alone two weeks, which would mean that federal courts would rarely be able to hear *any* pre-enforcement challenges. By Defendants' logic, it is hard to understand how election cases could be filed in odd-numbered years. But that simply is not the law. *See also*, *e.g.*, *NFIB v. Sebelius*, 567 U.S. 519 (2012) (challenge to ACA mandate *over 2 years* out).

But it is also simply wrong as a factual matter in this case. At the very same time the Department of Justice was drafting a brief to this Court contending (Opp. at 16) that an AGO contract renewal was "several months" away, the Equal Employment Opportunity Commission was pressuring AGO to sign a renewal *the very same day*. Exhibit 1, Second Browder Declaration ¶ 5. And if same-day ultimatums issued last week are insufficiently imminent to supply Article III standing, what would?

Defendants also fail to grapple *entirely* with the "special solicitude" that this Court is required to give the State in analyzing its standing under *Massachusetts v. EPA*, 549 U.S. 497 (2007). If Massachusetts had standing to challenge EPA's non-regulation of carbon dioxide emissions in a manner that might marginally affect its land loss due to sea-level rise *over the next century*, *id.* at 5222-23, Arizona necessarily has standing to challenge the federal government's attempt to impose a mandate on its agencies *last week*.

On the merits, the Contractor Mandate fails for essentially the same reasons as *Alabama Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021). There, as here, an agency has attempted to utilize a highly generalized grant of authority to impose requirements that were completely unprecedented and for which there was no evidence that Congress actually intended to delegate such authority (assuming it even possessed such police power itself). Just as in that case, the Procurement Act's grant of authority to promote efficiency in contracting is a "a wafer-thin reed on which to rest such sweeping power." *Id.* Further, as in *Alabama Realtors*, "[i]t is hard to see what measures [Defendants'] interpretation would place outside [Defendants'] reach." *Id.* at 2489.

Moreover, Defendants' efficiency rationale is particularly inappropriate as the Contractor Mandate is virtually certain to cause *in*efficiency in contracting. The mandate will cause resignations in an extremely tight labor market, which will only *increase* federal contracting costs. The Procurement Act is not a license for the Executive Branch to increase the costs of its affairs in order to achieve desired social ends. And the Employee mandate violates constitutional rights and the right to refuse under the EUA statute.

Defendants' assertion that Plaintiffs have not established irreparable harm is also devoid of merit. Among other problems: (1) the State has asserted *sovereign* injury, which is necessarily irreparable in nature, (2) the health side-effects of vaccine administrations coerced by the Contractor and Employee Mandates cannot be undone, and (3) although Federal Defendants contend (Opp. at 3) that the harms at issue here "could be remedied by money damages," they elide that the Federal Defendants have not waived sovereign immunity for damages for most or all of the claims here. *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 677 (9th Cir. 2021) (irrecoverable injuries are irreparable harm).

The balance of harms and public interest also favor resolution of the legality of the Contractor and Employee Mandates *before* Americans are forced to comply with them, and not *after* they have become moot. For all of these reasons, this Court should issue an immediate TRO, with a reasoned preliminary injunction order to follow. On November 5, this Court issued a preliminary injunction enjoining community colleges from imposing a COVID-19 vaccine mandate on nursing students whose religious exemption requests had been denied. *Thomas v. Maricopa County Community College District*, CV-21-01781 (D. Ariz. Nov. 5, 2021). And the Fifth Circuit issued an immediate stay of the OSHA Mandate two days after it was released. *BST Holdings, L.L.C. v. OSHA*, No. 21-60845, 2021 WL 5166656 (5th Cir. Nov. 6, 2021). A TRO and preliminary injunction are appropriate here.

## ARGUMENT

### I.    This Court Has Jurisdiction Over The State Plaintiffs' Claims

#### A.   The State Has Standing To Challenge The Contractor Mandate

Even in Defendants' own telling, the Arizona Attorney General's Office ("AGO") is only "several months" away from being affected. (Opp. at 16.) Since there is no way this case can be litigated to judgment in that time, Defendants' position seems to be that it can only be litigated after the Contractor Mandate has taken effect (and the case is moot). And that "too early" position is in tension with their assertions at the hearing that the State had asserted its claims *too* late. (10/26/21 Tr. at 16:6-20.) Defendants' view is Plaintiffs' claims are (1) too early *and* too late and (2) will not become ripe until they are likely moot.

3

As an initial matter, Defendants do not contest that they are attempting to apply the Contractor Mandate to *State* agencies. And where a plaintiff is "'an object of the action (or forgone action) at issue,'" standing is typically "self-evident." *Sierra Club*, 292 F.3d at 899-900 (quoting *Lujan*, 504 U.S. at 561). That makes perfect sense as a person or entity suffers injury when the government unlawfully attempts to regulate their conduct directly.

Furthermore, a regulatory burden typically satisfies the injury-in-fact requirement.[1] "For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'" *See Van v. LLR, Inc.*, 962 F.3d 1160, 1162 (9th Cir. 2020). And herethe State faces such additional costs, including costs to require and to track compliance with the mandate and increased costs to the State's health insurance plans for any employees who suffer adverse vaccine reactions, and Medicaid expenditures.

Federal Defendants' principal standing argument appears to be imminence. But as discussed below, Federal Defendants attempted to impose the Contractor Mandate on AGO *last week*. *Infra* at 6-7. States are entitled to "special solicitude" in establishing standing. *Massachusetts v. EPA*, 549 U.S. 497, 520 (2007). And in any event, these claims are far more imminent than in either *Massachusetts v. EPA* or *NFIB v. Sibelius*.

