BRIAN M. BOYNTON
Acting Assistant Attorney General

BRAD P. ROSENBERG
CHRISTOPHER R. HALL
CARLOTTA P. WELLS
Assistant Directors

STEVEN A. MYERS
Senior Trial Counsel
JOSEPH J. DEMOTT (Va. Bar #93981)
R. CHARLIE MERRITT
KEVIN J. WYNOSKY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-3367
Email: joseph.demott@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Mark Brnovich *et al.*,<br><br>            Plaintiffs,<br><br>     vs.<br><br>Joseph R. Biden, *et al.*,<br><br>            Defendants. | No. 2:21-cv-01568-MTL<br><br>**FEDERAL DEFENDANTS' MOTION TO STAY; RESPONSE TO ARIZONA'S NOTICE OF SUPPLEMENTAL AUTHORITY (ECF NO. 110); AND NOTICE OF ADDITIONAL SUPPLEMENTAL AUTHORITY** |

**INTRODUCTION**

Plaintiffs' most recent notice of supplemental authority, ECF No. 110 ("Pls.' Notice"), discusses *Georgia v. Biden*, No. 21-cv-00163 (S.D. Ga. Dec. 7, 2021) (filed in this case as ECF No. 110-1), which involves a similar challenge to the vaccination requirement for federal contractors ("Contractor Requirement").   Holding that the President likely exceeded his authority under the Procurement Act when issuing Executive Order 14042, the *Georgia* court enjoined the federal government "from enforcing the vaccine mandate for federal contractors and subcontractors in all covered contracts in any state or territory of the United States of America."  ECF No. 110-1 at 27.

So long as it remains in effect, this nationwide injunction eliminates Plaintiffs' allegedly irreparable injuries stemming from the Contractor Requirement.  Therefore, there would be no practical significance to adjudicating Plaintiffs' claims involving the Contractor Requirement—Counts One, Two, Five, Six, Seven, and Eight of Plaintiffs' Second Amended Complaint, ECF No. 70—at this time.  Accordingly, in the interest of conserving judicial resources, the Federal Defendants ("Defendants") hereby move to stay further litigation of these claims, unless and until the *Georgia* injunction is stayed, vacated, or narrowed such that adjudicating them would have practical significance.  Arizona opposes this motion; the other Plaintiffs have not indicated any position; and Defendant City of Phoenix takes no position.

If this Court does proceed to adjudicate Plaintiffs' Procurement Act claim, *see* Second Am. Compl. ¶¶ 149–58, it should decline to follow the *Georgia* court's flawed analysis.  Instead, the Court should look to the Eleventh Circuit's recent decision in *Florida v. U.S. Department of Health & Human Services*, --- F.4th ---, No. 21-14098-JJ (11th Cir. Dec. 6, 2021), attached hereto as Exhibit A, which supports several of Defendants' arguments.  Also attached to this motion are other recent district court decisions denying motions to preliminarily enjoin the vaccination requirement for federal employees ("Employee Requirement"), which provide further support for Defendants' position with respect to Counts Three and Four of the operative complaint.  *See* Ex. B, Mem. Op. & Order, *McCray v. Biden*, No. 1:21-cv-2882-RDM (D.D.C. Dec. 7, 2021); Ex. C, Order, *Navy Seal 1 v. Biden*, No. 8:21-cv-2429-SDM-TGW (S.D. Fla. Nov. 22, 2021).

1
2

**I.    The Court Should Stay Its Adjudication of Claims Challenging the Contractor Requirement as Long as the *Georgia* Injunction Remains in Place.**

3
4
5
6
7
8
9
10
11
12
13
14

"A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see also, e.g.*, *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (recognizing district court's "broad discretion to stay proceedings"; *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (similar).  This includes the power to enter a stay "pending resolution of independent proceedings which bear upon the case." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979).  In determining whether to stay a case, the court must consider what is "efficient for its own docket" as well as "the fairest course for the parties." *Id.*; *see also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) ("Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed.") (quoting *CMAX, Inc.*, 300 F.2d at 268).

