| | |
|---|---|
| **MARK BRNOVICH**<br>**ATTORNEY GENERAL**<br>(Firm State Bar No. 14000)<br><br>Joseph A. Kanefield (No. 15838)<br>Brunn (Beau) W. Roysden III (No. 28698)<br>Drew C. Ensign (No. 25463)<br>James K. Rogers (No. 27287)<br>2005 N. Central Ave<br>Phoenix, AZ 85004-1592<br>Phone: (602) 542-8540<br>Joseph.Kanefield@azag.gov<br>Beau.Roysden@azag.gov<br>Drew.Ensign@azag.gov<br>James.Rogers@azag.gov<br><br>*Attorneys for Plaintiffs Mark Brnovich and the State of Arizona* | **WILENCHIK & BARTNESS PC**<br><br>Jack Wilenchik<br>The Wilenchik & Bartness Building<br>2810 North Third Street<br>Phoenix, AZ 85004<br>Phone (602) 606-2816<br>JackW@wb-law.com<br><br>*Attorney for Plaintiff Al Reble*<br><br>**NAPIER, BAILLIE, WILSON, BACON & TALLONE, P.C.**<br><br>Michael Napier (No. 002603)<br>Eric R. Wilson (No. 030053)<br>Cassidy L. Bacon (No. 031361)<br>2525 E. Arizona Biltmore Cir, Ste C-135<br>Phoenix, Arizona 85016<br>Phone: 602.248.9107<br>mike@napierlawfirm.com<br><br>*Attorneys for Plaintiffs PLEA and United Phoenix Firefighters Association Local 493* |

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Mark Brnovich, in his official capacity as Attorney General of Arizona; *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>Joseph R. Biden in his official capacity as President of the United States; *et al.*,<br><br>        Defendants. | No. 2:21-cv-01568-MTL<br><br>**STATE PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY** |

**NOTICE**

Plaintiffs respectfully provide notice of a recent published decision of the Sixth Circuit in *Kentucky v. Biden*, --- F.4th ----, 2022 WL 43178 (6th Cir. Jan. 5, 2022), denying the federal government's motion for a stay pending appeal of the preliminary injunction of the Contractor Mandate in *Kentucky v. Biden*, No. 21-cv-55 (E.D. Ky. Nov. 30, 2021) (Doc. 101). The decision supports the Plaintiffs' PI renewed motion. In particular, the Sixth Circuit held:

1) The plaintiffs "likely have standing to sue in their own proprietary capacities as contractors with the federal government," because they "have a demonstrated history of contracting with federal agencies" and "either will be unable to comply with the mandate, given anticipated resistance to it, and will lose the contracts, or will comply … but suffer serious hits to their workforces as employees resign in protest." *Kentucky*, 2022 WL 43178 at *5-*6.

2) The states had standing to bring suit to vindicate their proprietary interests. Each state is "threatened with the imposition of the … mandate in two distinct ways. First, the federal government may enforce the contractor mandate any time the parties need to modify an existing contract with the state plaintiffs…. Second, the state plaintiffs are also imminently threatened in their proprietary capacities should they renew those existing contracts (thus triggering the mandate as well) or should they choose to bid on new contracts to which the mandate applies…." *Id.* at *6. The Sixth Circuit further explained: "Given these realities, we are not persuaded by the government's claims that the states lack standing in their proprietary capacities because the contractor mandate applies 'only in new or renewed contracts.'" *Id.*

3) The Sixth Circuit further relied upon the statistical certainty that States would be affected: "[T[he government ... inexplicably discounts the virtual certainty that states will either bid on new federal contracts or renew existing ones." "By engaging in such prolific federal contracting, the federal government has engendered substantial state reliance interests in securing future contracts. It is unreasonable, given those reliance interests, to expect states or their agencies to disavow their prior history of contracting and to decline to seek future such opportunities. And that point only underscores the states' injury. The federal government of course knows that these reliance interests exist, which is why it seeks to purchase states'

1

submission by leveraging those interests to force their acquiescence to the contractor mandate." *Id.*

4) The plaintiffs further had standing to vindicate their sovereign and quasi-sovereign interests. "States have a sovereign interest to sue the United States when a federal regulation purports to preempt state law." "States also have sovereign interests to sue when they believe that the federal government has intruded upon areas traditionally within states' control…. – the regulation of the public health of state citizens in general and the decision whether to mandate vaccination in particular." "[S]tates also have a recognized quasi-sovereign interest in the health and 'economic well-being' of their populaces. *Id.* at at *7-*9.

5) The States had a cause of action under 5 U.S.C. § 702 of the APA. *Id.* at *11.

6) The defendants were unlikely to succeed on the merits because the Procurement Act does not confer authority on the President to "impos[e] ... a medical procedure upon the federal-contractor workforce." *Id.* at 11-15. The Sixth Circuit expressed particular concern about the broad sweep of the power the defendants were claiming under the Procurement Act and pointed out that "[t]he government has never reckoned with the implications of its position or proposed any limiting principle to allay our concerns." *Id.* at *15.

7) "What the contractor mandate seeks to do, in effect, is to transfer this traditional prerogative [to regulate public health] from the states to the federal government" using "contracting as a naked pretext to invade traditional state prerogatives." *Id.* at *16.

8) The federal government would not suffer irreparable injury if a stay of the district court injunction was not granted, as demonstrated by the government's long delay in attempting to impose vaccine mandates. *Id.* at *17.

9) A stay would harm to the Plaintiff States. *Id.* at *18.

With the Sixth Circuit's issuance of the *Kentucky* decision, two circuit courts and five district courts have *all* rejected the same arguments that the federal defendants make in this case. (*See* Doc. 101; Doc. 110; Doc 130-3; Doc. 130-4; Doc. 137; and Doc. 143.) Despite the certitude with which Defendants continue to assert their instant arguments, those contentions are now 0-5 in district courts and 0-2 in circuit courts.

RESPECTFULLY SUBMITTED this 11th day of January, 2022.

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By: /s/ *James K. Rogers*
    Joseph A. Kanefield (No. 15838)
    Brunn W. Roysden III (No. 28698)
    Drew C. Ensign (No. 25463)
    James K. Rogers (No. 27287)

*Attorneys for Plaintiffs Mark Brnovich and the State of Arizona*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of January, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. Counsel for all Defendants who have appeared are registered CM/ECF users and will be served by the CM/ECF system pursuant to the notice of electronic filing.

      /s/ *James K. Rogers*
*Attorney for Plaintiffs Mark Brnovich, in his official capacity as Attorney General of Arizona; and the State of Arizona*