**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Joseph A. Kanefield (No. 15838)
Brunn (Beau) W. Roysden III (No. 28698)
Drew C. Ensign (No. 25463)
James K. Rogers (No. 27287)
2005 N. Central Ave
Phoenix, AZ 85004-1592
Phone: (602) 542-8540
Joseph.Kanefield@azag.gov
Beau.Roysden@azag.gov
Drew.Ensign@azag.gov
James.Rogers@azag.gov

*Attorneys for Plaintiffs Mark Brnovich and the State of Arizona*

**WILENCHIK & BARTNESS PC**

Jack Wilenchik (No. 029353)
Davis P. Bauer (No. 035529)
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, AZ 85004
Phone (602) 606-2816
JackW@wb-law.com

*Attorney for Plaintiff Al Reble*

**NAPIER, BAILLIE, WILSON, BACON & TALLONE, P.C.**

Michael Napier (No. 002603)
Eric R. Wilson (No. 030053)
Cassidy L. Bacon (No. 031361)
2525 E. Arizona Biltmore Cir, Ste C-135
Phoenix, Arizona 85016
Phone: 602.248.9107
mike@napierlawfirm.com

*Attorneys for Plaintiffs PLEA and United Phoenix Firefighters Association Local 493*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Mark Brnovich, in his official capacity as Attorney General of Arizona; *et al.*,<br><br>        Plaintiffs,<br>   v.<br>Joseph R. Biden in his official capacity as President of the United States; *et al.*,<br><br>        Defendants. | No. 2:21-cv-01568-MTL<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING RECENT SUPREME COURT DECISIONS** |

**INTRODUCTION**

On January 13, 2022, the Supreme Court issued two opinions regrading vaccine mandates. The first case, *NFIB v. OSHA*, --- S.Ct. ----, 2022 WL 120952 (Jan. 13, 2022), held that the OSHA COVID-19 vaccine mandate on employers with at least 100 employees (the "OSHA Mandate") was likely unlawful and stayed the rule imposing the mandate. The second case, *Biden v. Missouri*, --- S.Ct. ----, 2022 WL 120950 (Jan. 13, 2022), held that the federal COVID-19 vaccine mandate on healthcare providers participating in the Medicare and Medicaid programs (the "CMS Mandate") was likely lawful; the Supreme Court therefore stayed lower courts' preliminary injunction of the CMS Mandate. Collectively, the decisions stayed imposition of one mandate and permitted another to go into effect. Both decisions, however, support Plaintiffs' position in this case that the Federal Defendants' ("Defendants") Contractor Mandate is unlawful.[1]

Pursuant to the Court's orders of January 13, 2022 (Doc. 149 and Doc. 150) inviting supplemental briefing about the impact of *NFIB* and *Biden* on this case, Plaintiffs submit this supplemental brief explaining how both cases support Plaintiffs' position.

**I.   The Contractor Mandate Has Less Statutory Support Than the OSHA Mandate**

The Supreme Court held that the CMS Mandate is likely lawful because one of the "most basic" functions of the Department of Health and Human Services ("HHS") "is to ensure that the healthcare providers who care for Medicare and Medicaid patients protect their patients' health and safety." *Biden*, 2022 WL 120950, at *1. In contrast, six Justices held that the OSHA Mandate was likely unlawful because, even though the OSH Act tasks OSHA with "ensuring ... 'safe and healthful working conditions,'" "[s]uch standards must be 'reasonably necessary or appropriate to provide safe or healthful *employment*.'" *NFIB*, 2022 WL 120952, at *1 (quoting 29 U.S.C. §§ 651(b) and 652(8)) (emphasis in original).

The *NFIB* court further explained, "[w]e expect Congress to speak clearly when authorizing an agency to exercise powers of vast economic and political significance," and held

---

[1] The Supreme Court's decisions did not address constitutional arguments or interpret the meaning of the EUA statute. They thus have no effect on Plaintiffs' claims under the Constitution and the EUA statute, including Plaintiffs' claims that the Employee Mandate is unlawful.

