BRIAN M. BOYNTON
Acting Assistant Attorney General

BRAD P. ROSENBERG
CHRISTOPHER R. HALL
CARLOTTA P. WELLS
Assistant Directors

STEVEN A. MYERS
Senior Trial Counsel
JOSEPH J. DEMOTT (Va. Bar #93981)
R. CHARLIE MERRITT
KEVIN WYNOSKY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-3367
Email: joseph.demott@usdoj.gov

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Mark Brnovich *et al.*,

Plaintiffs,

vs.

Joseph R. Biden, *et al.*,

Defendants.

No. 2:21-cv-01568-MTL

**FEDERAL DEFENDANTS' SUPPLEMENTAL BRIEF RE: RECENT SUPREME COURT DECISIONS**

## INTRODUCTION

The Federal Defendants ("Defendants") respectfully submit this supplemental brief regarding the Supreme Court's recent decisions in *National Federation of Independent Businesses v. Department of Labor*, No. 21A244, 2022 WL 120952 (Jan. 13, 2022) (per curiam) ("*NFIB*") and *Biden v. Missouri*, No. 21A240, 2022 WL 120950 (per curiam) (Jan. 13, 2022). To the extent those decisions are relevant to this case, they confirm that Executive Orders 14042 and 14043 are legitimate exercises of the President's authority to oversee the federal workforce and to direct federal procurement.

### I. *NFIB* Does Not Limit the President's Authority to Oversee the Federal Workforce and to Direct Federal Procurement.

In *NFIB*, the Supreme Court considered whether the Occupational Safety and Health Administration ("OSHA") has statutory authority to require "virtually all employers with at least 100 employees" to impose COVID-19 vaccination-or-testing requirements on their employees. *NFIB*, 2022 WL 120952, at *1. Observing that this OSHA mandate "applie[d] to roughly 84 million workers," *id.*, and reflected a "significant[] expan[sion] of OSHA's regulatory authority," *id.* at *3, the Court relied on the proposition that Congress is expected "to speak clearly when authorizing an agency to exercise powers of vast economic and political significance," *id.* (quoting *Ala. Ass'n of Realtors* v. *Dep't of Health & Human Servs.*, 141 S. Ct. 2485, 2489 (2021) (per curiam)). The Court held that the Occupational Safety and Health Act ("OSH Act") does not "plainly authorize[]" the OSHA mandate, reasoning that COVID-19 is not a distinctly "*occupational* hazard[]" within the scope of the OSH Act. *Id.* at *3–*4.

The *NFIB* decision provides no basis for holding that either of the Executive Orders challenged here is unlawful. The decision's statutory-authority analysis certainly does not support Plaintiffs' challenge to EO 14043, as Plaintiffs have never claimed that EO 14043 exceeds the President's statutory authority. *See* Third Am. Compl. ¶¶ 167–74, ECF No. 134 (contending only that EO 14043 violates substantive due process and conflicts with the Federal Food, Drug, and Cosmetics Act). In any event, the analysis in *NFIB* does not apply to EO 14042 or EO 14043 for at least three independent reasons.

*First*, EO 14042 and EO 14043 are not exercises of regulatory authority over private citizens, as the OSHA mandate was, but exercises of the federal government's proprietary authority to manage its own affairs. The Supreme Court has never applied "major questions" principles where, as here, the government is operating in a non-regulatory capacity. *Cf. FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120 (2000) (regulation of the tobacco industry); *Gonzales v. Oregon*, 546 U.S. 243 (2006) (regulation of drug prescriptions for assisted suicide); *Utility Air Regul. Grp. v. EPA*, 573 U.S. 302 (2014) (regulation of greenhouse gas emitters). To the contrary, the Supreme Court has repeatedly held that the federal government "has a much freer hand in dealing 'with citizen employees than it does when it brings its sovereign power to bear on citizens at large.'" *NASA v. Nelson*, 562 U.S. 134, 148 (2011) (quoting *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 598 (2008)); *see also, e.g.*, *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 392-93 (2011). The Court has similarly recognized that the federal government "enjoys the unrestricted power … to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases." *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 127 (1940); *see also, e.g.*, *Cafeteria & Rest. Workers Union, Loc. 473, AFL-CIO v. McElroy*, 367 U.S. 886, 896 (1961). Thus, the non-regulatory nature of both EO 14042 and EO 14043 amply distinguishes the present case from *NFIB*.

