BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRAD P. ROSENBERG
Assistant Director, Federal Programs Branch

JUSTIN M. SANDBERG
Senior Trial Counsel
TAISA M. GOODNATURE
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5838
E-mail: justin.sandberg@usdoj.gov

*Counsel for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Brnovich *et al.*, | No. 2:21-cv-1568-MTL |
| Plaintiffs, | Designated as Related to:  2:22-cv-213-JJT |
| v. | **OPPOSITION TO STATE OF ARIZONA'S MOTION TO TRANSFER RELATED CASE** |
| Joseph R. Biden, *et al.*, | |
| Defendants. | |

## INTRODUCTION

Plaintiffs in *Arizona v. Walsh*, 2:22-cv-213, contend that the case is related to *Brnovich v. Biden*, 2:21-cv-156, and so should be transferred to this Court.  They are wrong:  the case should remain with the judge to whom it was randomly assigned.  Random judicial assignment is, of course, the norm.  There are many good reasons for this, including that it provides "impartial justice and the appearance thereof."  *Caremark LLC v. Chickasaw Nation*, 2021 WL

4710169, at *1 (D. Ariz. Oct. 8, 2021). Admittedly, the Local Rules recognize that there are times when this norm should take a back seat to interests of judicial economy, i.e., that there are times when cases are so closely related that they should be handled by the same judge. *See* L. Civ. R. 42.1. But this is not one of those times.

Plaintiffs base their position to the contrary on the purported similarity of (i) the parties to the cases and (ii) the legal questions to be decided. *See* State of Arizona's Motion to Transfer Related Case (Transfer Mot.), 21-cv-156, ECF No. 162. Neither argument holds water. Taken together, there are dozens of parties across the two cases, yet only three are present in both cases—the State of Arizona, its Attorney General, and the President of the United States, all of whom appear in scads of cases. And the questions to be decided differ meaningfully as well. While both cases present questions under the Federal Property and Administrative Services Act (FPASA or Act), 40 U.S.C. § 101 *et seq.*, they are different questions. *Brnovich* involved questions related to the President's authority under the FPASA in relation to vaccines (and, therefore, will also be referred to throughout this brief as the "Vaccine Case"), while *Arizona* raises questions about the President's authority under the FPASA in relation to contractors' wages (and, therefore, will be also referred to throughout this brief as the "Minimum Wage Case"). Other aspects of the claims presented differ as well, including that the Minimum Wage Case includes a claim under the Spending Clause, which is absent from the other case.

This is all enough to demonstrate that transfer is unwarranted. But there is one more thing that weighs against transfer: timing. The Court has already entered final judgment (and issued a lengthy written opinion) on the vaccine-related claims in *Brnovich,* whereas the Minimum Wage Case is in its infancy. Thus, there will be no efficiencies related to common hearing times or complementary briefing schedules. And even more, given that the Court had entered an injunction in the State's favor as to the FPASA claim in the Vaccine Case prior to the transfer motion being filed, a transfer would create the "appearance of forum shopping," which "militates against transfer." *Pangerl v. Ehrlich*, 2007 WL 686703, at *4 (D. Ariz. 2007). Plaintiffs' motion should be denied.

2

1

**BACKGROUND**

2       Plaintiffs filed the complaint in the Minimum Wage Case on February 9, 2022. Compl.,

3   22-cv-213, ECF. No. 1.  It targets, among other things, Executive Order 14026, Increasing the

4   Minimum Wage for Federal Contractors (EO), April 27, 2021.  In general terms, this EO

5   specifies that, to the extent possible, executive agencies of the United States will ensure that

6   covered contractors pay at least a $15 per-hour minimum wage to employees working on or

7   in connection with covered federal contracts.  Plaintiffs call this the "Contractor Minimum

8   Wage Mandate."  Compl., 22-cv-213, ECF. No. 1, at 1.  And, after asserting that the "the

9   United States is not a dictatorship," they contend that the EO is illegal, an alleged transgression

10   of the FPASA.  They also raise a bevy of other claims, including a claim that the FPASA

11   violates the Spending Clause if it permits the EO.  On the same date that Plaintiffs filed the

12   complaint, they filed a motion to transfer the Minimum Wage Case to this Court.  Transfer

13   Mot., 21-cv-1568, ECF No. 162. (When they filed the motion, the Minimum Wage Case had

14   been assigned to Judge Logan; after his recusal, it was randomly reassigned to Judge Tuchi.

