BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
EREZ REUVENI
Assistant Director
ELISSA FUDIM
Trial Attorney
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 598-6073
Email: elissa.p.fudim@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Mark Brnovich, in his official capacity as Attorney General of Arizona, *et. al*,<br><br>*Plaintiffs*,<br><br>v.<br><br>Joseph R. Biden in his official capacity as President of the United States, *et. al*<br><br>*Defendants*. | Civil Action No. 2:21-CV-1568-MTL |

**DEEFENDANTS' MOTION TO STAY THIS CASE PENDING THE SUPREME COURT'S DECISION IN BIDEN V. TEXAS**

In this case, Plaintiff State of Arizona alleges that 8 U.S.C. § 1225(b) requires the government to initiate removal proceedings against every noncitizen arriving at the Southern border and to detain them for those proceedings, without exception, and that 8 U.S.C. § 1182(d)(5)—which grants DHS discretion to release noncitizens detained under section 1225 from custody on a case-by-case basis for "urgent humanitarian reasons or significant public benefit"—does not permit release of noncitizens under section 1225(b) while their asylum proceedings are ongoing. Arizona alleges that any contrary actions violate the Administrative Procedure Act (APA), the Immigration and Nationality Act (INA), and the Constitution, including the Separation of Powers Doctrine and the Take Care Clause.[1]

In its Third Amended Complaint, Arizona explicitly bases its claims and primary argument concerning the meaning of the INA's detention and parole authorities—and hence all five of its claims directed at the government's alleged parole policies—on the recent decision in *Texas v. Biden*, 10 F.4th 538 (5th Cir. 2021), *cert. granted*, No. 21-954 (U.S. Feb. 18, 2022). In that case, the Fifth Circuit ruled that the termination of Migrant Protection Protocols (MPP) violated the INA because section 1225(b) requires DHS to either detain noncitizens arriving on land at the Southern border or return them to Mexico, and DHS may not use its parole authority under section 1182(d)(5) to release noncitizens instead of detaining or returning them except in extremely narrow circumstances. *Texas*, 20 F.4th at 989-98. The Government sought certiorari to challenge these issues in *Texas*, Exhibit A (Government's Petition for Writ of Certiorari, *Texas v. Biden*, No. 21-954), and the Supreme Court has agreed to review the case, and to do so this term. *Biden v. Texas*, No. 21-954, 2022 WL 497412, at *1 (Supreme Court Order List, Feb. 18, 2022).

Given that this case and *Texas* involve overlapping issues concerning the meaning of multiple provisions of the INA, the Supreme Court's decision in *Texas* will control the

---

[1] Plaintiff has abandoned its thirteenth cause of action, alleging violation of the Constitution and INA, by failing to defend the claim in opposition to the Defendants' Motion to Dismiss.

outcome of many, if not all, of the claims Arizona raises in its third amended complaint (TAC). Accordingly, principles of judicial economy, including the avoidance of inconsistent judgments and conflicting injunctions, counsel this Court to stay this case until the Supreme Court issues its decision in *Texas*. *See, e.g.*, *West Virginia v. U.S. Dep't of Homeland Sec.*, No. 2:21-cv-00022-TSK (N.D. W.Va. Jan. 26, 2022), ECF No. 31 (staying case raising similar issues pending Supreme Court's decision in *Texas*). And given that the Supreme Court has expedited the case, Plaintiff will not be seriously prejudiced, as the Court will likely issue a decision no later than June.

## BACKGROUND

Legal Background. On January 25, 2019, then-Secretary of Homeland Security Kirstjen Nielsen instituted MPP—a novel, programmatic use of 8 U.S.C. § 1225(b)(2)(C)—authorizing immigration officers to exercise the Secretary of Homeland Security's discretion regarding whether to return to Mexico certain noncitizens arriving on land from Mexico pending their removal proceedings under 8 U.S.C. § 1229a, and providing guidance for making that discretionary determination. *Texas*, 10 F.4th at 543. Implementing MPP required the assistance of the Government of Mexico, which took a variety of steps to assist the United States and the individuals who were returned under the program. *Id.* In March 2020, however, removal proceedings before the immigration courts were generally suspended as a result of the COVID-19 pandemic (including for noncitizens waiting in Mexico under MPP), and DHS's use of MPP dramatically decreased as many noncitizens encountered at the border were instead expelled under Title 42, *see* 42 U.S.C. §§ 265, 268, based on an order from the Centers for Disease Control and Prevention.

