BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
EREZ REUVENI
Assistant Director
ELISSA FUDIM
Trial Attorney
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 598-6073
Email: elissa.p.fudim@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Mark Brnovich, in his official capacity as Attorney General of Arizona, *et. al*,<br><br>            *Plaintiffs*,<br><br>v.<br><br>Joseph R. Biden in his official capacity as President of the United States, *et. al*<br><br>            *Defendants*. | Civil Action No. 2:21-CV-1568-MTL |

**DEEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR JURISDICTIONAL DISCOVERY**

**INTRODUCTION**

Plaintiff, the State of Arizona, claims to seek "targeted jurisdictional discovery for the purpose of establishing its standing as to the Immigration Claims," Plaintiff's Motion, ECF No. 177 ("Pl. Mot.")—impliedly conceding it failed to establish standing in the Third Amended Complaint ("TAC"). Plaintiff does so in violation of Local Civil Rule 7.2(j), as Plaintiff did not confer with Defendants before seeking this relief. The basis for Plaintiff's motion, Plaintiff explains, is recent "press reports" and emails—issued months *after* the filing of the operative complaint in this case—allegedly containing information about "the broad scope of Defendants' Non-Detention and Parole Policies . . . on the Texas border." *Id*. Plaintiff argues the Court should therefore permit discovery to determine if Defendants are "undertaking equivalent actions" on the Arizona border. *Id*. In addition to being poorly defined and speculative, the discovery Plaintiff seeks is not relevant to standing—i.e., the harm it claims to suffer—but instead to the merits of its claims. That is, the gravamen of Plaintiff's TAC challenges Defendants' interpretation of two statutes, 8 U.S.C. §§ 1182(d) and 1225(b), and claims that the government violates those statutes to the extent it paroles noncitizens "en masse" based on detention capacity constraints. Whether Defendants parole noncitizens "en masse" does not go to Article III standing. As to actual Article III standing, it is Plaintiff, not Defendants, who is in the best position to know the facts relevant to standing—i.e., the harm it alleged in its complaint that it suffers in Arizona from Defendants' alleged policies. Accordingly, the discovery Plaintiff seeks is clearly not jurisdictional discovery.

But even if it were, it should still be denied because the press releases and emails upon which Plaintiff bases its argument for discovery relate to a program, Parole Plus Alternatives to Detention ("Parole + ATD"), which Plaintiff does not challenge in the TAC—and as applied in a state other than Arizona.—. Further, to the extent that Plaintiff bases its request for discovery upon events that occurred following the filing of the Complaint, Plaintiff's request fails. It is textbook law that jurisdiction is evaluated at the time of the filing of the complaint, *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d

832, 838 (9th Cir. 2007), and so events post-dating the filing the complaint are irrelevant to Article III standing.

Finally, even if jurisdictional discovery were appropriate—which it is not—it is not appropriate now while both a Motion to Dismiss, containing threshold questions, and a Motion to Stay are pending. As such, this Court should deny Plaintiff's motion for jurisdictional discovery.

The Court should similarly deny Plaintiff's request for the early production of the administrative record. The Supreme Court has cautioned that district courts should resolve threshold legal questions where doing so likely would eliminate the need for the district court to examine an administrative record. *See In re United States*, 138 S. Ct. 443 (2017) (per curiam). The same principles of judicial economy counsel against ordering the production of an administrative record before the Court rules upon Defendants' Motion for a Stay.

For all these reasons, the Court should deny Plaintiff's motion for jurisdictional discovery and advance production of the administrative record. At a minimum, this Court should rule upon Defendants' Motion for a Stay, ECF No. 175, and Motion to Dismiss, ECF No. 146, before entertaining Plaintiff's discovery motion.

## BACKGROUND

Plaintiff alleges that U.S. Customs and Border Protection's ("CBP") use of Notices to Report ("NTR") (in lieu of Notices to Appear ("NTA"))[1], and its release on parole of noncitizens based in part on detention capacity violates the Administrative Procedure Act ("APA") and Immigration and Nationality Act ("INA") (Counts 9-12) and the Constitution (Count 13). TAC at ¶¶ 216-234. Plaintiff asks the Court to hold unlawful and set aside

---

[1] Beginning in March 2021, U.S. Customs and Border Protection ("CBP") temporarily authorized the use of NTRs to relieve overcrowding in congregate settings and to better protect its workforce and noncitizens in CBP custody "when [noncitizen] encounters were consistently high, operational capacity strained, and COVID-19 acute." *See* Exhibit A to the Motion to Dismiss, ECF No. 146. NTRs were permitted in place of NTAs, the issuance of which are considerably more time consuming. *Id*. On November 2, 2021, CBP issued a memorandum ceasing the use of NTRs, *id.* stating that, "[g]oing forward, CBP will prioritize resources to issue NTAs to noncitizens who are processed for release." *Id*.