**B.   The State Is Suffering Under Defendants' "Maximum Pressure" Campaign To Impose The Contractor Mandate**

Defendants' Response makes no attempt to refute the allegations of the whistleblower information disclosed in Plaintiffs' supplemental submission (Doc. 48-2 ¶¶ 4-6). Plaintiffs are experiencing firsthand Defendants' scheme coordinated "at the highest levels" to "forc[e] thousands of contractors...under very aggressive and coercive tactics including using threats of lost business and being added to a list of non-[compliers] if they are not comfortable agreeing to the excessive and over reaching terms." *Id.* ¶ 4.

Indeed, that campaign was being pressed against the AGO even as Defendants were disclaiming imminence to this Court. The Division of Civil Rights Section ("DCRS") of the AGO is facing immediate demands to sign a contract renewal that requires "compliance

---

[1] *See, e.g.*, *Clark v. City of Lakewood*, 259 F.3d 996, 1007 (9th Cir. 2001) ("The Court routinely recognizes ... economic injury resulting from governmental actions ... as sufficient to satisfy the Article III 'injury in fact' requirement").

with...Executive Orders." (Doc. 48-3 ¶ 5.) Attached as Exhibit 1 is the Second Declaration of Rebekah Browder detailing the EEOC's latest contract renewal efforts. On November 2, it demanded that DCRS sign a renewal "for review and signature by the Director today." *Id.* And just the day before, EEOC confirmed that contract renewal might trigger a demand for compliance with the Contractor Mandate: "when the actual contracts are executed, the requirements of the [Contractor Mandate] Executive Order may take effect." *Id*. ¶ 3.

Defendants attempt to portray (Opp. at 16) GSA's demands to the Arizona State Retirement System ("ASRS") for contract modification as merely a "request[]," is belied by Defendants' own submission.[2] The potential harm suffered by ASRS is thus not something to be faced in 2027, but on November 14, after which ASRS will apparently lose any renewal opportunity. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 490 (2010) (Article III does not "require plaintiffs to 'bet the farm…'").

**C.   This Is Not A Contract Dispute, And The Court Of Federal Claims Has No Jurisdiction Over This Case**

Defendants' contention that this Court lacks jurisdiction because the Court of Federal Claims ("CFC") has exclusive jurisdiction lacks merit. Plaintiffs' argument is not "founded upon any express or implied contract," 28 U.S.C. § 1346(a)(2), but rather on Defendants' violation of the Constitution and statute. And even if it were theoretically possible to find statutory jurisdiction in the CFC, it is exceedingly doubtful that it, as an Article I court, could hear the constitutional and statutory claims at issue here, which are quintessential Article III "cases or controversies." This claim is nothing like the typical contract disputes for money damages that the CFC hears, in which the U.S. can condition

---

[2] The GSA memorandum describes the contract clause imposing the Contractor Mandate as being "required" for "[c]ontracts...for...a leasehold interest in real property" and orders that "[c]ontracting officers shall complete as many modifications as possible before November 14, 2021." (Doc. 52-2 at 150, 152). The GSA sample letter for contracting officers to send when "requesting" contract modification never actually uses the word "request," but instead describes the Contractor Mandate as a "requirement" and "strongly encourages" contractors "to accept" immediate "contract modification" because "[t]he modification is mandatory before GSA will renew, extend the period of performance of your contract, or exercise an option." *Id.* at 159-60. The letter emphasizes "the urgency of this issue" and imposing a 11/14 deadline for contract modification, the clear implication being that contracts will *not* be renewed unless modification is agreed to by then. *Id.*.

its waiver of sovereign immunity for damages in contract on parties voluntarily accepting an Article I court.  This State's claims here are under the Constitution and statutes.

### 1.    The Tucker Act Does Not Apply

Defendants contend that the Tucker Act, 28 U.S.C. §§ 1346 and 1491, requires Plaintiffs to sue in the CFC. Not so. The Tucker Act does not apply because "by its terms, [it] applies only to claims for money damages. It does not preclude review of agency action when the relief sought is other than money damages." *South Delta Water Agency v. Bureau of Reclamation*, 767 F.2d 531, 540 (9th Cir. 1985). The Tucker Act does not deprive this Court of jurisdiction because "the district court *does* have jurisdiction to hear claims for equitable relief which rest at bottom on statutory rights." *North Star Alaska v. United States*, 9 F.3d 1430, 1432 (9th Cir. 1993) (cleaned up) (emphasis added). Thus, even though "the Tucker Act impliedly forbids declaratory and injunctive relief and precludes a § 702 waiver of sovereign immunity in suits on government contracts," this is irrelevant here, because this case is not a "suit[] on government contracts." *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1485 (9th Cir. 1985) (cleaned up). Rather, this is a suit "seeking to enforce statutory [and constitutional] rights, not contractual ones." *Id.*

Under the Tucker Act, "[t]he jurisdictional issue...turns on the source of the rights upon which the plaintiff bases its claim." *North Star Alaska v. U.S.*, 14 F.3d 36, 37 (9th Cir. 1994). It divests jurisdiction when "the claim is that the government is following a different law from the one stated in the contract." *Id.* at 38 n.2. It does *not* divest jurisdiction when (as here) the claim is "the government is violating the law." *Id.*

### a)    Plaintiffs Do Not Seek Money Damages And Are Not Asking The Court To Decide Contractual Rights

There are two important factors courts examine in determining whether plaintiffs are invoking statutory and constitutional rights, as opposed to contractual rights: (1) whether plaintiffs seek "money damages" or equitable relief that "would have the actual effect of money damages," *North Side Lumber Co.*, 753 F.2d at 1485 n.5, and (2) whether a plaintiff is "asking the district court to decide what its contract rights are," such that the

alleged "obligation is in the first instance dependent on the contract." *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998). But Plaintiffs do not seek any such sort of money or quasi-monetary relief here, do plaintiffs seek a declaration of contract rights. Indeed, Plaintiffs' claims do not rest on any particular contract at all. [3]