15
16
17
18
19
20
21
22
23
24
25
26
27
28

Here, conservation of the Court's and the parties' resources weighs in favor of a stay. The requested stay imposes no hardship on Plaintiffs; they are not at risk of being harmed by the Contractor Requirement as long as the *Georgia* injunction remains in place.  In similar situations, courts have readily stayed superfluous proceedings.  *See, e.g.*, *Pars Equality Center v. Trump*, No. 17-cv-0255-TSC (D.D.C. March 2, 2018), Dkt. No. 143 (staying request for preliminary relief because another nationwide injunction "calls into question whether the harms Plaintiffs allege are actually imminent or certain—a prerequisite for a preliminary injunction"); *Washington v. Trump*, No. C17–0141, 2017 WL 4857088, at *6 (W.D. Wash. Oct. 27, 2017) (because another district court had "already provide[d] Plaintiff States with virtually all the relief they seek," plaintiffs will not incur "any significant harm" by the court's staying consideration of their TRO motion); *Int'l Refugee Assistance Project v. Trump*, No. 17-cv-0361, 2017 WL 1315538, at *2 (D. Md. Apr. 10, 2017) ("[I]n light of the current nationwide injunction of Section 6 by the United States District Court of the District of Hawaii, a stay would not impose any hardship on Plaintiffs or result in irreparable harm."); *Hawaii v. Trump*,

233 F. Supp. 3d 850, 853 (D. Hawaii 2017) ("[T]he Western District of Washington's nationwide injunction already provides the State with the comprehensive relief it seeks in this lawsuit. As such, the State will not suffer irreparable damage . . . if the Court were to grant Defendants' motion to stay."). Earlier today, a district court stayed a similar challenge to the Contractor Requirement—over the State of Texas's objection—in light of the *Georgia* injunction. *See* Minute Order of Dec. 10, 2021, *Texas v. Biden*, No. 3:21-cv-309-JVB (S.D. Tex.) ("Case is stayed.").

To be sure, the federal government strongly disagrees with the *Georgia* decision, has filed an appeal, and is seeking to stay—or, in the alternative, to narrow—the *Georgia* injunction during the pendency of that appeal. *See Georgia*, No. 21-cv-00163, Dkt. Nos. 96, 97. If the federal government succeeds in modifying the injunction, such that this Court's adjudication of Plaintiffs' challenge to the Contractor Requirement would have practical significance, the Court could lift its stay and—having already received lengthy briefing—would be in a position to rule promptly. Unless and until that happens, however, Plaintiffs cannot show that they are "likely to suffer irreparable harm in the absence of preliminary relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Henke v. Dep't of Interior*, 842 F. Supp. 2d 54, 59 (D.D.C. 2012) ("Injury that is hypothetical or speculative does not rise to the level of irreparable harm."); *accord In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007) ("Speculative injury cannot be the basis for a finding of irreparable harm."). Accordingly, there is no basis for this Court to grant Plaintiffs' pending motion for preliminary injunction,[1] and there is no need for further litigation regarding the Contractor Requirement at this time.

---

[1] To the extent that an Article III case or controversy exists here, the *Georgia* decision did not render it moot. *See, e.g.*, *Florida*, Ex. A, at 15–17 (citing *California v. U.S. Dep't of Health & Hum. Servs.*, 941 F.3d 410, 420–23 (9th Cir. 2019), *judgment vacated on other grounds by Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020)). Accordingly, the *Georgia* decision would not prevent the Court from *denying* the pending motion for preliminary injunction on any of the various grounds discussed in the federal government's opposition briefing, *see* ECF Nos. 52, 108—as the Eleventh Circuit recently did, despite the existence of another court's nationwide injunction. *See generally* Ex. A. At present, however, it is simply unnecessary to adjudicate the Contractor Requirement claims one way or the other.

**II.     The *Georgia* Decision Is Erroneous and Should Not Be Followed.**

If and when this Court adjudicates the merits of Plaintiffs' Procurement Act claim (Count One), it should eschew the *Georgia* court's approach, which is inconsistent with 50 years of precedent interpreting the Procurement Act.  Indeed, several aspects of the *Georgia* opinion are difficult to square with an Eleventh Circuit decision handed down just one day earlier.  *See generally* Ex. A, *Florida v. Biden* (upholding a federal vaccination requirement for facilities that provide healthcare to Medicare and Medicaid); *see also* Dep't of Health & Human Servs. ("HHS"), Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61,555 (Nov. 5, 2021) (Medicare/Medicaid vaccination requirement).