1

that the OSHA Mandate was just such an exercise of authority. *Id.* at *3 (quoting *Alabama Ass'n of Realtors v. HHS*, 141 S.Ct. 2485, 2489 (2021)). The OSHA Mandate was therefore likely unlawful because the relevant statute "empowers the [HHS] Secretary to set *workplace* safety standards, not broad public health measures." *Id.* (citations omitted) (emphasis in original).

Thus, the Supreme Court held that the CMS Mandate was likely lawful because the relevant statutory provisions were directly related to protecting patients from negative health outcomes broadly, such as contracting COVID-19. In contrast, the OSHA Mandate was not as directly related to public health writ large, and the Court thus concluded that it likely exceeded OSHA's statutory authority. This was so even though the OSHA statute specifically used the word "healthful" in defining OSHA's purpose. Particularly relevant in *NFIB* was that the OSH Act's "provisions typically speak to hazards that employees face at work" and that "no provision of the Act addresses public health more generally, which falls outside of OSHA's sphere of expertise." *Id.* (citations omitted).

The Contractor Mandate does not exist on the spectrum between the CMS Mandate and the OSHA Mandate, but rather is even more plainly unlawful than the latter. In particular, the Procurement Act's connection to public health is even more tenuous than the OSHA statute. The Procurement Act contains *no* references to health *at all*. And public health falls far outside the expertise of OMB and the FAR Council, the agencies principally charged with administering the Contractor Mandate.

The Supreme Court explained in *NFIB* that:

> Although COVID–19 is a risk that occurs in many workplaces, it is not an *occupational* hazard in most. COVID–19 can and does spread at home, in schools, during sporting events, and everywhere else that people gather. That kind of *universal risk* is no different from the day-to-day dangers that all face from crime, air pollution, or any number of communicable diseases. Permitting OSHA to regulate the hazards of daily life—simply because most Americans have jobs and face those same risks while on the clock—*would significantly expand OSHA's regulatory authority without clear congressional authorization*.

*Id.* (all but first emphasis added). The same reasoning applies to the Contractor Mandate. The danger that COVID-19 poses to procurement is a "universal risk" that does not fall within Congress's grant of authority in the Procurement Act. And permitting Defendants to employ the Procurement Act to promulgate the mandate at issue here would drastically expand their

authority in an unprecedented manner.

Indeed, Defendants have failed to offer *any* kind of limiting principle to the authority they are trying to assume under the Procurement Act. (*See* (11/10/21 Tr. at 45:18-47:16; 73:10-74:4.) Under Defendants' reading, almost every aspect of American life would fall under the President's control. Plaintiffs have already provided a number of health-related examples (*see* Doc. 72 at 11), but Defendants' broad interpretation of the Procurement Act would extend far beyond health. For example, under Defendants' interpretation, a short perfunctory determination by the OMB Director claiming that social media use negatively impacts economy and efficiency would justify a mandate that all employees of federal contractors permanently delete their social media accounts, or an OMB determination that there is too much water-cooler discussion about a popular TV show would justify a mandate that contractor employees cancel their cable TV subscriptions.

Indeed, while this case was pending, the Biden Administration invoked its putative authority under the Procurement Act to impose a $15/hour minimum wage on federal contractors—even though the effect of that action is to *increase* the government's contracting costs by *intentionally* increasing contractors' wage costs. *See* 86 Fed. Reg. 67,126 (Nov. 24, 2021). So much for "efficient" contracting. And the Administration did so even though the Senate had just rejected the *very same* $15/hour minimum wage in a 58-42 vote. *See* https://www.senate.gov/legislative/LIS/roll_call_lists/roll_call_vote_cfm.cfm?congress=117&session=1&vote=00074.

Accepting Defendants' sweeping assertions of authority under the Procurement Act will thus gravely undermine the Constitution's separation of powers and permit Defendants to exploit their contracting authority to engage in naked social engineering. Indeed, that is already occurring.