*Second*, EO 14042 and EO 14043 were issued by the President himself—not by an administrative agency. In contrast to agencies, which "are creatures of statute" that "possess only the authority that Congress has provided," *NFIB*, 2022 WL 120952, at *3, the President is vested with the executive power of the United States. U.S. Const. Art. II, sec. 1. As other courts have recognized, the President has independent constitutional authority to require that federal employees become vaccinated against COVID-19. *See Rydie v. Biden*, No. 21-cv-2696, 2021 WL 5416545, at *3 (D. Md. Nov. 19, 2021) ("The President derives his authority to regulate the federal workforce from the Constitution, not from Congress's enactments."), *appeal pending*, No. 21-2359 (4th Cir.); *Oklahoma v. Biden*, --- F. Supp. 3d ---, 2021 WL 6126230, at *10 (W.D. Okla. Dec. 28, 2021) ("[EO 14043] is a permissible exercise of executive authority

. . . substantially for the reasons stated in *Rydie*").[1] The President's Article II authority would also arguably empower the President to define the terms on which the federal government will enter into contracts, even in the absence of express congressional authorization.[2] *See Bldg. & Construction Trades Dep't v. Allbaugh*, 295 F.3d 28, 32 (D.C. Cir. 2002) (recognizing the President's "general administrative control" over "the Executive Branch of government, of which he is the head" (quotation omitted)).

Relatedly, one of the principal concerns animating "major questions" case law is that agencies lack direct political accountability. *See Brown & Williamson*, 529 U.S. at 150 (contending that "policy determinations" should be made by elected officials, "not some agency made up of appointed officials"); *NFIB*, 2022 WL 120952, at *4 (expressing concern that OSHA's mandate "extend[ed] beyond the agency's legitimate reach"). This concern is not present here, as the President is directly elected by and "accountable to the people," *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 513 (2010). Notably, the Supreme Court has applied "major questions" principles only in the context of actions by administrative agencies—never in the context of an executive order from the President.

*Third*, Congress did "speak clearly" in giving the President broad authority to adopt government-wide policies related to economical and efficient contracting. The Procurement Act plainly authorizes the President to "prescribe policies and directives" that he considers "necessary" to ensure "an economical and efficient system" for federal procurement and contracting. *See* 40 U.S.C. §§ 101, 121; *cf. NFIB*, 2022 WL 120952, at *3 (OSH Act's more limited grant of authority did not "plainly authorize[]" the OSHA mandate). As courts have repeatedly and consistently held, an order issued by the President is authorized by the Procurement Act if there exists a "sufficiently close nexus" between the order and the statutory

---

[1] In addition, Congress has endorsed the President's authority over the federal workforce in at least three statutory provisions. *See* 5 U.S.C. §§ 3301, 3302, 7301; *see also Clarry v. United States*, 85 F.3d 1041, 1047 (2d Cir. 1996) ("The President has broad authority pursuant to 5 U.S.C. §§ 3301 and 7301 to regulate employment matters.").

[2] This constitutional question has not been briefed in this case and is not necessary to decide because Congress has passed the Procurement Act, which plainly authorizes EO 14042.

goals of economy and efficiency. *E.g.*, *AFL-CIO v. Kahn*, 618 F.2d 784, 792 (D.C. Cir. 1979) (en banc). As discussed in prior briefing and detailed in the Acting OMB Director's economy-and-efficiency determination, 86 Fed. Reg. 63,418, 63,418–21 (Nov. 16, 2021), the contractor vaccination requirement has the requisite nexus to those goals. *See* Defs.' Opp'n to Pls.' Renewed Mot. for Prelim. Inj. 22–27, ECF No. 52; Defs.' Opp'n to Pls.' Third Mot. for Prelim. Inj. 10–13, ECF No. 108. For all of these reasons, the *NFIB* decision is inapposite.

## II. ***Missouri*** Underscores That EO 14042 and EO 14043 Are Permissible Exercises of Longstanding Presidential Authority.