15   Order, 22-cv-213, ECF No. 8.)

16       Roughly two weeks prior to the filing of the transfer motion, this Court entered a per-

17   manent injunction in favor of the State of Arizona (among others) and against various federal

18   defendants as to the requirement that employees of federal contractors be vaccinated against

19   COVID-19.  Order, 21-cv-1568, ECF No. 156, Jan. 27, 2022.  The complaint in the Vaccine

20   Case includes claims not only under the FPASA, but also under the Due Process Clause and

21   the Tenth Amendment, as well as immigration-related claims.  Am. Compl., 21-1568, ECF

22   No. 134.  By contrast, the complaint in the Minimum Wage Case alleges violations of, among

23   other things, the FPASA and the Spending Clause, but not the Due Process Clause or the

24   Tenth Amendment.  *Compare* Compl., 22-cv-213, ECF. No. 1 *with* Am. Compl., 21-1568, ECF

25   No. 134.

26

**ARGUMENT**

27       As a default rule, civil cases are assigned to District Judges "by automated random

28   selection and in a manner so that neither the Clerk nor any parties or their attorneys will be

able to make a deliberate choice of a particular Judge." L. Civ. R. 3.7(a). This procedure provides "impartial justice and the appearance thereof." *Caremark LLC*, 2021 WL 4710169, at *1.   But the Local Rules also allow a party to seek to transfer its case to another judge in this district—i.e., to have a hand in the selection of the judge for its case—when that judge has a related case. *See* L. Civ. R. 42.1.  Courts apply a five-part test when determining whether the cases are sufficiently related to merit transfer. *Id.*  Specifically, courts assess whether the cases:

> (1) arise from substantially the same transaction or event; (2) involve substantially the same parties or property; (3) involve the same patent, trademark, or copyright; (4) call for determination of substantially the same questions of law; or (5) [would] for any other reason [ ] entail substantial duplication of labor if heard by different Judges.

*Id.*  Courts do not apply this rule mechanically.  Rather, they have broad discretion to determine whether transfer is appropriate, *Addington v. US Airline Pilots Ass'n*, 2010 WL 4117216, at *1 (D. Ariz. Oct. 19, 2010), and a "principal factor" guiding that discretion "is whether party economy or judicial economy is substantially served by transfer to another judge." *City of Phoenix v. First State Ins. Co.*, 2016 WL 4591906, at *20 (D. Ariz. Sept. 2, 2016), *aff'd*, No. 16-16767, 2018 WL 1616011 (9th Cir. Apr. 4, 2018).  Finally, courts have held that even the "appearance of forum shopping militates against transfer." *Pangerl*, 2007 WL 686703, at *4; *Toomey v. Arizona*, 2020 WL 6149843, at *2 (D. Ariz. Oct. 20, 2020) (quoting *Pangerl* regarding the appearance of forum shopping and transfer).

Plaintiffs argue that the Minimum Wage Case should be transferred to this Court because it and the Vaccine Case "involve many of the same parties and involve fundamentally the same questions of law, and it would advance judicial economy if they were related." Transfer Mot. at 2.  Plaintiffs are not merely wrong on all counts; the effort to transfer the Minimum Wage Case to this Court, after the entry of a permanent injunction in the Vaccine Case in favor of the State of Arizona, also creates the "appearance of forum shopping," which "militates against transfer." *Pangerl*, 2007 WL 686703, at *4.

These cases do not involve "substantially the same parties." L. Civ. R. 42.1. In the Vaccine Case, there are five plaintiffs and 29 defendants. Am. Compl., 21-cv-1568, ECF No. 134. In the Minimum Wage Case, there are six plaintiffs and five defendants. Compl., 22-cv-213, ECF. No. 1. Between these two cases, and the dozens of parties involved in them, there are only three parties in common: Arizona and its Attorney General are plaintiffs in both cases, and President Biden is a defendant in both actions. Plaintiffs concede that "the parties are not exactly the same," but contend that "both cases involve the State of Arizona suing the Federal government." Transfer Mot. at 2. This is true, but unpersuasive. The state and federal governments "often cross swords" with each other, *Cont'l Cas. Co. v. Platinum Training LLC,* 2021 WL 4522281, at *2 (D. Ariz. Oct. 4, 2021) (noting the argument that frequent litigants often end up opposing each other), commonly, and increasingly, with the State as plaintiff, *see Arizona v. U.S. Dep't of Homeland Security,* 2:21-cv-186; *Ducey v. Yellen,* 2:21-cv-514; *Brnovich v. Biden,* 2:21-cv-1568; *Arizona v. Walsh,* 2:22-cv-213; *see also* Jonathan Remy Nash, *State Standing for Nationwide Injunctions Against the Federal Government,* 94 Notre Dame L. Rev. 1985, 1991 (2019) (noting the growth in "state lawsuits against the federal government"). Using this two-govern-ments-is-enough standard would result in the State having the opportunity to scan the sizeable number of cases that it has lodged against the federal government and choose, as the proposed destination for any new case, the court that it thinks will be most solicitous of its position.