On January 20, 2021, DHS issued a memorandum titled "Suspension of Enrollments in the Migrant Protection Protocols Programs." *Texas*, 10 F.4th at 544. That memorandum suspended new enrollments in MPP to allow DHS time to review and evaluate the program. *Id.* President Biden subsequently directed DHS "to promptly review and determine whether to terminate or modify [MPP]." Executive Order 14010, 86 Fed. Reg. 8267 (Feb. 2, 2021). On June 1, 2021, DHS terminated the program after Secretary Alejandro Mayorkas

reviewed the program's effectiveness and concluded that any benefits of maintaining MPP were outweighed by the benefits of terminating the program. *Texas*, 2021 WL 3603341, at *8 (N.D. Tex. Aug. 13, 2021). The Secretary's conclusion was based on several factors, which he described in a comprehensive memorandum. *Id.* Further, in additional to the rationale provided in the June 1 memorandum, DHS understood the INA's use of the term "may" to confer full discretion on the Secretary to decide *not* to use the contiguous-country return authority in a programmatic manner such as for MPP, *see* 8 U.S.C. § 1225(b)(2)(C) (the Secretary "may return" certain noncitizens "arriving on land ... from a foreign territory contiguous to the United States ... to that territory"). DHS also understood that the use of "shall" in section 1225(b)(2)(A) ("shall be detained") does not override its traditional law-enforcement discretion to determine who should face enforcement action. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 761 (2005). And, finally, DHS understood section 1182(d) to permit it to exercise discretion to parole noncitizens into the United States as long as parole was granted "on a case-by-case basis for urgent humanitarian reasons or significant public benefit," 8 U.S.C. § 1182(d)(5)(A), a calculus that lawfully takes detention capacity into account, *see Padilla v. ICE*, 953 F.3d 1134, 1145 (9th Cir. 2020), *vacated on other grounds*, 141 S. Ct. 1041 (2021).

Meanwhile, on April 13, 2021, the States of Missouri and Texas filed suit in the Northern District of Texas, seeking injunctive relief against the Secretary's pause of new enrollments in, and later the termination of, MPP. *Id.* at *1. On August 13, 2021, following a one-day bench trial, the district court issued a nationwide injunction requiring DHS "to enforce and implement MPP." *Id.* at *27-*28, *stay denied*, *Texas v. Biden*, 10 F.4th 538 (5th Cir. Aug. 19, 2021), *stay denied*, *Biden v. Texas*, No. 21A21, --- S. Ct. ----, 2021 WL 3732667 (U.S. Aug. 24, 2021). The district court concluded that the June 1 memorandum ending MPP violated the APA and 8 U.S.C. § 1225(b). *Id.* The district court's nationwide injunction requires DHS "to enforce and implement MPP in good faith until such a time as it has been lawfully rescinded in compliance with the APA and until such a time as the federal government has sufficient detention capacity to detain all aliens subject to

mandatory detention under Section [1225] without releasing any aliens because of a lack of detention resources." *Id.* at *27. The district court also vacated the June 1 memorandum "in its entirety and remanded to DHS for further consideration." *Id.*

On October 29, 2021, while the government's appeal of the *Texas* injunction was pending before the Fifth Circuit, the Secretary announced that, following the district court's remand, he had re-evaluated whether MPP should be continued, modified, or terminated, and concluded that it should be terminated. *Texas*, 20 F.4th at 945-46 (citing Dep't of Homeland Sec., Explanation of the Decision to Terminate the Migrant Protection Protocols (2021), https://perma.cc/4KT6-T82Z). After considering the additional factors highlighted by the district court, the Secretary concluded that MPP or a modified version of it is not the best or preferred strategy for implementing the Administration's policy goals and that the benefits of MPP or a modified version of it are far outweighed by the costs of continuing to use the program. *See id.*

On December 13, 2021, the Fifth Circuit denied the government's motion to remand the case for consideration of the October 29 memorandum and instead affirmed the district court's decision requiring the government to restart MPP. *Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021). The court held that section 1225(b) allows the Government only the option of detaining or returning noncitizens apprehended at the border but "comes nowhere close to giving the Government unreviewable discretion to terminate MPP and release undocumented immigrants into the United States *en masse*" under parole. *Id.* at 978. The Court further concluded that "DHS cannot use that power to parole aliens *en masse*; that was the whole point of the 'case-by-case' requirement that Congress added in IIRIRA." *Id.* at 997 (internal citation omitted).