Defendants' alleged "policy of releasing arriving aliens subject to mandatory detention, of paroling aliens without engaging in case-by-case adjudication or abiding by the other limits on that authority, and of failing to serve charging documents or initiate removal proceedings" and permanently enjoin Defendants "from releasing arriving aliens subject to mandatory detention, [] paroling aliens without engaging in case-by-case adjudication or abiding by the other limits on that authority, and [] failing to serve charging documents or initiate removal proceedings against plainly inadmissible aliens who are being released into the interior of the United States." TAC at 68-69, ¶¶ F, I.

Plaintiff's claims are premised heavily on the Fifth Circuit's reading of the INA in *Texas v. Biden*, 10 F.4th 538 (5th Cir. 2021), *cert. granted*, No. 21-954 (Feb. 18, 2022). Plaintiff contends that noncitizens apprehended at the border are subject to mandatory detention under 8 U.S.C. § 1225(b)(1) or (2). *See* TAC at ¶¶ 137-138, 218, 232 (citing *Texas*, 20 F.4th at 996, for the proposition that section 1225 mandates detention). Plaintiff claims "[t]here are only two exceptions to this mandatory detention rule,"—return to a contiguous country under section 1225(b)(2)(C) or temporary parole into the United States under section 1182(d)(5). *See* Plaintiff's Opposition to Motion to Dismiss, ECF No. 167, at 10. But, Plaintiff alleges, "the government 'cannot use that power to parole aliens en masse.'" *Id*. (quoting *Texas*, 20 F.4th at 997).

The crux of Plaintiff's claim—echoing, again, the Fifth Circuit's decision in *Texas*—is that the number of noncitizens that the government is allegedly releasing on parole case-by-case generally, or through the now discontinued use of NTRs specifically, can only mean that the government is releasing noncitizens on parole en masse, in violation of sections 1225(b) and 1182(d) as interpreted by *Texas*. *See* TAC at ¶ 132. And, Plaintiff openly concedes that it is challenging in this lawsuit the same alleged violations litigated in *Texas*. *See* TAC at ¶ 137 ("The Administration has even been found to have violated Section 1225(b)'s detention requirements, the same requirements Arizona claims the government is violating here.").

On January 3, 2022, Defendants filed a motion to dismiss Plaintiff's causes of action

9-13. *See* ECF No. 146. Among other arguments, Defendants challenged jurisdiction under section 1252, contested Plaintiff's standing, submitted Plaintiff's challenge to the use of NTRs is moot, asserted that Plaintiff's claims do not fall within the zone of interests of sections 1182(d)(5) or 1225(b), and argued that Plaintiff fails to state a claim because it misinterprets sections 1182(d) and 1225(b). *Id*. On February 16, 2022, Plaintiff opposed Defendants' motion to dismiss. *See* ECF No. 167. In doing so, Plaintiff maintained it has standing to bring its claims. *Id*. at 13-15. On March 15, 2022, Defendants filed their reply. ECF No. 174. As such, that motion is now fully briefed.

On March 15, 2022, shortly after the Supreme Court granted certiorari in *Texas*, Defendants moved to stay this case pending the Supreme Court's decision, because, as noted in summary above, the legal issues in *Texas* and those presented here substantially overlap. *See* ECF No. 175. On March 24, 2022, Plaintiff opposed the motion to stay. *See* ECF No. 176. And on March 31, 2022, Defendants filed their reply in support of the stay. *See* ECF No. 178. So that motion too is now fully briefed.

Meanwhile, on March 28, 2022, Plaintiff filed this motion seeking the early production of the administrative record and jurisdictional discovery. *See* ECF No. 177.[2] Plaintiff did so without seeking to confer with Defendants in violation of Local Civil Rule 7.2(j).[3] For the reasons stated herein, the court should deny Plaintiff's motion.