> **b)** **This Case Is Not A Bid Protest To Which 28 U.S.C. § 1491(b) Applies**

Defendants' reliance on 28 U.S.C. § 1491(b) and their arguments about bid protests is apropos of nothing. Their arguments misconstrue Plaintiffs' claims. This is not a bid protest case, and Section 1491(b) only applies to such protests. When read in conjunction with Section 12(d) of the Administrative Dispute Resolution Act of 1996 ("ADRA"), Pub.L. No. 104–320, § 12(d), 110 Stat. 3870, Section 1491(b) vests in the Court of Federal Claims sole jurisdiction over "object[ions] to a solicitation by a Federal agency for bids or proposals for a proposed contract … or any alleged violation of statute or regulation in connection with a procurement…." 28 U.S.C. § 1491(b)(1).[4]

> **2.** **Decisions From The Court Of Federal Claims, The Federal Circuit, And The Ninth Circuit Establish That The Court Of Federal Claims Lacks Jurisdiction Over Plaintiffs' Claims**

Decisions from the Federal Circuit and the CFC also confirm that jurisdiction over

---

[3] Indeed, these principles are even clearer here than in other cases where the Ninth Circuit has held the Tucker Act not to apply, because in those other cases the plaintiffs specifically asserted breach of contract claims about specific alleged contracts. *See, e.g., Weinfield v. United States*, 8 F.3d 1415, 1418 n.2 (9th Cir. 1993); *North Side Lumber Co.*, 753 F.2d at 1484-86; *Laguna Hermosa Corp. v. Martin*, 643 F.2d 1376, 1379 (9th Cir. 1981) ; *Rowe v. United States*, 633 F.2d 799, 801 (9th Cir. 1980).

[4] Furthermore, even if there *were* any ambiguity to the meaning of Section 1491(b), Congress was crystal clear in elucidating that meaning. Congress amended the Tucker Act to add Section 1491(b) when it adopted ADRA in 1996, and the section heading of the relevant section of ADRA is "BID PROTESTS." ADRA § 12(a); *see, Ram v. I.N.S.*, 243 F.3d 510, 514 n.3 (9th Cir. 2001) (section headings and titles "may be used to interpret its meaning"). Section 12(c) of ADRA also describes it as applying to "bid protests." Plaintiffs' claims do not rest on any "procurement or ... proposed procurement," as required by Section 1491(b), but instead challenge Defendants' unlawful policy requiring all government contracts to impose broad and invasive vaccine mandates. This is the kind of claim over which district courts have jurisdiction, and Defendants offered no examples where jurisdiction was found lacking in a challenge to a general policy such as the Contractor Mandate. Section 1491(b) applies only to bid protests, which this case is not.

Plaintiffs' claims rests in district court. For example, the rule in the Federal Circuit is that "[c]hallenges to the validity of a regulation governing a procurement must be brought in federal district court under the [APA]," and not in the CFC under the Tucker Act. *Land Shark Shredding, LLC v. United States*, 842 F. App'x 589, 593 (Fed. Cir. 2021) (citation omitted) (district court proper for challenging validity regulation governing procurement).

The CFC has explained that district courts have "residual authority...to hear challenges to the validity of [procurement] regulations or statutes." *Automated Commc'n Sys., Inc. v. U.S.*, 49 Fed. Cl. 570, 576 (2001). The Ninth Circuit quoted and adopted this decision. *Fire-Trol Holdings v. U.S. Forest Serv.*, 209 F. App'x 625, 627 (9th Cir. 2006).

A "district court should not refuse jurisdiction over an equitable claim on the ground that there is an adequate remedy at law unless there is a forum in which the claim for monetary damages can be heard." *Marshall Leasing, Inc. v. United States*, 893 F.2d 1096, 1100–01 (9th Cir. 1990) (citing *Bowen v. Massachusetts*, 487 U.S. 879, 905-7 (1988)) (holding that district court, and not claims court, had jurisdiction over equitable remedies). Because Plaintiffs seek only injunctive relief, the CFC has no jurisdiction. The CFC has stated that the types of claims asserted by Plaintiffs, which do not seek monetary damages, "fall[] outside the purview of [the] court's jurisdiction" because its jurisdiction "to entertain an action is *dependent upon a claim for money presently due*." *Vanalco, Inc. v. United States*, 48 Fed. Cl. 68, 76 (2000) (cleaned up) (emphasis added); *Wilkins v. United States*, 279 F.3d 782, 786–87 (9th Cir. 2002). Thus, for example, the CFC "repeatedly has refused jurisdiction over any fifth amendment due process claim, reasoning that the due process clause, unlike the just compensation clause, does not mandate compensation by the United States." *Marshall Leasing, Inc.*, 893 F.2d at 1101 (collecting cases) (district court has jurisdiction over equitable claims because Claims Court "has held that it has no jurisdiction over" claims for equitable remedies") *Id*. This result is even more proper here, where Plaintiffs do not seek *any* monetary damages, but only equitable relief. If this Court were to transfer this case to the CFC, Plaintiffs' claims

would almost certainly be dismissed there.[5]

### 3. Sovereign Immunity Does Not Bar Plaintiffs' Claims Under The Procurement Act And the Procurement Policy Act

Courts have already squarely rejected Defendants contention that sovereign immunity bars claims like the Plaintiffs'. In *Chamber of Commerce of U.S. v. Reich*, the appellants brought a challenge under the Procurement Act, the Constitution, and the National Labor Relations Act against an executive order from President Clinton. 74 F.3d 1322 (D.C. Cir. 1996). The government made the same arguments it makes here about no waiver of sovereign immunity; no "cause of action under ... the APA" because "appellants' challenge is directed at the President's statutory authority to issue the Executive Order"; and "that the President's actions are not reviewable" because "the statute in question commits the decision to the discretion of the President." *Id.* at 1326 (cleaned up).