First, the *Georgia* court erred in holding that the contractor vaccination requirement "operates as a regulation of public health."  ECF No. 110-1 at 19.  As Defendants have explained, the requirement is instead "an exercise of the federal government's 'unrestricted power' to 'determine those with whom it will deal, and to fix the terms and conditions upon which it will' enter into contracts." Defs.' Opp'n to Pls.' Third Mot. for Prelim. Inj. 5, ECF No. 108 ("Renewed Opp'n") (quoting *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 127 (1940)).  Under the *Georgia* court's approach, (1) requiring federal contractors to refrain from discriminatory employment practices would be analyzed as a civil rights regulation; (2) requiring contractors to post notices regarding mandatory union dues would be treated as a labor regulation; (3) requiring contractors to comply with wage and price standards for noninflationary behavior would be considered an economic regulation; and (4) phasing out free employee parking, as part of an effort to reduce gasoline consumption, would be treated as an energy-conservation regulation.  But federal courts of appeals have correctly recognized all of these diverse measures as procurement policies and upheld each of them on that basis.  *See Contractors Ass'n of E. Pa. v. Sec'y of Lab.*, 442 F.2d 159, 170 (3d Cir. 1971) (anti-discrimination requirement); *UAW-Labor Emp. & Training Corp. v. Chao*, 325 F.3d 360, 366–67 (D.C. Cir. 2003) (labor law notices); *Am. Fed'n of Lab. & Cong. of Indus. Organizations v. Kahn*, 618 F.2d 784, 792 (D.C. Cir. 1979) (noninflationary behavior); *Am. Fed'n of Gov't Emps., AFL-CIO v. Carmen*, 669 F.2d 815, 819–21 (D.C. Cir. 1981) (employee parking policy).  Indeed, *Kahn*

specifically rejected an argument that the noninflationary-behavior requirement for federal contractors was a "mandatory" economic regulation, recognizing that contractors have a choice whether to deal with the government and that "no one has a right to a Government contract." 618 F. 2d at 794.

Second, the *Georgia* court's reliance on the "major questions doctrine" is misplaced. The Procurement Act permits "broad-ranging Executive Orders . . . which certainly reach beyond any narrow concept of efficiency and economy in procurement." *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1333 (D.C. Cir. 1996). As the Eleventh Circuit held in *Florida*, "by its very nature, a broad grant of authority . . . does not require an indication that specific activities are permitted." Ex. A at 32. The *Georgia* court's suggestion that Congress should have more specifically authorized health-and-safety-related procurement policies makes little sense, as it "would mean that Congress had to have anticipated both the unprecedented COVID-19 pandemic and the unprecedented politicization of the disease." *Id.* Moreover, as the Eleventh Circuit explained in a similar context, *Alabama Ass'n of Realtors v. Dep't of Health & Human Servs.*, 141 S. Ct. 2485 (2021), is not on point. *See Florida*, Ex. A at 33–34. Given the vast scope of government contracting, many procurement regulations "have vast economic and political significance," ECF No. 110-1 at 19 (quoting *Ala. Ass'n of Realtors v*, 141 S. Ct. at 2489). Surely this was true of the anti-discrimination requirements at issue in *Contractors Ass'n of Eastern Pennsylvania* and the noninflationary-behavior requirement at issue in *Kahn*. Yet both were upheld because they are within the Procurement Act's broad grant of authority to the President, *see* 40 U.S.C. § 121(a). In short, Congress *has* spoken clearly here.

Third, the *Georgia* court erred in assessing whether EO 14042 is reasonably related to promoting efficiency and economy in government procurement. *See* ECF No. 110-1 at 22. A one-sentence analysis may be sufficient to satisfy this lenient test. *See Chao*, 325 F.3d at 366. Here, the President determined that requiring covered contractors to comply with adequate COVID-19 safeguards "will decrease worker absence, reduce labor costs, and improve the efficiency of contractors and subcontractors at sites where they are performing work for the Federal Government." Exec. Order No. 14042, 86 Fed. Reg. 50,985 (Sept. 14, 2021). And

the Acting OMB Director made much more extensive findings, developing a "thorough and robust economy-and-efficiency analysis" that "provide[s] ample support for the premise that a vaccine mandate will improve procurement efficiency." *Kentucky*, ECF No. 101-1 at 25–26 (citing 86 Fed. Reg. 63,418 (Nov. 16, 2021)).  The *Georgia* court virtually ignored the Acting Director's analysis.  Instead, it observed that past Procurement Act cases have not involved public health and speculated that "none have involved the level of burdens implicated by EO 14042."  ECF No. 110-1 at 22.  The former observation is "no surprise," *Florida*, Ex. A at 32; the latter assertion is unsupported, *cf. Kahn*, 618 F.2d at 809 (MacKinnon, J., dissenting) (noting "onerous" burdens imposed by noninflationary-behavior requirement); and both are beside the point.  The Acting Director's economy-and-efficiency determination is well-reasoned and entitled to deference, *see Chao*, 325 F.3d at 366–67; *Kahn,* 618 F.2d at 793 n.49, and the *Georgia* court erred in substituting its views about the "burdens implicated by EO 14042" for the President's determination that EO 14042 will promote efficiency in government contracting.