**II.    Like The OSHA Mandate, The Contractor Mandate Is An Unprecedented Expansion of Federal Power That Violates The Major Questions Doctrine**

Also relevant in *NFIB* was that "a vaccine mandate is strikingly unlike the workplace regulations that OSHA has typically imposed. A vaccination, after all, cannot be undone at the

end of the workday.' ... [I]mposing a vaccine mandate on 84 million Americans in response to a worldwide pandemic is simply not part of what the agency was built for." *NFIB*, 2022 WL 120952, at *4 (citations and quotations marks omitted). The Supreme Court also pointed out that "[i]t is telling that OSHA, in its half century of existence, has never before adopted a broad public health regulation of this kind—addressing a threat that is untethered, in any causal sense, from the workplace. This 'lack of historical precedent,' coupled with the breadth of authority that the Secretary now claims, is a 'telling indication' that the mandate extends beyond the agency's legitimate reach. *Id.* at *4 (quoting *Free Enterprise Fund v. Public Company Accounting Oversight Bd.*, 561 U.S. 477, 505 (2010)).

Similarly, there is no historical precedent for the Contractor Mandate. It "is strikingly unlike" any prior federal contractor requirement imposed under the Procurement Act. Plaintiffs are not aware of *any* other example of a federal public health mandate imposed under the Procurement Act. Nor have Defendants identified any to this Court. To paraphrase the Supreme Court, imposing a vaccine mandate on one-fifth of the national workforce in response to a worldwide pandemic is simply not part of what the Procurement Act was built for. The Contractor Mandate thus extends beyond the Procurement Act's legitimate reach.

### III. The *Biden* Court's Holding Supports Plaintiffs' Case

In *Biden*, the Supreme Court noted that "the very same statutory authorities at issue here" would likely empower the HHS Secretary to "require hospital employees to wear gloves, sterilize instruments, wash their hands in a certain way and at certain intervals, and the like." *Biden*, 2022 WL 120950, at *3. Conversely, not even Defendants claim that the Procurement Act grants broad authority to impose other health-related measures on federal contractors. (11/10/21 Tr. at 45:18-47:16; 73:10-74:4.) The Supreme Court in *Biden* also thought relevant that "[v]accination requirements are a common feature of the provision of healthcare in America." *Id.* The fact that vaccination requirements are *not* a common feature of federal contracting supports Plaintiffs' arguments that the Contractor Mandate goes well beyond what the Procurement Act authorizes.

*Biden* rejected the states' arguments that the HHS Secretary had failed to properly

invoke the good cause exception to the APA and it also rejected the states' argument that HHS's two-month delay in promulgating the rule demonstrated that there was no need to invoke good cause and accelerate the rule's promulgation. The Supreme Court reasoned that the good cause exception was properly invoked for the CMS Mandate because of "the Secretary's finding that accelerated promulgation of the rule in advance of the winter flu season would significantly reduce COVID–19 infections, hospitalizations, and deaths." *Biden*, 2022 WL 120950, at *4.

Neither of the two OMB Notices purporting to impose the Contractor Mandate contain any similar good-cause findings about the flu season. The Second OMB Notice purports to invoke the good cause exception because "delay would result in harm," yet it does not make any specific findings at all about what that harm might be or how a delay for notice and comment might harm economy and efficiency in contracting. (*See* Doc. 70-4 at 63424.) Moreover, that invocation of good cause occurred only *after* the State had filed suit. Such *post hoc* declarations that Defendants found unnecessary to make pre-suit are as flimsy as they are pretextual.

The *Biden* Court further commented that "we cannot say that in this instance the two months the agency took to prepare a 73-page rule constitutes 'delay' inconsistent with the Secretary's finding of good cause." *Biden*, 2022 WL 120950, at *4. That justification does not apply here because the Second OMB Notice was delayed more than two months, and was only nine pages long.