The Supreme Court's recent decision in *Missouri v. Biden* has far greater salience to this Court's consideration of EO 14042. *Missouri* concerned a Department of Health and Human Services ("HHS") regulation that requires hospitals and other healthcare facilities participating in Medicare or Medicaid to ensure that their staff are vaccinated against COVID-19, subject to religious and medical exceptions. *See Missouri*, 2022 WL 120950 at *1. The Supreme Court held that this "vaccination requirement . . . is a straightforward and predictable example of the 'health and safety' regulations that Congress has authorized [HHS] to impose." *Id.* at *4. And even though the regulation "effectively mandated vaccination for 10 million healthcare workers," the Court declined to apply the "major questions" principles invoked in *NFIB*. *Compare id.* at *1–*5 (majority opinion), *with id.* at *5, *8 (Thomas, J., dissenting).

Like the present case, *Missouri* involved a broad grant of statutory authority related to the expenditure of federal funds and the operation of federal programs. *Compare Missouri*, 2022 WL 120950 at *2 ("Congress has authorized the Secretary to impose conditions on the receipt of Medicaid and Medicare funds that 'the Secretary finds necessary in the interest of the health and safety of individuals who are furnished services.'" (quoting 42 U.S.C. § 1395x(e)(9))), *with* 40 U.S.C. §§ 101, 121 (authorizing the President to "prescribe policies and directives that the President considers necessary" to promote "an economical and efficient system" for federal contracting). In assessing the extent of HHS's power, the Supreme Court looked to "the longstanding practice of [HHS] in implementing the relevant statutory authorities." *Missouri*, 2022 WL 120950 at *2. The Court rejected the state challengers' narrow reading of the statute

because it was inconsistent with HHS's historical practice of imposing "conditions that address the safe and effective provision of healthcare, not simply sound accounting." *Id.*

Here, the Executive Branch's "longstanding practice" of issuing executive orders regarding federal procurement is similarly instructive. *See id.* In the first decades after the Procurement Act was passed, Presidents Eisenhower, Kennedy, and Johnson each issued orders forbidding contractors from discriminating on the basis of race, creed, color, or national origin, *see Kahn*, 618 F.2d at 790 (citing orders), in an effort to prevent the federal government's suppliers from "increasing its costs and delaying its programs by excluding from the labor pool available minority workmen," *Contractors Ass'n of E. Pa. v. Secretary of Lab.*, 442 F.2d 159, 170 (3d Cir. 1971). President Carter issued an order requiring government contractors to comply with wage and price standards for noninflationary behavior on the theory that slowing inflation would decrease government procurement costs. *See Kahn*, 618 F.2d at 792–93 (citing Exec. Order 12,092, 43 Fed. Reg. 51,375 (Nov. 3, 1978)). President George W. Bush issued an order requiring government contractors to post notices of certain labor rights, explaining that "[w]hen workers are better informed of their rights, . . . their productivity is enhanced." *Chao*, 325 F.3d at 367 (quoting Exec. Order No. 13,201, 66 Fed. Reg. 11,221, 11,221 (Feb. 17, 2001)). President Bush also issued an order requiring contractors to use the E-Verify system to check the lawful immigration status of their employees, reasoning that contractors with "rigorous employment eligibility confirmation policies" would be "more efficient and dependable procurement sources." *Chamber of Commerce v. Napolitano*, 648 F. Supp. 2d 726, 738 (D. Md. 2009) (quoting Exec. Order No. 13,465, 73 Fed. Reg. 33,285 (June 6, 2008)). Finally, President Obama issued an order requiring federal contractors to provide their employees with paid sick leave in order to "improve the health and performance of employees of Federal contractors" and make contractors more "competitive . . . in the search for dedicated and talented employees." Exec. Order No. 13,706, 80 Fed. Reg. 54,697, 54,697 (Sept. 7, 2015). These historical examples belie Plaintiffs' characterization of the Procurement Act as a "mouse hole," Pls.' Third Mot. for Prelim. Inj. 1, ECF No. 72 ("Third PI Mot."). To the contrary—as in *Missouri*—this history is a strong indication that the Procurement Act confers broad authority

on the President and that EO 14042 was a permissible exercise of that authority.

Further, *Missouri* recognizes that the federal government may exercise longstanding powers in new ways when faced with new challenges. Plaintiffs argue that EO 14042 is impermissible—or at least that it implicates "[m]ajor [q]uestions" principles—because "no prior Administration has ever attempted" to impose vaccination requirements on federal contractors. Pls.' Renewed Mot. for Prelim. Inj. 1, ECF No. 34 ("Renewed PI Mot."). The Supreme Court rejected a similar argument in *Missouri*. *See* 2022 WL 120950 at *3. The Court found it unsurprising that HHS's "vaccine mandate [went] further than what [HHS] has done in the past to implement infection control" because HHS "has never had to address an infection problem of [the] scale and scope" of the COVID-19 pandemic. *Id.*; *accord Bostock v. Clayton County*, 140 S. Ct. 1731, 1749 (2020) ("[T]he fact that a statute has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity; instead, it simply demonstrates the breadth of a legislative command" (cleaned up)).