Not only do these cases not involve substantially the same parties, but they also do not "call for the determination of substantially the same questions of law." L. Civ. R. 42.1. Plain-tiffs argue that "both cases call for determination of precisely the same issues of law; namely, the scope of the President's authority under 40 U.S.C. § 101 and his ability to impose non-efficiency-minded policy preferences under the pretext of providing the government with an economical and efficient system for procuring property and services." Transfer Mot. at 2. Setting aside the tendentiousness of Plaintiffs' summary of the FPASA questions raised in these cases, the crux of their position seems to be that the cases are related because both involve the question of whether there is a sufficient "nexus" between the President's actions

1    and the authority granted to him in the Act.  *See UAW-Lab. Emp. & Training Corp. v. Chao*, 325

2    F.3d 360, 367 (D.C. Cir. 2003) (noting the nexus requirement and finding it met).

3         Viewing the case at this level of generality obscures the critical differences between the

4    questions presented under the FPASA.  The question of whether the President could, con-

5    sistent with the Act, insist that contractors' employees receive the COVID-19 vaccine is not

6    the same as the question of whether, under the Act, the President can require federal executive

7    agencies' contracting partners to pay a $15-per-hour minimum wage to employees working on

8    or in connection with a covered federal contract.  While the answer to both questions is "yes"

9    in Defendants' view, these are distinct questions—vaccines and wages are different, after all.

10   *Cf. Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1333 (D.C. Cir. 1996) ("The President's

11   authority to pursue 'efficient and economic' procurement . . . has been interpreted to permit

12   . . . restricting wage increases on the part of government contractors.").  But under Plaintiff's

13   theory, every case raising a question about the President's authority under the FPASA would

14   be related to all others, whether they dealt with wages, equal employment efforts, union rela-

15   tions, vaccines, or anything else.  Adopting this theory of relatedness would allow the transfer

16   exception to swallow the random assignment rule.  To see this, one need only consider the

17   effects of this theory, whereby cases are judged from the 30,000-foot level, on Title VII cases,

18   or Social Security cases, or Eighth Amendment cases, or immigration cases, or any of the other

19   kinds of cases that constitute the bulk of this District's docket.  Every Title VII case about

20   potentially discriminatory remarks in the workplace would be related to all other Title VII

21   cases raising the "same" question, and so on.  This is a path to hand-picked judges, not judicial

22   economy.

23        But the difference in substantive questions raised under the FPASA is not the only

24   difference between these cases.  The Vaccine Case also included challenges to emergency use

25   authorizations under 21 U.S.C. § 360bbb-3, as well as claims under the Due Process Clause

26   and Tenth Amendment.  Am. Compl., 21-cv-1568, ECF No. 134, ¶¶ 167-85.  It even has

27   immigration-related claims.  *Id.* ¶¶ 216-234.  No such claims are present here.  Compl., 22-cv-

28   213, ECF. No. 1.  And this case has a claim under the Spending Clause, which is absent from

the Vaccine Case. *Id.* ¶¶ 148-155. There are simply too many "important differences" between the questions raised in these cases to justify transfer. *Toomey*, 2020 WL 6149843, at *2 (declining to transfer case because of their differences, notwithstanding some similarities).

Contrary to Plaintiffs' assertion, a transfer would not "advance judicial economy." Transfer Mot. at 2. Moreover, while not dispositive, the fact that these cases are at very different stages undercuts the argument that a transfer would aid judicial economy. *See Cooke v. Town of Colorado City, Ariz.*, 2012 WL 5835401, at *2 (D. Ariz. Nov. 16, 2012) ("Accordingly, because the cases are at very different stages of litigation and address different issues, transfer would not be economical."). The Court has issued a lengthy merits opinion and entered judgment on the vaccine-related claims in the earlier case, whereas the Minimum Wage Case was filed only recently. Accordingly, there could be no common hearing dates, complementary briefing schedules, or any other coordination that would make litigation of the cases more efficient.

Indeed, Plaintiffs' request to transfer the Minimum Wage Case now, after the Court has entered an injunction in favor of the State of Arizona in the Vaccine Case, creates the "appearance of forum shopping," which "militates against transfer." *Pangerl*, 2007 WL 686703, at *4; *see also Toomey*, 2020 WL 6149843, at *2. To be clear, Defendants have no doubt that the Court would adjudicate this case fairly on its own merits, but that is not the point: even the mere "appearance of forum shopping" weighs against transfer. This is one reason why, in *Pangerl*, the Court denied a transfer motion where it appeared that a Plaintiff was trying to move her case away from a judge who might be sympathetic to a defendant's qualified immunity defense. *Pangerl*, 2007 WL 686703, at *4. It was also a reason that the Court, in *Toomey*, denied a Plaintiff's motion to transfer a newer case to a Court handling a more advanced case, in which the Court had "already denied the defendants' motion to dismiss and granted the plaintiff's motion to certify a class." 2020 WL 6149843, at *2. And it should be a reason that the Court denies Plaintiffs' transfer motion here.

## **CONCLUSION**

For the reasons stated above, the Court should deny Plaintiffs' motion to transfer.

Dated: February 23, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

BRAD P. ROSENBERG
Assistant Branch Director
Federal Programs Branch

*/s/ Justin M. Sandberg*
JUSTIN M. SANDBERG
Senior Trial Counsel
Illinois Bar No. 6278377
TAISA M. GOODNATURE
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street NW
Washington, D.C. 20005
Telephone: (202) 514-5838
E-mail: justin.sandberg@usdoj.gov

*Counsel for Defendants*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 23, 2022, I electronically transmitted the foregoing to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants for this matter.

*/s/ Justin M. Sandberg*
JUSTIN M. SANDBERG