On December 29, 2021, the Government filed a petition for writ of certiorari with the Supreme Court asking the Court to review that decision. Ex. A. The Government challenges the Fifth Circuit's holding that section 1225(b) requires the Government to either detain or return, but generally not parole, all inadmissible noncitizens apprehended at the border, its conclusion that the Government's parole practices violate the "case-by-

case" analysis required by section 1182(d)(5), and its conclusion that the October 29 decision terminating MPP had no legal effect. *Id.* On February 18, 2022, the Supreme Court granted review of *Texas*, No. 21-954, and set the case for argument in April 2022. A decision can be expected to issue by the end of the Supreme Court's current Term, likely in June.

This Lawsuit. Plaintiff, the State of Arizona, alleges that Custom and Border Protection's use of Notices to Report (in lieu of Notices to Appear), and its release on parole of noncitizens based in part on detention capacity violates the APA and INA (Counts 9-12) and the Constitution (Count 13). TAC at ¶¶ 216-234. Plaintiff asks the Court to hold unlawful and set aside Defendants' alleged "policy of releasing arriving aliens subject to mandatory detention, of paroling aliens without engaging in case-by-case adjudication or abiding by the other limits on that authority, and of failing to serve charging documents or initiate removal proceedings" and permanently enjoin Defendants "from releasing arriving aliens subject to mandatory detention, [] paroling aliens without engaging in case-by-case adjudication or abiding by the other limits on that authority, and [] failing to serve charging documents or initiate removal proceedings against plainly inadmissible aliens who are being released into the interior of the United States." TAC at 68-69, ¶¶ F, I.

Arizona's claims are premised heavily on the Fifth Circuit's reading of the INA in *Texas*. Arizona contends that noncitizens apprehended at the border are subject to mandatory detention under section 1225(b)(1) or (2). *See* TAC at ¶¶ 137-138, 218, 232 (citing *Texas*, 20 F.4th at 996, for the proposition that § 1225 mandates detention). Arizona claims "[t]here are only two exceptions to this mandatory detention rule"—return to a contiguous country under section 1225(b)(2)(C) or temporary parole into the United States under section 1182(d)(5). *See* Plaintiff's Opposition to Motion to Dismiss, ECF No. 167, at 10. But, Arizona alleges, "the government 'cannot use that power to parole aliens en masse.'" *Id.* (quoting *Texas*, 20 F.4th at 997).

The crux of Arizona's claim—echoing, again, the Fifth Circuit's decision in *Texas*—is that the number of noncitizens that the Government is allegedly releasing on

parole generally, or through the now discontinued use of NTRs specifically, can only mean that the government is releasing noncitizens on parole *en masse*, in violation of sections 1225(b) and 1182(d) as interpreted by *Texas*. *See* TAC at ¶ 132 ("Releasing this many arriving aliens into the interior necessarily means that the government is violating Congress's commands in the INA. If immigration officials are simply releasing these aliens, they are violating the mandatory detention provisions in Section 1225. If they are, instead, paroling each of these individuals, they are not limiting the use of parole to 'case-by-case bas[e]s' nor to situations presenting 'urgent humanitarian reasons or significant public benefit.' 8 U.S.C. § 1182(d)(5)(A)."). And, Arizona openly claims that it is challenging in this lawsuit some of the same purported violations found in *Texas*. *See* TAC at ¶ 137 ("The Administration has even been found to have violated Section 1225(b)'s detention requirements, the same requirements Arizona claims the government is violating here.")

## ARGUMENT

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). The power to issue a stay derives from the Court's "inherent" authority to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) (recognizing "the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases"). Thus, a district court's decision to grant or deny a *Landis* stay is a matter of discretion. *See Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). In determining whether to grant a motion to stay, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quotations and citation omitted). Those interests include "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the

orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). The Court may "find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case." *Navigators Ins. Co.*, 498 F.3d at 1066 (quoting *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 863–64 (9th Cir. 1979) (Kennedy, J.)). "This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva*, 593 F.2d at 863–64.