---

[2] This is the second motion Plaintiff has made in the past two months seeking premature factual discovery in the guise of jurisdictional discovery. On February 17, 2022, Plaintiff filed a similar motion in another immigration case, *Arizona v. Mayorkas, et al.*, 2:21-cv-00617-DWL, ECF No. 48. That case concerns Arizona's claim that the cessation of work on the border wall violates the APA and harms the State because it induces illegal immigration. The government argued that the State lacked standing because, *inter alia*, the State could not establish that its alleged injury was traceable to government action. The State claimed it needed jurisdictional discovery on standing, specifically data regarding migrant border crossing and encounters. But as the government pointed out in opposition, the issue on standing was not how many migrants crossed the border, or where, but *why* they crossed—and no government documents would show the subjective motivation of non-parities. *Id*. at ECF No. 51.

[3] The rule provides: "No discovery motion will be considered or decided unless a statement of moving counsel is attached thereto certifying that after personal consultation and sincere efforts to do so, counsel have been unable to satisfactorily resolve the matter. Any discovery motion brought before the Court without prior personal consultation with the other party and a sincere effort to resolve the matter, may result in sanctions."

**LEGAL STANDARD**

The plaintiff bears the burden of showing its entitlement to discovery. *See, e.g.*, *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014) ("As the party opposing dismissal and requesting discovery, the plaintiffs bear the burden of demonstrating the necessity of discovery." (citation omitted)); *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1189 n.11 (10th Cir. 2010) ("the burden of demonstrating a legal entitlement to jurisdictional discovery—and the related prejudice flowing from the discovery's denial—[is] on the party seeking the discovery."); *Yokohama Tire Corp. v. Dealers Tire Supply, Inc.*, 202 F.R.D. 612, 614 (D. Ariz. 2001) ("[I]t is implicit" that a party seeking discovery before the Rule 26(f) conference show good cause for its issuance.) District courts have broad discretion to permit or to deny limited jurisdictional discovery. *LNS Enters. LLC v. Cont'l Motors Inc.*, 464 F. Supp. 3d 1065, 1077 (D. Ariz. 2020), *aff'd*, 22 F.4th 852 (9th Cir. 2022) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)). Courts should also deny discovery requests "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Cheatem v. ADT Corp.*, 161 F. Supp. 3d 815, 823 (D. Ariz. 2016) (quoting *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). A mere "hunch that [discovery] might yield jurisdictionally relevant facts" is insufficient, *LNS Enters. LLC*, 22 F.4th at 864–65 (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008)), and courts should not permit "fishing expedition[s] in search of a jurisdictional hook." *Spy Optic, Inc. v. AreaTrend, LLC*, 843 F. App'x 66, 69 (9th Cir. 2021) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006)).

Further, the Ninth Circuit has held that when, as here, a complaint fails to state a claim upon which relief can be granted, the plaintiff "is not entitled to discovery, cabined or otherwise." *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 n.7 (9th Cir. 2014). This is because the Supreme Court has made clear that "plaintiffs must satisfy the pleading requirements of Rule 8 before the discovery stage, not after it." *Id.* at 593 (citing *Ashcroft*

*v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Nor can Plaintiff circumvent this rule by seeking merits discovery under the guise of jurisdictional discovery. *Mujica*, 771 F. 3d at 592 (denying plaintiffs' request for "jurisdictional discovery" to "uncover the evidence [plaintiffs] need to allege plotting by [d]efendants"). And because discovery is highly unusual in APA cases—*McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) (citing *Common Sense Salmon Recovery v. Evans*, 217 F. Supp. 2d 17, 20 (D.D.C. 2002))—courts should be particularly leery of merits discovery dressed up as jurisdictional discovery—which is precisely what Plaintiff requests here.

## ARGUMENT

This case is an APA challenge to Defendants' alleged "non-detention" and "parole policies." *See* TAC at ¶ 218, and counts 9-13. Defendants deny that such "policies" exist, but even assuming they do, judicial review of agency action is limited to "the whole record or those parts of it cited by the party." 5 U.S.C. § 706; *Fla. Power & Light Co. v. Lorio*, 470 U.S. 729, 743-44 (1985). The Supreme Court held that the proper course is generally to remand to the agency for additional investigation or explanation if the record before the agency "does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it." *Fla. Power & Light Co.*, 470 U.S. at 744.

For that reason, cases like this one, which proceed, if at all, on an administrative record, are exempt from a Rule 26(f) conference all together. *See* Fed. R. Civ. P. 26(a)(1)(B)(i); 26(f)(1). Accordingly, "discovery is generally not permitted in APA cases." *McCrary*, 495 F. Supp. 2d at 1041. Plaintiff seeks to take advantage of an exception to this general rule by claiming discovery is necessary to establish jurisdiction. *See generally* Pl. Mot. But, as set forth infra at page 9-14, the discovery Plaintiff seeks is not targeted towards resolving jurisdictional questions. But, even if it were, the Supreme Court has expressly cautioned against permitting discovery before completion of the administrative record. *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2574 (2019) (noting that the order

permitting discovery was "premature" before the administrative record had been completed); *id.* at 2580 (Thomas, J., concurring in part and dissenting in part) (noting that 8 Justices agreed on this point).