The D.C. Circuit squarely rejected all of these arguments, holding that even "[i]f a plaintiff is unable to bring his case predicated on either a specific or a general statutory review provision, he may still be able to institute a non-statutory review action." *Id.* at 1327. Thus, "courts will 'ordinarily presume that Congress intends the executive to obey its statutory commands and, accordingly, that it expects the courts to grant relief when an executive agency violates such a command.'" *Id.* at 1328 (quoting *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 681 (1986)). "[N]othing in the subsequent enactment of the APA ... repeal[ed] the [doctrine allowing] review of *ultra vires* actions .... [W]hen an executive acts *ultra vires*, courts are normally available to reestablish the limits on his authority." *Id.* (citation omitted). This is so even if it is a subordinate "acting at the behest of the President ... 'for courts have power to compel subordinate executive officials to disobey illegal Presidential commands.'" *Id.*

*Chamber of Commerce* also rejected virtually identical sovereign immunity claims as here, explaining that Section 702 of the "APA's waiver of sovereign immunity applies

---

[5] Indeed, the federal government has pulled that very trick, arguing in district court for jurisdiction in the CFC, and then, after transfer, arguing against CFC jurisdiction and achieving dismissal there. *See Indian Wells Valley Metal Trades Council v. United States*, 553 F. Supp. 397, 399 (Cl. Ct. 1982).

to any suit whether under the APA or not." *Id.*; *accord The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989).

Furthermore, *Chamber of Commerce* held that sovereign immunity could not bar the suit because "if the federal officer, against whom injunctive relief is sought, allegedly acted in excess of his legal authority, *sovereign immunity does not bar a suit*." 74 F.3d at 1329 (emphasis added)(collecting cases). Indeed, at oral argument in *Chamber of Commerce*, DOJ conceded that "a cause of action would lie and sovereign immunity be waived if the President issued an Executive Order under the Procurement Act that violated or caused others to violate an express prohibition of that Act or another statute." *Id*. at 1330. That is *this* case. And the D.C. Circuit not only agreed, but also expanded this principle to apply even when an EO "deprives a contractor of a right expressly or impliedly granted by another statute" or a statutory right created by a court interpretation. *Id.*

Under Defendants' interpretation of the Procurement Act and Procurement Policy Act, there would be "no judicially enforceable limitations on presidential actions ... so long as the President claims that he is acting pursuant to the Procurement Act in the pursuit of governmental savings." *Id*. at 1332. Because this interpretation "would permit the President to bypass scores of statutory limitations on governmental authority," the D.C. Circuit "therefore reject[ed] it." *Id*. This Court should too.[6]

Additionally, Plaintiffs also have a cause of action under the APA against all Defendants except President Biden. Defendants are correct the Supreme Court has held the President himself is not subject to APA judicial review. *See Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992). But that does not immunize *agency* actions from review simply because they are authorized by the President. As the D.C. Circuit has explained, "*Franklin* is limited to those cases in which the President has final constitutional or statutory responsibility for the final step necessary for the agency action directly to affect

---

[6] *Chamber of Commerce* remains good law and has been repeatedly cited with approval in this Circuit. *E.g.*, *Sierra Club v. Trump*, 963 F.3d 874, 891–92 (9th Cir. 2020), *vacated and remanded on other grounds, Biden v. Sierra Club*, No. 20-138, 2021 WL 2742775 (U.S. July 2, 2021); *Hawaii v. Trump*, 878 F.3d 662, 680, 682 (9th Cir. 2017), *rev'd and remanded on other grounds*, 138 S. Ct. 2392, 201 L. Ed. 2d 775 (2018).

the parties." *Public Citizen v. U.S. Trade Representative*, 5 F.3d 549, 552 (D.C. Cir. 1993).

That the President set the stage and provided the impetus and explanation for the agency's action does not immunize that resulting agency action from judicial review. The agency Defendants here have all engaged in final agency action implementing or imposing the Contractor and Employee mandates, which have caused harm to Arizona and Plaintiff Doe. (Doc. 14 "FAC", ¶¶ 104-7.) For example, Defendant SFWTF issued the guidance that implements the mandates. And Defendant GSA has demanded Arizona agencies implement the Contractor Mandate. Implementing an executive order does not immunize agency Defendants from judicial review. *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 770 (9th Cir. 2018). And both GSA and SFWTF are "agenc[ies]" under the APA. *See* 5 U.S.C. § 701(b)(1) (defining "agency" broadly); *Soucie v. David*, 448 F.2d 1067, 1073 (D.C. Cir. 1971) ("[T]he APA...confers agency status on any administrative unit with substantial independent authority in the exercise of specific functions...."). If this Court deems it necessary, Plaintiffs are willing to amend the FAC to add every federal agency (such as the EEOC) that has made, or makes during the pendency of this lawsuit, a demand the State (or one of its agencies or political subdivisions) impose a Contractor Mandate.

**D.   The Contract Disputes Act Does Not Apply To This Case**

Contrary to Defendants' suggestion (Opp. at 17), the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 7101-7109, does not apply to this case. The CDA "assumes the existence of a traditional contractual cause of action." *In re Remington Rand Corp.*, 836 F.2d 825, 831 (3d Cir. 1988). Plaintiffs do not assert any contract causes of action. Indeed, Plaintiffs are not suing about any specific contract. It is thus irrelevant that the ASRS and DCRS contracts require resolution of contract disputes through the CDA.