Nor does the Government's reading of the Procurement Act give the President the right to impose "virtually any kind of requirement" on federal contractors, Pls.' Notice at 2 (quoting *Georgia*, ECF No. 110-1 at 23).  While the President has broad authority in this area, hypothetical procurement policies regarding contractors' consumption of sugary drinks and fast food would have a much more tenuous link to government economy and efficiency than the vaccination requirement has.  *See* Tr. of Oral Arg 46:13–24; 47:19–48:7; 73:10–81:1, ECF No. 69 (acknowledging that such hypothetical requirements might not have the requisite nexus to economy and efficiency "in the universe that we live in today").  Whatever the outer limits of the President's Procurement Act authority, they are not tested by inclusion in federal contracts of the same type of requirement that countless private employers have independently determined is in their business interests.  *See* Renewed Opp'n at 13–14 (referencing numerous private companies that have imposed similar vaccination requirements); *cf. Bowen v. City of New York*, 476 U.S. 467, 487 (1986) (court need not decide hypotheticals implicating "the outer bounds" of a legal principle when the case does not require it to do so).

### III.    Other Recent Decisions Support Defendants' Position in This Case.

In addition to casting serious doubt on the viability of *Georgia*, the Eleventh Circuit's *Florida* decision supports several other aspects of their position in this case:

1) The Eleventh Circuit rejected an argument, similar to the one Arizona advances here, that a federal vaccination requirement harms a State's sovereign interests. *See* Ex. A at 39–40; *cf.* Pls.' Third Mot. for Prelim. Inj. 5–6, ECF No. 72 ("Pls.' Mot.").

2) It rejects, as overly speculative, predictions that the vaccination requirement will lead to staffing shortages. *See* Ex. A at 40–42; *cf.* Pls.' Mot. at 6–7, 10–11.

3) It reaffirms that a State may not proceed *parens patriae* in a lawsuit against the Federal Government. *See* Ex. A at 42. *Contra* ECF No. 101-1 at 6 (opinion in *Kentucky v. Biden*, No. 21-cv-55 (E.D. Ky. Nov. 30, 2021)).

4) It rejects the notion that federal vaccination requirements create a Tenth Amendment or Spending Clause issue, as Arizona suggests. *See* Ex. A at 32–33 n. 1; *cf.* Pls.' Mot. at 11, 12–13.

5) It holds that the "urgency presented by the ongoing pandemic" provided "a sufficient basis to dispense with the [APA's] notice-and-comment requirement." Ex. A at 35–37; *cf.* Pls.' Mot. at 13–14.

Two other recent decisions provide further support for Defendants' arguments regarding the Employee Requirement. In *McCray*, the court concluded that a challenge to the Employee Requirement is unripe when the plaintiff has a pending exception request—as Defendant Doe has here—and dismissed the case *sua sponte* for lack of subject-matter jurisdiction. *See* Ex. B at 17–20; *cf.* Defs.' Opp'n to Pls.' Mot. for Prelim. Inj. 10–12, ECF No. 52 ("Opp'n"). The court also acknowledged the force of Defendants' Civil Service Reform Act ("CSRA") preclusion arguments. *See* Ex. B at 19–20 n.3; *cf.* Opp'n at 12–14. In *Navy Seal 1*, the court rejected a claim that was essentially identical to Count Three of Plaintiffs' Second Amended Complaint, holding that 21 U.S.C. § 360bbb-3 "creates no 'opportunity to sue the government.'" *See* Ex. C at 5 (quoting *Doe v. Franklin Square Union Free Sch. Dist.*, 2021 WL 4957893, at *20 (E.D.N.Y. 2021)); *cf.* Opp'n at 29–30.

Respectfully submitted this 10th day of December, 2021.

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRAD P. ROSENBERG
CHRISTOPHER R. HALL
CARLOTTA P. WELLS
Assistant Directors

/s/ Joseph J. DeMott
STEVEN A. MYERS
Senior Trial Counsel
JOSEPH J. DEMOTT (Va. Bar #93981)
R. CHARLIE MERRITT
KEVIN J. WYNOSKY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-3367
Email: joseph.demott@usdoj.gov

*Attorneys for Defendants*

9