### IV. The *NFIB* Concurrence Also Supports Plaintiffs

In his *NFIB* concurrence (which was joined by Justices Alito and Thomas), Justice Gorsuch pointed that "[t]here is no question that state and local authorities possess considerable power to regulate public health" and that the federal governments powers, on the other hand "are not general but limited and divided." *NFIB*, 2022 WL 120952, at *5 (Gorsuch, J. concurring). He further pointed out that

> Approximately two years have passed since this pandemic began; vaccines have been available for more than a year. Over that span, Congress has adopted several major pieces of legislation aimed at combating COVID–19. But Congress has chosen not to afford OSHA—or any federal agency—the authority to issue a vaccine mandate.

5

> Indeed, a majority of the Senate even voted to *disapprove* OSHA's regulation. It seems, too, that the agency pursued its regulatory initiative only as a legislative "work-around." Far less consequential agency rules have run afoul of the major questions doctrine…. Historically, such matters have been regulated at the state level by authorities who enjoy broader and more general governmental powers. Meanwhile, at the federal level, OSHA arguably is not even the agency most associated with public health regulation. *And in the rare instances when Congress has sought to mandate vaccinations, it has done so expressly*. We have nothing like that here.

*Id.* at *6 (citations omitted) (second emphasis added).

The same reasoning applies here. Under the Major Questions Doctrine, Congress must speak clearly on matters of vast economic and political significance. It has chosen *not* to grant the power to impose vaccine mandates on federal contractors. Indeed, Congress chose not to confer *any* health-specific authority *at all*. The Contractor Mandate is therefore unlawful.

And just as OSHA "cannot trace its authority to [impose a nationwide vaccine mandate] to any clear congressional mandate," neither can Defendants trace their claimed authority to impose a vaccine mandate on one-fifth of the national labor force. *Id.* at *7. If the Procurement Act granted such authority, "that law would likely constitute an unconstitutional delegation of legislative authority." *Id.* Under Defendants' reading, the Procurement Act "would afford it almost unlimited discretion—and certainly impose no specific restrictions that meaningfully constrain the agency. [Defendants] would become little more than a roving commission to inquire into evils and upon discovery correct them." *Id.* (cleaned up). What Justice Gorsuch wrote about the OSH Act applies equally to the Procurement Act:

> [T]he point is the same one Chief Justice Marshall made in 1825: There are some "important subjects, which must be entirely regulated by the legislature itself," and others "of less interest, in which a general provision may be made, and power given to [others] to fill up the details." And on no one's account does this mandate qualify as some "detail."

> The question before us is not how to respond to the pandemic, but who holds the power to do so. The answer is clear: Under the law as it stands today, that power rests with the States and Congress. . . .

*Id.* (quoting *Wayman v. Southard*, 23 U.S. 1, 43 (1825)).

So too here. The Contractor Mandate is an unprecedented, unconstitutional, and illegal power grab. This Court should therefore grant Plaintiffs the relief they seek and declare the mandates to be unconstitutional and unlawful.

RESPECTFULLY SUBMITTED this 19th day of January, 2022.

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By: /s/ *James K. Rogers*
    Joseph A. Kanefield (No. 15838)
    Brunn W. Roysden III (No. 28698)
    Drew C. Ensign (No. 25463)
    James K. Rogers (No. 27287)

*Attorneys for Plaintiffs Mark Brnovich and the State of Arizona*

**WILENCHIK & BARTNESS PC**

By: /s/ *Davis P. Bauer* (with permission)
    Jack Wilenchik (No. 029353)
    Davis P. Bauer (No. 035529)

*Attorney for Plaintiff Al Reble*

**NAPIER, BAILLIE, WILSON, BACON & TALLONE, P.C.**

By: /s/ *Cassidy Bacon* (with permission)
    Michael Napier (No. 002603)
    Eric R. Wilson (No. 030053)
    Cassidy L. Bacon (No. 031361)

*Attorneys for Plaintiffs PLEA and United Phoenix Firefighters Association Local 493*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of January, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. Counsel for all Defendants who have appeared are registered CM/ECF users and will be served by the CM/ECF system pursuant to the notice of electronic filing.

*/s/ James K. Rogers*
*Attorney for Plaintiffs Mark Brnovich, in his official capacity as Attorney General of Arizona; and the State of Arizona*