That reasoning equally applies here. It is immaterial that Presidents have not previously directed inclusion of a vaccination requirement in federal contracts. *See PennEast Pipeline Co. v. New Jersey*, 141 S. Ct. 2244, 2261 (2021) ("[T]he non-use[] of a power does not disprove its existence." (citation omitted)). What matters is that Presidents have previously exercised their Procurement Act authority to respond to novel challenges with nationally significant implications, and courts have consistently upheld those orders. *See supra* p. 5. Further, Congress recently recodified—without substantive change—both the Procurement Act's statement of purpose and the operative provision authorizing the President to set procurement policies to achieve the statute's goals. *See* Pub. L. No. 107-217, 116 Stat. 1062, 1063 (2002) (recodifying statement of purpose at 40 U.S.C. § 101); *id.* at 1068 (recodifying grant of authority at 40 U.S.C. § 121(a)); *id.* at 1303 ("This Act makes no substantive change in existing law"). In so doing, Congress adopted the courts' longstanding position that the Procurement Act confers broad authority on the President. *See, e.g.*, *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1155 (9th Cir. 2010) ("[I]t is well established that 'Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-

enacts a statute without change.'" (quoting *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 240–41 (2009))). And *Missouri* confirms that the "unprecedented circumstances" of the COVID-19 pandemic "provide no grounds for limiting the exercise of authorities the [Executive Branch] has long been recognized to have," and that such authorities may be used to impose vaccination requirements like the ones challenged here. *See Missouri*, 2022 WL 120950, at *5.

*Missouri* also confirms that several of Plaintiffs' constitutional claims are without merit. Plaintiffs assert that the challenged Executive Orders are "an unconstitutional usurpation" of the States' "police power," Renewed PI Mot. at 8–9; *accord* Third Am. Compl. ¶¶ 175–81; Third PI Mot. at 1, 5–6, and that if Congress has authorized EO 14042, it "violate[s] the Constitution's nondelegation principles," Third Am. Compl. ¶ 187. The state plaintiffs in *Missouri* (including Arizona) raised similar "police power" and "non-delegation" arguments, but the Supreme Court did not accept them. *Compare* Missouri et al.'s Response to Application for a Stay 21, *and* Louisiana et al.'s Response to Application for a Stay Pending Appeal 23–24, 26–27, *with Missouri*, 2022 WL 120950, at *1–*5. Plaintiffs also assert that EO 14042 and EO 14043 violate fundamental rights protected by the Constitution. *See* Third Am. Compl. ¶¶ 172–74; Renewed PI Mot. at 25–28. While no "fundamental rights" claim was raised in *Missouri*, the claim is hard to reconcile with the Supreme Court's description of vaccination requirements as "a common feature of the provision of healthcare in America" and the Court's conclusion that HHS's vaccination requirement is lawful. *See Missouri*, 2022 WL 120950, at *3.

**CONCLUSION**

In sum, the *NFIB* decision sharply contrasts with this case, as it rested on principles of statutory construction that apply only where agencies wield major regulatory authority over private citizens—not where, as here, the President exercises his well-established power to manage the Executive Branch's operations. The *Missouri* decision is far more instructive: just as the Supreme Court concluded that the Executive Branch may make COVID-19 vaccination a "condition of participation" in Medicare and Medicaid, 2022 WL 120950, at *2, this Court should hold that the President may make COVID-19 vaccination a condition of participation in federal contracting and a requirement for holding federal employment.

Respectfully submitted this 19th day of January, 2022.

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRAD P. ROSENBERG
CHRISTOPHER R. HALL
CARLOTTA P. WELLS
Assistant Directors

*/s/ Joseph J. DeMott*
STEVEN A. MYERS
Senior Trial Counsel
JOSEPH J. DEMOTT (Va. Bar #93981)
R. CHARLIE MERRITT
KEVIN WYNOSKY
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 514-3367
Email: joseph.demott@usdoj.gov

*Attorneys for Defendants*