Here, the relevant factors strongly weigh in favor of staying this case pending the Supreme Court's ruling in *Texas*, which will clarify many if not all of the legal issues presented in this case. First, courts routinely grant stays when a higher court is considering a legal issue that bears upon the case. *See e.g.*, *Ganezer v. DirectBuy, Inc.*, 571 F.3d 846 (9th Cir. 2009) (remanding to the district court with instructions to stay proceedings pending a decision by the United States Supreme Court in another matter); *Whittaker v. WinRed Tech. Servs. LLC*, No. CV-20-08150-PCT-JJT, 2021 WL 1102297, at *3 (D. Ariz. Mar. 23, 2021) (granting stay pending decision by Supreme Court); *Zepeda v. United States*, No. CV1701229, 2019 WL 4573508, at *1 (D. Ariz. Sept. 20, 2019) (granting a stay to simplify the issues and promote judicial economy where Ninth Circuit was anticipated to issue an en banc decision bearing on the case); *Aleisa v. Square, Inc.*, No. 20-CV-00806-EMC, 2020 WL 5993226, at *7 (N.D. Cal. Oct. 9, 2020) (granting a stay pending Supreme Court decision); *In re Sequenom, Inc. Stockholder Litig.*, No. 16-CV-02054-JAH-BLM, 2019 WL 1200091, at *2 (S.D. Cal. Mar. 13, 2019) (granting a stay because the Supreme Court's decision in a pending case would directly affect the issues before the court); *see also Yasa v. Esperdy*, 80 S. Ct. 1366, 1366 (1960) (noting "the Court of Appeals has granted a stay pending disposition of the petition for certiorari" in a case addressing a similar issue). Indeed, many cases with issues overlapping those involved

in MPP were stayed when the Supreme Court first examined the program in 2020 in a challenge to its implementation. *See, e.g.*, Order, *Doe v. Mayorkas*, No. 20-55279 (9th Cir. Dec. 12, 2020) (staying submission of appeal pending Supreme Court's resolution of *Wolf v. Innovation Law Lab*, No. 19-1212); Order, *Vasquez v. Mayorkas*, No. 20-1554 (Nov. 2, 2020) (holding appeal related to MPP in abeyance pending the Supreme Court's adjudication of *Wolf v. Innovation Law Lab*, No. 19-1212); Order, *Cruz v. DHS*, No. 19-5359 (Oct. 20, 2020) (sua sponte holding in abeyance appeal related to MPP pending disposition of *Innovation Law Lab*); *see also West Virginia*, *supra,* at 5 (staying challenge related to MPP because "the issues pending before this Court overlap with those scheduled to be heard for argument before the Supreme Court in April of this year" and "the prejudice of duplicative litigation is high, such that the important interest of judicial economy is furthered by a stay as there is risk of competing or conflicting decisions and findings.").

The Supreme Court's ruling in *Texas v. Biden* is likely to resolve or at least narrow the issues presented in this case, as illustrated by the issues presented in the *Texas* certiorari petition. *See* Ex. A. That case raises the same issues that form the basis for Arizona's complaint: namely, whether section 1225(b) mandates that the Government detain all or nearly all inadmissible noncitizens apprehended at the Southern border or return them to Mexico, and whether and to what extent the parole authority in section 1182(d) permits the Government to parole noncitizens into the United States pending their immigration proceedings. *Compare* Ex. A *with* ECF No. 134 (TAC), 167 (Arizona's Opposition to Motion to Dismiss). The Supreme Court's potential ruling on the obligations imposed and/or discretion conferred on the Government by sections 1225(b) and 1182(d) with respect to inadmissible noncitizens apprehended at the Southern border will have a direct impact on the theory of Defendants' wrongdoing proffered by Arizona in this case, and will resolve or substantially narrow the issues presented here.

It is particularly significant that Arizona expressly relies on the constructions of section 1225(b) and section 1182(d) espoused by the Fifth Circuit in *Texas*, and cites that opinion at several points in the Third Amended Complaint, *see, e.g.*, ECF No. 134 ¶¶ 135,