Further, as set forth infra at 8, Plaintiff cannot overcome multiple threshold legal principles that categorically bar its claims. These threshold arguments preclude the Court from reaching the merits of Plaintiff's claims, and thereby render any discovery categorically inappropriate. But, for present purposes, it is enough to recognize that "the justiciability of those claims presents substantial grounds for difference of opinion," and that discovery is inappropriate prior to adjudication of the threshold legal issues on a motion to dismiss. *U.S. Dist. Court for Dist. of Oregon*, 139 S. Ct. at 1; *see In re United States*, 138 S. Ct. at 445.

Plaintiff has not shown that it is entitled to discovery in this review of agency action. Nor has Plaintiff made any showing that would entitle it to expedited discovery outside the ordinary parameters of the Federal Rules of Civil Procedure. Plaintiff has similarly failed to show that it is entitled to the early production of the administrative record.

## I.    Early Production of an Administrative Record is Unwarranted.

Plaintiff's request for an administrative record is premature and should be rejected. Production of an administrative record at this early stage—while both a Motion to Dismiss and a Motion to Stay are pending—is unnecessary and out of step with ordinary APA litigation, where a record is served after a decision on a motion to dismiss and before motions for summary judgment. *See, e.g.*, D.D.C. L. Civ. R. 7(n)(1) (filing of administrative record after answer); D. Kansas L. Civ. R. 83.1(c)(1) (filing of administrative record with answer); D. Utah L. Civ. R. 7-4(a)(4–5) (filing of administrative record after ruling on motion to dismiss); N.D. Cal. Local Rule 16-5 (in cases seeking "District Court review on an administrative record, the defendant must serve and file an answer, together with a certified copy of the transcript of the administrative record, within 90 days of receipt of service of the summons and complaint"). Nor does Plaintiff articulate

1  any reason why it should obtain the administrative record now, while Defendants' Motion
2  to Dismiss is pending. *See generally* Pl. Mot. Indeed, Plaintiff has amended the complaint
3  three times without an administrative record, and has already opposed Defendants' Motion
4  to Dismiss, and Motion to Stay, both of which are fully briefed. Plaintiff never sought a
5  motion for preliminary injunction, where a record could arguably be relevant, and there is
6  no pending motion practice necessitating an administrative record.

7        Plaintiff is also not entitled to the administrative record to establish standing because
8  the record would not contain information about Plaintiff's alleged injuries. Likewise,
9  Plaintiff is not entitled to the administrative record in order to state a claim. Indeed, as the
10 Supreme Court has explained, before permitting discovery, the district court should "first
11 resolve[] the Government's threshold arguments," when accepting them "likely would
12 eliminate the need for the District Court to examine a complete administrative record." *In*
13 *re United States*, 138 S. Ct. at 445. Here, Defendants have asserted numerous threshold
14 arguments that warrant delaying compilation and production of an administrative record.
15 The arguments include that Plaintiff has not demonstrated a non-speculative injury,
16 whether to commence a removal proceeding is committed to agency discretion and is thus
17 non-reviewable, the use of NTRs is moot, neither the use of NTRs nor Parole + ATD
18 (which Plaintiff does not even challenge in the TAC) creates rights or obligations and
19 therefore is not ripe for APA review, Plaintiff's claims do not fall within the zone of
20 interests created by sections 1182(d) and 1225(b), and Plaintiff has failed to state a claim
21 under sections 1182(d) and 1225(b). These threshold bases for dismissal of Plaintiff's
22 Complaint counsel against requiring Defendants to produce an administrative record now.
23 A converse rule which permits jurisdictional discovery before the Court considers other
24 threshold bases for dismissal beyond jurisdiction would produce perverse results: any
25 putative plaintiff could demand an administrative record before satisfying the threshold
26 pleading requirements of Federal Rules of Civil Procedure 12(b)(1) and (6). The Supreme
27 Court has expressly cautioned against permitting discovery before completion of the
28

administrative record. *See Dep't of Commerce*, 139 S. Ct. at 2574 (noting that the order permitting discovery was "premature" before the administrative record had been completed); *id.* ("We agree with the Government that the District Court should not have ordered extra-record discovery when it did. . . . [T]he most that was warranted was the order to complete the administrative record"); *id.* at 2580 (Thomas, J., concurring in part and dissenting in part) (noting that 8 Justices agreed on this point).