Furthermore, "the CDA only applies to specified categories of procurement contracts." *Tritz v. USPS*, 721 F.3d 1133, 1139 (9th Cir. 2013). For example, the CDA does not apply to lease contracts. *See, e.g.*, *United States v. Triple A Mach. Shop*, *Inc.*, 857 F.2d 579, 585 (9th Cir. 1988) (affirming district court jurisdiction over lease dispute between Navy and business). As Plaintiffs' evidence demonstrates, (Doc. 48-2 ¶¶ 4-6; Doc 48-4 ¶¶

11

3-5), one of Defendants' main targets in their "maximum pressure" campaign to impose the Contractor Mandate has been through lease agreements that fall outside the CDA.

### E.   The Notice-And-Comment Requirements Of Section 1707 Apply To The SFWTF Guidance And The FAR Council's Deviation Contract Clause

Two district courts have rejected Defendants' argument that claims asserted under the Procurement Policy Act must be brought in the Court of Federal Claims. In a case involving a general challenge to a class deviation (but not a challenge to any specific procurement decision), the District of Colorado found that the court had jurisdiction because "the Plaintiffs' Prayer For Relief here does not specifically seek injunctive relief specific to ... existing contracts with the" government and that the court therefore had "subject-matter jurisdiction to consider the Plaintiffs' general APA challenges ..., even if the Court might not have jurisdiction to grant any relief to the Plaintiffs with regard to specific contracts." *Bayaud Enterprises, Inc. v. U.S. Dep't of Veteran's Affs.*, 440 F. Supp. 3d 1230, 1238 (D. Colo. 2020); *see also Munitions Carriers Conf., Inc. v. United States*, 932 F. Supp. 334, 338 (D.D.C. 1996), *rev'd on other grounds*, 147 F.3d 1027 (D.C. Cir. 1998) (government's failure to follow Procurement Policy Act's notice and comment requirements creates the same type of injury and standing as would a failure to follow the APA's notice and comment requirements). Thus, because under the APA, "agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review," Defendants' failure to follow the Procurement Policy Act subject them to jurisdiction in this court. 5 U.S.C. § 704.

## II.   This Court Has Jurisdiction Over Plaintiff Doe's Claims

The whole purpose of a TRO and a PI is "to preserve the relative positions of the parties." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Yet Defendants ask this Court to completely ignore the status quo and force Plaintiff Doe to wait to challenge the Employee Mandate until it is too late.

Injection of the vaccine is irreversible. Once it is in Plaintiff Doe's body, it will never come out. And Defendants have refused to commit to any forbearance in imposing

the Employee Mandate while it is challenged in court. (*See* Doc. 48 at 3-4 and Doc. 48-1.)

**A.  Plaintiff Doe's Claims Are Ripe**

Contrary to Defendants' suggestion, John Doe has made the necessary allegations with the necessary particularity for this Court to find standing: that Defendants are trying to force Plaintiff Doe to take the COVID-19 vaccine, that "nearly all [medical exemption] requests are being denied," and that, therefore, Plaintiff Doe's exemption request "will almost certainly be denied," thus subjecting him to deprivation of his constitutional and statutory rights. (FAC ¶¶ 27, 107.) This is enough for the Court to find standing.

In any event, Defendants' protestations about lack of evidence ring hollow. It has been widely reported that federal agencies are denying nearly all medical and religious exemption requests to the Employee Mandate. *See* shorturl.at/nuELZ. Indeed, the exemption approval rate is a fact is within *Defendants'* possession, and not Plaintiffs'. It is telling that Defendants have chosen not to disclose this information and instead complain about lack of evidence.

Furthermore, SFWTF guidance requires that employee discipline be imposed starting two weeks after an employee is commanded to receive the vaccine. (*See* Doc. 14-2 at 9, 13-14.) Thus, under Defendants' proposed standard, Plaintiff Doe must wait until Defendants' threatened harm looms at the doorstep before he can seek relief, and only then would be able to file a second TRO motion. And then, he would have only two weeks to brief fully such a motion and have it adjudicated (and appeal too, if needed). Because Defendants could deny Doe's exemption request at any moment and seek almost instant compliance with the Employee Mandate, Doe has standing and his claims are ripe.

**B.  Plaintiff Doe's Claims Are Not Precluded By The Civil Service Reform Act**

Nor are Plaintiff Doe's claims precluded by the Civil Service Reform Act ("CSRA"). As Defendants are forced to acknowledge (Opp. at 13 n.6), in the Ninth Circuit has held federal employees may seek equitable remedies in district court constitutional claims. *Am. Fed'n of Gov't Emps. Loc. 1 v. Stone*, 502 F.3d 1027, 1039 (9th Cir. 2007). Defendants claim that Plaintiff Doe could challenge the employee mandate through the CRSA (Opp. at 14), yet Defendants fail to explain how the CRSA would provide a

procedural avenue to abrogate the SFWTF employee guidance commanding that employees get injected or get fired. In *Collins v. Bender*, the Ninth Circuit rejected the federal government's argument that a warrantless search of a federal employee's home was a "personnel action" under the CRSA and thus precluded the employee's suit for relief in federal court because "'personnel action' could not be defined so broadly." 195 F.3d 1076, 1080 (9th Cir. 1999). So too here. Defendants' unconstitutional and unlawful requirement that all federal employees receive irreversible injections into their bodies does not qualify as a "personnel action" under the CRSA. For similar reasons, Plaintiff's EUA claims are also properly heard in this Court. As explained *infra* at 22-25, Defendants' vaccine mandates are unlawful under the EUA statute, and Plaintiff Doe has a cause of action under the APA to challenge them.