137, 138, 139, as well as extensively in its opposition to Defendants' motion to dismiss, *see e.g.* ECF No. 167 at pgs. 2, 3, 4, 5, 8, 19, 20, 21, 22, 31. Arizona's "not in accordance with law" and "agency action unlawfully withheld" and INA and Constitutional claims (Counts 9, 12, 13) mirror the parallel APA, INA, and Constitutional claims in *Texas*, in that all argue that section 1225(b) prohibits DHS from releasing on parole, as opposed to detaining or returning, noncitizens within the statute's scope. *Compare* ECF No. 134 ¶¶ 216-221, 231-232, and 233-234 *with Texas*, 20 F. 4th at 993-98. Arizona's Counts 9 and 10 argue that Defendants' alleged parole policies are arbitrary and capricious under the APA because Defendants ignored the State's reliance interests and costs, failed to consider lesser alternatives, and improperly considering resource constraints—language which closely follows the Court's reasoning (as applied to the termination of MPP) in *Texas*. *Compare* ECF No. 134 ¶¶ 216-227 *with Texas*, 20 F.4th at 989-93. These claims may be indirectly addressed by the Supreme Court, as they depend on the construction of sections 1225(b) and 1182(d)(5).

        Second, waiting for the Supreme Court to resolve the statutory interpretation issues common to both this case and *Texas* would both simplify the issues and reduce the burden of litigation on the parties and on the court by sparing the parties and Court from engaging in such work, which would be at best duplicative and potentially erroneous once the Supreme Court speaks definitively on these issues.

        Third, were this Court to grant Arizona its requested relief prior to resolution of *Texas* by the Supreme Court, the Government faces a very real likelihood of being subject to overlapping and inconsistent judgments. Courts routinely stay cases to avoid imposing inconsistent judgments. *See, e.g.*, *Bergh v. State of Wash.*, 535 F.2d 505, 507 (9th Cir. 1976) ("When an injunction sought in one federal proceeding would interfere with another federal proceeding, considerations of comity require more than the usual measure of restraint, and such injunctions should be granted only in the most unusual cases."); *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1224 (11th Cir. 1999) (holding that, among other factors, the risk of inconsistent judgments indicated that the district court should have stayed the

case); *Hart Interior Design LLC 401(k) Profit Sharing Plan v. Recorp Invs. Inc.*, No. CV-16-02347-PHX-GMS, 2018 WL 1961643, at *7 (D. Ariz. Apr. 26, 2018) (issuing staying to avoid the risk of inconsistent rulings); *Hawai'i v. Trump*, 233 F. Supp. 3d 850, 856 (D. Haw. 2017) (finding duplicative litigation and the risk of inconsistent rulings warranted stay); *see also SST Millennium LLC v. Mission St. Dev. LLC*, No. 18-cv-06681, 2019 WL 2342277, at *5 (N.D. Cal. June 3, 2019) (finding risk that arbitration could find no liability while a simultaneous court action could find liability a "clear case of hardship or inequity" (citation omitted).

Finally, none of the stay factors counsel *against* staying this case briefly until the Supreme Court issues its decision in *Texas*. Given the Supreme Court's decision to expedite review of *Texas* and hear it this term, such a stay has a reasonably definite and near-in-time endpoint and a tightly congruent rationale—the Supreme Court's decision in Texas in June may resolve or substantially narrow the very APA and INA issues raised by Arizona here. *See Provo v. Rady Children's Hosp.-San Diego*, No. 15-cv-81, 2015 WL 6144029, at *2 (S.D. Cal. July 29, 2015) ("[T]he Supreme Court is likely to issue a decision within one year and neither party will be significantly prejudiced by a less than one year delay."). Further, Arizona suffers little if any prejudice from this short-term stay given that the *Texas* injunction remains in effect and requires the Secretary to use his contiguous-territory-return authority in the meantime. Indeed, that is likely why, despite filing this case many months ago, Plaintiff has not sought a preliminary injunction. Further, Arizona chose to amend its complaint to benefit from and mirror the holdings in *Texas* (*compare* ECF No. 1, Complaint, with ECF No. 14, First Amended Complaint), and therefore cannot claim undue prejudice from the State's own litigation choices.

## CONCLUSION

The Supreme Court has granted certiorari on an expedited basis to consider many of the same legal issues at play in this case. Accordingly, a stay would preserve the resources of the Court and the parties, allow them to avoid the risk of inconsistent judgments, and would be of a reasonable, limited, duration. Plaintiff will not be prejudiced

by a stay because the nationwide injunction in *Texas* is currently operational, and the stay is likely to be short in duration. For all these reasons and those set forth in further detail above, this Court should stay this case pending a decision by the Supreme Court in *Biden v. Texas*.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

*/s/ Elissa Fudim*
ELISSA FUDIM
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-6073
Email: elissa.p.fudim@usdoj.gov

*Counsel for Defendants*