In addition, Defendants' motion to stay this case pending a decision in *Biden v. Texas*, No. 21-954 (Feb. 18, 2022), which will likely resolve or at least narrow the issues in this case, counsels against production of the administrative record at this time.

**II.    Discovery Directed at the Merits of the Claims is Impermissible in an APA Case.**

Plaintiff challenges what it has referred to as Defendants' alleged "non-detention" and "parole en masse" policies. *See* Pl. Mot., ECF No. 177 at 4, Plaintiff's Opposition to Motion to Stay, ECF No. 176 at 3, Plaintiff's Opposition to Motion to Dismiss, ECF No. 167, at 4; *see also* TAC at ¶ 218. Plaintiff alleges that these policies have increased illegal immigration (TAC at ¶¶ 147-148), and that Defendants' policies, along with the illegal immigration caused by those policies, harm Arizona in the form of increased social service costs, including health care, incarceration, and law enforcement costs. *See* TAC ¶¶ 145-149. Defendants have denied that any such "policies" exist, and that Plaintiff is instead challenging an amalgam of individual parole decisions issued on a case-by-case basis. *See* Motion to Dismiss, ECF No. 146, at 13. Defendants have also argued that Plaintiff lacks standing because the harms it alleges are speculative and it cannot establish causation. *See* Defendants' Reply on Motion to Dismiss, ECF No. 174, at 3-8. Specifically, Defendants argued that (i) Plaintiff has not pleaded any facts to show that Defendants' policies, as opposed to a range of other social, economic and political factors, motivate noncitizens to cross the border illegally, *id.* at 5; (ii) Plaintiff has not pleaded facts to show that noncitizens paroled into the country, and those induced to cross into the country illegally, are settling in large numbers in Arizona, *id.* at 3-4; (iii) Plaintiff speculates that Defendants' parole

9

practices have caused an increase in law enforcement and incarceration costs in Arizona, *id*. at 4; and (iv) medical expenses, if they occur, would be the result of a series of events wholly unrelated to Defendants' parole policies, including noncitizens needing medical care, not paying for that care, healthcare providers requesting Arizona pay, and Arizona in fact paying without federal reimbursement, *id*. at 6.

Plaintiff now argues that it requires "targeted jurisdictional discovery" to "establish standing" and specifically seeks to tether its request to Defendants' challenge to standing in the motion to dismiss. Pl. Mot. at 1. In doing so, Plaintiff impliedly concedes that it has failed to establish standing in the TAC.[4] As set forth in Defendants' Motion to Dismiss, ECF No. 146, the Court should dismiss the TAC for that reason, as well as others. But, dismissal aside, it is clear from Plaintiff's motion that the discovery it seeks—into whether and to what extent Defendants have paroled noncitizens "en masse" nothing to do with establishing Article III standing or addressing the problems raised by Defendants in their motion. Rather, the question of whether and to what extent Defendants have paroled noncitizens "en masse" is a substantive merits question.

Plaintiff's claim that it needs discovery to address Defendants' argument that Plaintiff failed to plead facts to support its claim that Defendants' policies induce illegal immigration, Pl. Mot. at 5, is equally meritless—and illogical. The relevant questions for standing in this case are why are migrants choosing to cross into the country without inspection—i.e., whether they are incentivized to cross illegally because of Defendants' alleged non-detention and parole policies—and what harm does Arizona suffer as a result. The answer to neither question is in Defendants' possession.

---

[4] In opposition to Defendants' Motion to Dismiss, Plaintiff still did not explain how it has suffered anything more than, at most, generalized harm from costs associated with an increased population; instead, Plaintiff argued it was entitled to special solicitude in the standing analysis. Pl. Opp. to Motion to Dismiss, ECF No. 167, at 14-15. That argument is wrong. *See* Reply on Motion to Dismiss, ECF No. 174, at 1-8. Apparently aware that it has not established standing, Plaintiff now seeks to embark on a fishing expedition to see what it might find. But Plaintiff carries the burden of establishing each aspect of standing including causation and redressability. *Whitewater Draw Natural Resource Conservation District v. Mayorkas*, 5 F.4th 997, 1015 (9th Cir. 2021)

As to the issue of why migrants choose to enter the country illegally, the Court of Appeals noted in *Whitewater Draw Natural Resource Conservation District v. Mayorkas*, that there are "myriad economic, social, and political realities that might influence an alien's decision to risk life and limb to come to the United States." *Id*., 5 F.4th 997, 1015 (9th Cir. 2021). The specific reasons underlying individual migration decisions are known only to the migrants themselves. As to the alleged harm to Plaintiff from illegal immigration and Defendants' alleged parole policies, only Plaintiff can know.