## III.   Plaintiffs Are Likely To Succeed On The Merits

Defendants' vaccine mandates are unprecedented. Never has the federal government attempted to impose sweeping vaccine mandates, not even when faced with far deadlier diseases, such as smallpox. "[S]ometimes the most telling indication of a severe constitutional problem is the lack of historical precedent[.]" *NFIB*, 567 U.S. at 550 (cleaned up) (Roberts, C.J.). Here, there are not only "severe constitutional problems", but significant statutory violations as well. Plaintiffs are likely to succeed on the merits.

### A.   There Is No Nexus Between The Contractor Mandate And Economy And Efficiency

Defendants claim their mandate is "aimed at ... preventing disruptions in the provision of government services by federal contractors," (Opp. at 1) yet they fail to rebut multiple real-world examples provided by Plaintiffs of how the Contract Mandate has caused, and will cause, great disruption. (*See* Doc 14-1 ¶¶ 83-85; Doc 34 at 31-33.) Indeed, it is puzzling that Defendants allege that Plaintiffs' claimed harms are too "vague and speculative," (Opp. at 2), yet Defendants have failed to offer *any* justification other than bare, conclusory statements unsupported by any evidence.

COVID-19 vaccination has even less to do with the Procurement Act than evictions had to do with the public health statute at issue in *Alabama Association of Realtors*, 141

14

S. Ct. at 2489. Here, as there,   "[i]t is hard to see what measures [Defendants'] interpretation would place outside [Defendants'] reach" if it were upheld. *Id.* at 2489. And this Administration's shameless quest to exercise ever-great power, regardless of the law, calls out to be addressed.[7]

**B.  Defendants Violated The Requirements Of 41 U.S.C. § 1707 By Failing To Publish For Notice-And-Comment The SFWTF Contractor Guidance**

The SFWTF contractor guidance is a major change to procurement policy, which, by Defendants' own estimate, will affect millions of people and wide swathes of the U.S. economy. (FAC ¶¶ 83-85.) Defendants' only substantive argument on the Procurement Policy Act is that Act does not apply to the perfunctory determination made by the OMB director about the economy and efficiency of the Contractor Mandate. Plaintiffs' Procurement Policy Act Claim, however, is not centered on the OMB director's determination. Plaintiffs' Procurement Policy Act claim in this case (which is clearly spelled out in paragraphs 129 to 134 of the FAC) is focused on Defendants' violation of the notice-and-comment requirements of Section 1707 **by failing to publish the SFWTF guidance** in the Federal Register for a 60-day notice-and-comment period. (FAC ¶¶ 129-34.) Additionally, another major violation of the Procurement Policy Act is the FAR Council's Vaccine Mandate contract clause issued on October 8, 2021. (FAC ¶ 76.)

Defendants appear to concede that the SFWTF contractor guidance is subject the Procurement Policy Act. And because Defendants violated its notice-and-comment requirements, the Contractor Mandate "may not take effect." 41 U.S.C. § 1707(a).

**C.  The Vaccine Mandates Are Unlawful Under the EUA Statute**

Defendants claim that the EUA statute only requires that vaccine recipients be informed of the right to refuse the vaccine, but that even so, Defendants may still require that their employees and contractors actually receive an EUA-approved vaccine. (Opp. at

---

[7] Spencer Kimball, "White House tells businesses to proceed with vaccine mandate despite court-ordered pause," CNBC, Nov. 8, 2021, https://www.cnbc.com/2021/11/08/biden-vaccine-mandate-white-house-tells-business-to-go-ahead-despite-court-pause.html (noting White House efforts to urge businesses to ignore the Fifth Circuit's recent stay of OSHA vaccine mandate).

31.) However, Defendants do not even attempt to refute Plaintiffs' arguments based on legislative history, prior agency interpretation of the statute, and canons of construction.

Indeed, Defendants' current position contradicts acknowledgements made by key career health officials that the EUA statute foreclosed imposition of a federal vaccine mandate. In October 2020, Dr. Amanda Cohn, Senior Advisor for Vaccines at the CDC, "reminded everyone that under an EUA, vaccines are not allowed to be mandatory. Therefore, early in the vaccination phase individuals will have to be consented and cannot be mandated to be vaccinated." *See* shorturl.at/vzBQ1.

By its own terms, the EUA statute applies to "persons who carry out any activity pursuant to an authorization under this section." 21 U.S.C. § 360bbb-3(l). Defendants provide a string cite of cases that found that non-federal employers may impose an EUA vaccine requirement. In those cases, these non-federal employers were not actually administering the EUA vaccine or otherwise carrying out activities under the EUA statute. Defendants point to no authority, however, finding that the federal government itself may ignore the commands of the EUA statute.

Similarly, Defendants rely on a Department of Justice Office of Legal Counsel ("OLC") opinion about the applicability of the EUA statute. 45 Op. O.L.C. __, 2021 WL 3418599. That OLC opinion, however, was based largely on the conclusion that Congress, through the EUA statute, did not intend to prevent all private entities, even those not subject to the EUA statute, from imposing a vaccination requirement. While that conclusion may have statutory support for entities not carrying out an activity under an EUA (and who are thus not subject to the EUA statute), it lacks support for federal agencies and public or private entities carrying out an activity authorized under an EUA. Moreover, the OLC is part of the Executive Branch/DOJ, and its conclusion that current Administration policy is lawful is hardly the opinion of a disinterested, apolitical actor. Moreover, OLC acknowledges that "its "reading of section 564(e)(l)(A)(ii)(lll) does not fully explain why Congress created a scheme in which potential users of the product would be informed that they have 'the option to accept or refuse' the product." *Id*. at 5, 6.