Furthermore, it is unclear why Plaintiff believes the government's view on the effect of its alleged policies is relevant to Plaintiff's standing, or why Plaintiff needs discovery on that point. *See* Pl. Mot. at 5. Plaintiff's briefing on this issue is conclusory, stating only that "[t]he effect of Defendants' policies is the question presented by standing. The federal government clearly has a view on this question, and that view bears directly on Plaintiff's standing." *Id*. Yet, the problems here are several. At the outside, Plaintiff has never made clear what policies it is challenging. To the extent Plaintiff claims to challenge Defendants' "non-detention" and "parole en masse" policies, Defendants have denied any such policies exist. And, even if Plaintiff were challenging a policy that actually exists, an agency presents what it considered when adopting that policy in an administrative record, not through discovery. Finally, quite tellingly, Plaintiff has not cited any authority for the proposition that the government's subjective view on the effect of its policies (whether alleged or actual) establishes standing.

In short, the discovery Plaintiff seeks from Defendants is not targeted toward establishing standing.[5] Rather, Plaintiff seeks to cast a wide net on central merits issues, and see what it pulls in. Plaintiff is not entitled to jurisdictional discovery in these circumstances. None of the cases Plaintiff cites say otherwise. Two involved requests for

---

[5] Plaintiff also claims it requires "quantitative information" relevant to Parole + ATD. Pl. Mot. at 5. Plaintiff is not entitled to discovery—jurisdictional or otherwise—on Parole + ATD because it does not challenge Parole + ATD in the TAC. *See generally* TAC.

discovery in response to Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction.[6] *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1127 (9th. Cir. 2003) ("We are asked to decide whether a federal district court in California can properly exercise personal jurisdiction over London, England-based entities alleged to have interfered with a California corporation's contractual and business relations by their actions in Europe."); *Butcher's Union Local No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 537-38 (9th Cir. 1986) ("nonresident employers filed motions for dismissal alleging lack of personal jurisdiction and improper venue . . . . the Unions sought discovery in order to support their jurisdictional allegations."). For personal jurisdiction, discovery "might well demonstrate facts sufficient to constitute a basis for jurisdiction," Pl. Mot. at 2, but Defendants have not challenged personal jurisdiction. Moreover, even where a plaintiff seeks discovery to establish personal jurisdiction, the plaintiff must put forth actual evidence suggesting the existence of the documents it seeks. *See Butcher's Union Local No. 498* 788 F.2d at 540 (holding that district court did not abuse its discretion by refusing jurisdictional discovery where the plaintiffs "state only that they 'believe' discovery will enable them to demonstrate sufficient California business contacts to establish the court's personal jurisdiction"); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) ("Jurisdictional discovery may be denied where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants. . . .") (cleaned up). Not only does Plaintiff not seek discovery to establish personal jurisdiction, it also has not identified the documents it seeks, nor put forth evidence of their likely existence.

*Rutsky* and *Butchers Union* are further distinguishable because they are not APA cases; they are routine cases controlled by Federal Rule of Civil Procedure 26, where

---

[6] The advisory committee notes to Federal Rule of Civil Procedure 26(d) make clear that discovery is not permitted until after the Rule 26(f) conference, except in limited circumstances, one of which is to permit discovery into personal jurisdiction. *See* Advisory Committee Notes 1993, Subdivision (d).

discovery generally is allowed. By contrast, in an APA suit, discovery is generally not permitted, and in the rare cases where discovery beyond the administrative record is permitted, the proponent must show "bad faith or improper behavior" by the party producing the administrative record. *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2574 (2019). And even then, logically, such supplemental discovery follows, rather than proceeds, the production of the administrative record.

In a third case relied on by Plaintiff, *Laub v. U.S. Dept. of Interior*, the Court of Appeals permitted limited jurisdictional discovery "[b]ecause the record is not sufficient to ascertain whether the State Defendants' participation in the water management program is sufficiently independent of federal control to escape the requirements of NEPA." *Id.*, 342 F.3d 1080, 1082-83 (9th Cir. 2003). Here, by contrast, there is no dispute that this case concerns federal action.