Defendants' reading of the EUA statute is unreasonable and illogical. Their interpretation of the EUA statute would lead to the absurd result that the very same federal government that had issued an EUA on the basis that recipients have "the option to accept or refuse administration of the product," 21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(III), could also impose an absolute requirement to take the vaccine or lose one's livelihood.

### 1. Defendants' Own Response Admits That No FDA-Approved Vaccine Is Available, And Defendants' Mandates Therefore Violate The EUA Statute

Defendants acknowledge that there is no FDA-approved Pfizer vaccine available, but then argue that this is no problem because the FDA has determined the EUA version is close enough. (Opp. at 30.) "BLA-compliant" is the term they use to obfuscate the fact that the vaccine is not FDA-approved and that compositional differences exist. Indeed, while never refuting Plaintiffs' contention that there is at least one compositional difference between the EUA and FDA-approved versions of the Pfizer vaccine (Mot. at 21 n.13), Defendants *themselves admit* (at 30 n.15) that there are *additional compositional differences* between the two versions of the vaccine. [8]

### 2. Plaintiffs Have A Cause Of Action Under The APA To Challenge The Vaccine Mandates' Violation Of The EUA Statute

Defendants are similarly incorrect in asserting that Plaintiffs do not have a cause of action to enforce the EUA statute. As explained *supra* at 14, 5 U.S.C. § 702 "is an unqualified waiver of sovereign immunity in actions seeking nonmonetary relief against legal wrongs for which governmental agencies are accountable ... regardless of whether [the government action] fell within the technical definition of 'agency action' contained in the APA." *The Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989). And in the FAC, Plaintiffs alleged that "this Court has jurisdiction under 5 U.S.C. §§ 702–703 and ... is authorized to award the requested declaratory and injunctive relief

---

[8] Additionally, Defendants' own evidence supports Plaintiffs' contention that no FDA-approved COVID-19 vaccines are currently available. Peter Marks stated that "FDA is exercising its enforcement discretion with respect to certain labeling requirements, in that FDA is not taking enforcement with respect to vials that bear the EUA label." (Doc. 52-1 at ¶13.) Whatever the limits of FDA's power of enforcement discretion, however, it does not extend to being able to change the requirements of the law affirmatively. That purported "enforcement discretion" does not prevent other parties from challenging actions as "not in accordance with law" under the APA. 5 U.S.C. § 706.

17

under 5 U.S.C. §§ 702 and 706," (FAC ¶¶ 42-43.)

### D.   Defendants' Policy Of Mandating Vaccines For Citizens And Not Aliens Violates The Equal Protection Clause

Defendants' response to Plaintiffs' Equal Protection Claim is unavailing. As an initial matter, Defendants offer only a putative rational basis for the Contractor Mandate itself—not the differential treatment that is the core of Plaintiffs' claim. (Opp. at 38.) Because Defendants do not offer *any* actual justification for the Executive Branch's *differential treatment* of unauthorized aliens versus U.S. citizens and lawful permanent residents, their actions necessarily fail under *any* standard of review. If this were a substantive due process challenge to the Contractor Mandate, the government's defense of the policy itself would be the responsive argument. But because this is an equal protection challenge to differential treatment, the government was required to offer some justification for that discrimination. Instead it offers none.

Defendants also rely (Opp. at 20) on an inapposite case, *Vasquez v. City of Los Angeles*, 349 F.3d 634 (9th Cir. 2003), to argue that the only relevant basis for group comparison is individuals in similar jobs. But *Vasquez* is an employment law case brought under Title VII that does not address the Equal Protection Clause *at all*. *Id*. at 638.

Next, Defendants incorrectly argue that the relevant Executive Orders do not contain any suspect classifications. However, they do contain a suspect classification: they apply only to citizens and authorized aliens. It is unlawful for unauthorized aliens to work in the United States. The United States can be presumed to follow its own laws and not employ unauthorized aliens.[9] Contractors, therefore, do not employ unauthorized aliens either. The challenged Mandates here thus only apply to citizens and authorized aliens.

Indeed, Defendants have publicly admitted they made a conscious choice not to require vaccination of unauthorized aliens while promulgating numerous mandates that

---

[9]   In 1996 President Bill Clinton signed Executive Order 12989, prohibiting federal contractors from employing aliens who are not authorized to work in the United States. 61 FR 6091 (Feb. 13, 1996). President George W. Bush amended that Executive Order in 2008 to also require that federal contractors use DHS's E-Verify system to authorization to work in the United States. Executive Order 13465, 73 FR 33285 (June 6, 2008).

apply only to U.S. citizens and permanent residents. (FAC ¶ 20; Doc 34 at 9-12.) Defendants have therefore necessarily used a suspect classification for drawing distinctions. That mandates application of strict scrutiny. *See Graham v. Richardson*, 403 U.S. 365, 371, 375-376 (1971); *Application of Griffiths*, 413 U.S. 717, 721 (1973). Defendants failed to even argue how their differential treatment of citizens and unauthorized aliens "advance[s] a compelling state interest by the least restrictive means available." *Bernal v. Fainter*, 467 U.S. 216, 219 (1984). Plaintiffs are thus likely to succeed on the merits of their Equal Protection Clause. [10]

### E.   The Constitutional Rights To Bodily Integrity and To Choose Medical Treatment Include The Right To Refuse Defendants' Vaccine Mandates