Nor does Judge Bolton's eventual decision to allow jurisdictional discovery in *Arizona v. U.S. Dep't of Homeland Security* support discovery here. In that case, Arizona and Montana sued various federal agencies challenging guidance issued to ICE on the removal priorities. *Id.*, No. CV-21-00186-PHX-SRB, 2021 WL 2787930, at *2 (D. Ariz. June 30, 2021), *appeal docketed*, No. 21-16118 (9th Cir. July 2, 2021). Specifically, the States sought declaratory and injunctive relief relating to the "100-Day Pause on Removals" outlined in a January 20, 2021 Memorandum[7]. *See* No. CV-21-00186-PHX-SRB, ECF No. 12. Simultaneous with the filing of the amended complaint, the States filed a Motion for Preliminary Injunction seeking to enjoin and restrain enforcement and implementation of the 100-Day Pause on Removals. *Id.*, ECF No. 13. The States then requested the early production of the administrative record documents related to the DHS January 20, 2021 Memorandum as well as limited discovery related to the APA claim.

---

[7] Referring to the memorandum entitled, Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities, available at https://www.dhs.gov/sites/default/files/publications/21_0120_enforcement-memo_signed.pdf.

They based the request for discovery upon an argument that there was "a pretextual element in the [d]efendants' issuance of the challenged policies." *Id*., ECF No. 18. To be clear, however, the States did not request jurisdiction discovery; they requested merely sufficient discovery to permit the Court meaningful review of its motion for preliminary injunction. *Id*. The Court initially denied the States' request. *Id.*, ECF No. 20. But, later, following a hearing on Plaintiffs' motion for a preliminary injunction, the Court permitted both parties limited discovery to be followed by supplemental briefing on the States' motion for preliminary injunction. *Id*., ECF No. 42 (Pl.'s Exhibit D). And, this was all before the government even moved to dismiss. Thus, "[t]he discovery requested here" is not "precisely the same" as that ordered by Judge Bolton in *Arizona v. U.S. Dep't of Homeland Security*, as Plaintiff claims. Pl. Mot. at 5-6. Here, Plaintiff makes a request for jurisdictional discovery after amending the complaint three times, after the parties fully briefed the Defendants' Motion to Dismiss and Motion to Stay, and having never sought a preliminary injunction. And, here there is no claim of pretext. By contrast, in *Arizona v. U.S. Dep't of Homeland Security*, Judge Bolton permitted limited discovery in connection with the States' motion for a preliminary injunction and the pretext argument. The circumstances are not the same.

### III. Jurisdictional Discovery Would Also be Inappropriate.

Even assuming that Plaintiff's request for discovery were targeted at establishing jurisdiction—which it is not—it's request should still be denied. Plaintiff bases its discovery request upon two internal CBP emails from March 20, 2022, and March 25, 2022, wherein CBP employees noted that "effective immediately," "HQ" has authorized parole for noncitizens from Cuba, Venezuela and Nicaragua, and for family units from Colombia. Pl. Mot. at 3; Pl. Ex. B, Ex. C. Plaintiff argues that these emails suggest a policy of paroling en masse. Pl. Mot. at 1. They do not. These emails relate to the Parole + ATD program. As Defendants explained in the Motion to Dismiss, Parole + ATD is a program where, in a narrow set of circumstances, alternative processing is permitted by using parole

in connection with ICE's Alternative to Detention program. *See* Motion to Dismiss, ECF No. 146, Ex. A at 2.[8] To be clear, Plaintiff does not challenge Parole + ATD in the TAC. Thus, these emails and the policy to which they relate are irrelevant to this case. Moreover, these emails post-date the complaint in this case by many months, and addresses future action. "The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint." *Skaff*, 506 F.3d at 838; *see also Morongo Band of Mission Indians v. Cal. State Bd. of Equalization,* 858 F.2d 1376, 1380-81 (9th Cir. 1988) ("Subject matter jurisdiction must exist as of the time the action is commenced. If jurisdiction is lacking at the outset, the district court has "no power to do anything with the case except dismiss.").

Further, Plaintiff's claim that discovery "might well" show "how often programmatic grants of parole have been approved in Arizona border sectors, the number of aliens admitted under these policies, and aliens' compliance with requirements," Pl. Mot. at 4, is beside the point, because Plaintiff does not challenge Parole + ATD in the TAC. Notwithstanding, had Plaintiff conferred with Defendants about whether the Parole + ATD program is functional in Arizona, Defendants would have responded that it is. Simply put, the program is not a secret and Defendants have nothing to hide. But discovery about a program that Plaintiff does not even challenge in its operative complaint is entirely inappropriate—and particularly unwarranted when such discovery is couched as jurisdictional discovery, which it clearly is not.