The Employer Mandate violates substantive due process, as it infringes fundamental rights and does not pass strict scrutiny. Defendants deny that the Employee Mandate "implicates any recognized 'right to refuse medical treatment' or 'right to bodily integrity.'" (Opp. at 32.) Defendants' only support for this assertion is to factually distinguish considerations of these recognized rights by the Supreme Court. *See Cruzan ex rel. Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 281 (1990); *Washington v. Harper*, 494 U.S. 210, 229 (1990). That the Supreme Court has not decided a vaccine mandate case specifically in the context of the rights "to refuse medical treatment" and "bodily integrity" in no way obviates those rights. And binding Ninth Circuit precedent confirms that the liberty interests at issue here are fundamental. *Coons v. Lew*, 762 F.3d 891, 899 (9th Cir. 2014) (characterizing Supreme Court precedent as recognizing "fundamental rights to determine one's own medical treatment … to refuse unwanted medical treatment, … and

---

[10] But even if only a rational basis review applied, Plaintiffs are still likely to prevail. As explained above, Defendants have not offered any rationale for the differential treatment at issue here, and their policies thus fail regardless of the standard of review.

Defendants also completely ignore Plaintiffs' argument that all people are similarly situated here for purposes of disease prevention/vaccine mandates, because immigration status is completely irrelevant to whether a person is likely to become infected with coronavirus. The virus is an equal opportunity infector, which Defendants completely ignore. Defendants similarly ignore entirely Plaintiffs' argument that the decision to require vaccination of federal employees and contractors, but not of unauthorized aliens, is being made at the same level of actual decision making (i.e., the President and EOP).

Thus, under any review, Plaintiffs are likely to succeed on the merits on their Equal Protection Clause claim.

… a fundamental liberty interest in medical autonomy"). [11]

## F.   The Contractor Mandate Violates The Tenth Amendment

"[T]he police power of a *state*" includes, above all, the authority to adopt regulations seeking to "protect the public health," including the topic of mandatory vaccination. *Jacobson*, 197 U.S. at 24-25 (emphasis added); *see also Zucht v. King*, 260 U.S. 174, 176 (1922) ("[I]t is within the police power of a *state* to provide for compulsory vaccination") (emphasis added). The States "did not surrender" these powers "when becoming...member[s] of the Union." *Jacobson*, 197 U.S. at 25. Thus, in our constitutional order, "[t]he safety and the health of the people...are, in the first instance, for [the States] to guard and protect." *Id*. at 38. And under Arizona law, the Contractor Mandate is unlawful. *See* FAC, ¶ 57.

By seeking to impose their vaccine mandate on millions of state and private employees who comprise roughly one-fifth of the national workforce, Defendants usurp powers that belong to the States. As far as Plaintiffs can tell, the federal government has *never* attempted to mandate vaccines on state and private employees—much less millions of them. Defendants' superficial treatment of Plaintiffs' federalism claims cannot hide the "severe constitutional problem[s]" with their unprecedented national vaccine mandates, *NFIB*, 567 U.S. at 549 (2012) (Roberts, C.J.), especially where, as here, Defendants' unprecedented mandate "invades the province of state sovereignty reserved by the Tenth Amendment." *New York v. United States*, 505 U.S. 144, 155 (1992).[12]

---

[11] Jacobson is the white elephant in this analysis, upholding Cambridge, Massachusetts' smallpox vaccination mandate 116 years ago against the challenge that it violated the Fourteenth Amendment. Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11 (1905). Even assuming a substantive due process claim was disposed of by a case before the modern development of substantive due process, Jacobson still only stands for the proposition that a State had authority to institute an ordinance construed to be requiring the vaccination of individuals, subject to a modest fine and several possible exemptions. Id. at 39. Defendants certainly echo the outmoded analysis of Jacobson in icily asserting that employees are not being forced to undergo unwanted medical treatment in that they "may choose to pursue other employment." (Opp. at 32). Defendants' string cite of courts applying no more than rational basis scrutiny to vaccine mandates (Id. at 33) is at best persuasive authority, standing in opposition to binding authority implicating the fundamental interests at issue.

[12] Defendants cannot resort to the Commerce Clause as constitutional justification for the Contractor Mandate. The Contractor Mandate does not "regulate Commerce." Id. Rather,

RESPECTFULLY SUBMITTED this 9th of November, 2021.

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By: /s/  James K. Rogers
    Joseph A. Kanefield (No. 15838)
    Brunn W. Roysden III (No. 28698)
    Drew C. Ensign (No. 25463)
    James K. Rogers (No. 27287)

*Attorneys for State Plaintiffs*

**WILENCHIK & BARTNESS PC**

By: /s/ Jack Wilenchik (with permission)
    Jack Wilenchik (No. 029353)

*Attorney for Plaintiff John Doe*

---

it demands action—in the form of compulsory vaccines—from millions of people. NFIB, 567 U.S. at 555 ("The Framers gave Congress the power to regulate commerce, not to compel it"). The Commerce Clause is not a license to act "whenever enough [people] are not doing something the [federal] Government would have them do." Id. at 553. Moreover, Defendants' mandate does not merely require activities in the workplace; it intrudes upon a deeply personal health decision—whether to get vaccinated—that transcends commerce and work issues. "Any police power to regulate individuals as such, as opposed to their activities, remains vested in the States" alone. Id. at 557. At a bare minimum, Defendants have no power under the Commerce Clause to regulate the internal affairs of States, such as management of their workforces and agencies. That is not regulation of commerce, but rather usurpation of the States' roles that are protected by the Constitution and its fundamental principles of federalism.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of November, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. Counsel for all parties are registered CM/ECF users and will be served by the CM/ECF system pursuant to the notice of electronic filing.

/s/ *James K. Rogers*
*Attorney for State Plaintiffs*