---

[8] The availability of this process is triggered when (a) "the temporary staffing support to the sector is maximized, (b) the seven-day average of encounters is greater than the sector's Fiscal Year 2019 May daily average," (c) the number of subjects who were taken into custody in the last 48 hours exceeds the number of individuals booked out in the same period, and (d) at least one of the following is true: (1) the average time in custody in the sector exceeds 72 hours or (2) the sector exceeds 100% of the total non-COVID detention capacity. *See* Motion to Dismiss, ECF No. 146, Ex. A. Under this process, a U.S. Border Patrol agent may exercise discretion to release a family unit on parole prior to the issuance of an NTA, enroll them in ICE ATD, and, as a condition of their parole, require them to report to ICE within 15 days for issuing an NTA. *Id*. at 1-2. This alternative processing is not available to individuals determined to be a national security risk or public safety threat, or covered by the U.S. Centers for Disease Control and Prevention's Title 42 Order. *Id*. at 3.

Yet, even if jurisdictional discovery were warranted—it is not—and even if Plaintiff's discovery request were targeted to jurisdiction—it is not—such discovery would still be inappropriate at this time, because a motion to dismiss presenting other threshold arguments is pending. *See e.g., In re United States*, 138 S. Ct. 443 (district court should resolve threshold questions before requiring the production of deliberative process documents); *Mujica*, 771 F.3d at 593 (denying jurisdictional discovery because "plaintiffs must satisfy the pleading requirements of Rule 8 before the discovery stage, not after it."); *Med Vets, Inc. v. VIP Petcare Holdings, Inc.*, 811 F. App'x 422, 424 (9th Cir. 2020) ("Curing pleading deficiencies is not, by itself, good cause for discovery"); *Kulkarni v. Upasani*, 659 F. App'x 937, 941 (9th Cir. 2016) (it was not an abuse of discretion for the magistrate judge to determine that expedited discovery would be overly burdensome and that plaintiff had not established good cause for discovery to occur before disposition of the motions to dismiss and strike); *McCoy v. Sandals Resorts Int'l, Ltd.*, No. 19-CV-22462, 2019 WL 6130444, at *3 (S.D. Fla. Nov. 19, 2019) (discussing prior order in which court observed that "less burdensome course" is to resolve five non-jurisdictional bases to dismiss before permitting jurisdictional discovery).

The Supreme Court has also admonished that serious questions going to jurisdiction or other justiciability doctrines must be "take[n] into account in assessing the burdens of discovery." *U.S. Dist. Court for Dist. of Oregon*, 139 S. Ct. at 1; *see also In re United States*, 138 S. Ct. at 445. Here, Plaintiff has not described what specific discovery it seeks. And, while Plaintiff's proposed discovery may be limited in number, it is not limited in scope. Even five requests for production, five interrogatories and three depositions can create a substantial burden for the agency. While such discovery may seem minor as compared to the availability of discovery in a case where discovery is limited only by Rule 26 of the Federal Rules of Civil Procedure, the relevant comparator is APA cases, where generally no discovery is permitted.

In addition, Defendants' Motion to Stay this case pending a decision in *Biden v. Texas*, No. 21-954 (U.S. Feb. 18, 2022), which has substantial overlap with this case, mitigates against granting Plaintiff's motion for jurisdictional discovery now. *See* Motion to Stay, ECF No. 175. The purpose of that motion is to promote judicial economy. Notably, one of Plaintiff's arguments in opposition to a stay was that it was unnecessary because "[n]o discovery has been served in this case." *See* Pl's Opp. to Motion to Stay, ECF No 176, at 6. Mere days after making this argument, Plaintiff nevertheless filed this motion seeking not only discovery, but also the early production of the administrative record. Plaintiff has not withdrawn its statement in its opposition to the stay, but judicial economy is obviously not served by Plaintiff's request.

## CONCLUSION

Currently pending before the Court are three motions: Defendants' motion to stay this case pending the resolution of *Biden v. Texas*; Defendants' motion to dismiss the TAC for a number of different reasons including lack of jurisdiction, lack of standing, and failure to state a claim; and now this, Plaintiff's motion for jurisdiction discovery. The Court should address those motions in precisely that order because doing so promotes judicial economy and conserves resources. But, regardless of when this Court rules upon Plaintiff's motion for jurisdiction discovery, that request should be denied.

Dated: April 11, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

*/s/ Elissa Fudim*
ELISSA FUDIM
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-6073
Email: elissa.p.fudim@usdoj.gov

*Counsel for Defendants*