BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
EREZ REUVENI
Assistant Director
ELISSA FUDIM
Trial Attorney
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 598-6073
Email: elissa.p.fudim@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

Mark Brnovich, in his official capacity as Attorney General of Arizona, *et. al*,

    *Plaintiffs*,

v.

Joseph R. Biden in his official capacity as President of the United States, *et. al*

    *Defendants*.

Civil Action No. 21-CV-1568-MTL

**DEEFENDANTS' SUPPLEMENTAL BRIEF ON THE SUPREME COURT'S DECISION IN *BIDEN V. TEXAS***

**INTRODUCTION**

Defendants submit this brief to address the impact of *Biden v. Texas*, 142 S.Ct. 2528 (2022), on this case. The Supreme Court's holding in *Texas*: (i) makes clear that this Court lacks jurisdiction to grant Plaintiff the relief it seeks; (ii) supports Defendants' argument in its Motion to Dismiss (ECF No. 146) that Plaintiff's Administrative Procedure Act (APA) claims fail for lack of final agency action; and, (iii) casts serious doubt on the merits of Plaintiff's claim that 8 U.S.C. § 1225(b)(2) compels detention even when adequate detention capacity is lacking.

**BACKGROUND**

<u>Procedural Background.</u> Plaintiff, State of Arizona alleges 8 U.S.C. § 1225(b) requires the government to detain and initiate removal proceedings against every inadmissible noncitizen arriving at the southern border and to detain them for those proceedings, without exception. *See generally* Third Amended Complaint, ECF No. 134 (TAC). Plaintiff further alleges 8 U.S.C. § 1182(d)(5)—which grants DHS discretion to parole noncitizens detained under section 1225 from custody on a case-by-case basis for "urgent humanitarian reasons or significant public benefit"—does not permit the parole of noncitizens under section 1225(b) while their asylum proceedings are ongoing. *Id.* Plaintiff alleges that any contrary actions violate the APA, the Immigration and Nationality Act (INA), and the Constitution, including the Separation of Powers Doctrine and the Take Care Clause. *Id*. Plaintiff asks the Court to hold unlawful and set aside Defendants' alleged "policy of releasing arriving aliens subject to mandatory detention, of paroling aliens without engaging in case-by-case adjudication or abiding by the other limits on that authority, and of failing to serve charging documents or initiate removal proceedings" and to permanently enjoin Defendants "from releasing arriving aliens subject to mandatory detention, [] paroling aliens without engaging in case-by-case adjudication or abiding by the other limits on that authority, and [] failing to serve charging documents or initiate removal proceedings against plainly inadmissible aliens who are being released into the

interior of the United States." TAC at 68-69, ¶¶ F, I.

*Biden v. Texas*. On January 25, 2019, then-Secretary of Homeland Security Kirstjen Nielsen instituted the Migrant Protection Protocols (MPP)—a novel, programmatic use of 8 U.S.C. § 1225(b)(2)(C)[1]—authorizing immigration officers to exercise discretion regarding whether to return to Mexico certain noncitizens arriving on land from Mexico pending their removal proceedings under 8 U.S.C. § 1229a, and providing guidance for making that discretionary determination. On June 1, 2021, the Department of Homeland Security (DHS) terminated the program after Secretary Alejandro Mayorkas reviewed the program's effectiveness and concluded that any benefits of maintaining MPP were outweighed by the benefits of terminating the program.

The states of Missouri and Texas filed a lawsuit in the Northern District of Texas challenging the government's termination of MPP. Following a one-day bench trial, the district court issued a nationwide injunction requiring DHS to reimplement MPP in good faith. The district court concluded that the June 1 memorandum terminating MPP violated the APA and 8 U.S.C. § 1225(b), vacated the June 1 memorandum, and remanded the termination to DHS for further consideration. On October 29, 2021, while the government's appeal of the district court's injunction was pending before the Fifth Circuit, the Secretary announced that, following the district court's remand, he re-evaluated whether MPP should be continued, modified, or terminated, and concluded that it should be terminated.

On December 13, 2021, the Fifth Circuit denied the government's motion to remand the case for consideration of the October 29 memorandum and instead affirmed the district court's decision requiring the government to re-implement MPP. *Texas v. Biden*, 20 F.4th 928 (5th Cir. 2021). The Fifth Circuit ruled that the termination of MPP violated the INA because, it held, section 1225(b) requires DHS to either detain noncitizens arriving on land

---

[1] The section reads, "[i]n the case of an alien . . . who is arriving on land . . . from a foreign territory contiguous to the United States, the [Secretary] may return the alien to that territory pending a proceeding under section 1229a."

at the southern border or return them to Mexico, and DHS may not use its parole authority under section 1182(d)(5) to release noncitizens "en masse" instead of detaining or returning them. *Texas*, 20 F.4th at 978, 989-98. It also held that the October 29 memorandum terminating MPP had no legal effect and therefore did not constitute final agency action because it "simply *explained* DHS's decision [to terminate MPP]," but only the decision itself "had legal effect." *Id*. at 951, 950-58.

On June 20, 2022, the Supreme Court reversed the decision of the Fifth Circuit. *Biden v. Texas*, 142 S.Ct. 2528 (2022). First, it held that 8 U.S.C. § 1252(f)(1) deprived the district court of jurisdiction to issue the injunction in the first place. *Id*. at 2540. Section 1252(f)(1) provides that:

> Regardless of the nature of the action or claim or of the identity of the party or parties bringing the action, no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of part IV of this subchapter, as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, other than with respect to the application of such provisions to an individual alien against whom proceedings under [those provisions] have been initiated.

*Id*.

The Supreme Court made clear that section 1252(f) applies to State plaintiffs by holding that "[t]he District Court's injunction in this case violated that provision" in a case where the only plaintiffs were States. *Id*. at 2538.

Second, the Court held that the Fifth Circuit erred in concluding that the October 29 memoranda did not constitute final agency action. *Id*. at 2544. The Court of Appeals erred because it "framed the question by postulating the existence of an agency decision wholly apart from any 'agency statement of general or particular applicability ... designed to implement' that decision." *Id*. at 2545. The Supreme Court held that "[t]o the extent that the Court of Appeals understood itself to be reviewing an abstract decision apart from specific agency action, as defined in the APA, that was error." *Id*.

3

Third, the Court held that 8 U.S.C. § 1225(b)(2)(C) plainly confers a *discretionary* authority to return noncitizens to Mexico. The Court observed that if Congress had wanted section 1225(b)(2)(C) "to operate as a mandatory cure of any noncompliance with the Government's detention obligations, it would not have conveyed that intention through an unspoken inference in conflict with the unambiguous, express term 'may.'" *Id*. at 2541. Rather, the contiguous-territory return authority in section 1225(b)(2)(C) is discretionary—and "remains discretionary notwithstanding any violation of section 1225(b)(2)(A)." *Id*. at 2544. The Court also observed that "the availability of parole as an alternative means of processing applicants for admission, *see* 8 U. S. C. § 1182(d)(5)(A), additionally makes clear that the Court of Appeals erred in holding that the INA required the Government to continue implementing MPP." *Id*.

The Court acknowledged the persistent reality that the government lacks sufficient resources to detain all inadmissible applicants for admission. It observed that "since its enactment, every Presidential administration has interpreted section 1225(b)(2)(C) as purely discretionary, notwithstanding the consistent shortfall of funds to comply with section 1225(b)(2)(A)." *Id*. at 2533. "Indeed… congressional funding has consistently fallen well short of the amount needed to detain all land-arriving inadmissible aliens at the border, yet no administration has ever used section 1225(b)(2)(C) to return all such aliens that it could not otherwise detain." *Id*. at 2543.

## ARGUMENT

The Supreme Court's decision in *Texas* supports the government's motion to dismiss in three key respects. First, it makes clear that this Court lacks jurisdiction to grant Plaintiff the relief it seeks, such that Plaintiff's claim for injunctive relief should be denied. Second, *Texas* confirms Defendants' argument that Plaintiff's APA claims fail for lack of final agency action. Third, the decision casts serious doubt on the merits of Plaintiff's claim that section 1225(b)(2) compels detention even when adequate detention capacity is lacking.

(i) <u>Section 1252(f)(1) precludes this Court from granting Plaintiff injunctive relief.</u>

In *Texas*, the Supreme Court, relying upon the recently decided *Garland v. Aleman Gonzalez*, 142 S. Ct. 2057 (U.S. June 13, 2022)[2], reaffirmed that section 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain INA provisions, including 8 U.S.C. §§ 1225, 1229 and 1231. *Texas*, 142 S.Ct. at 2538, quoting *Aleman Gonzalez*, 142 S. Ct. at 2065. *Texas* (and *Aleman Gonzalez*) dictate the same result here—that this Court lacks jurisdiction to grant the relief Plaintiff seeks. And because this Court cannot grant the relief Plaintiff seeks, its claims for injunctive relief must be dismissed.

Plaintiff asks this Court for an order "[e]njoining Defendants from releasing arriving aliens subject to mandatory detention," *see* TAC, at pg. 68, ¶ I, under section 1225 of the INA; "enjoining Defendants from . . . failing to serve charging documents or initiate removal proceedings against plainly inadmissible aliens who are being released into the interior of the United States," *id.*, clearly implicating section 1229 of the INA (which governs the initiation of removal proceedings including the creation of charging documents); and "enjoining Defendants from . . . paroling aliens without engaging in case-by-case adjudication or abiding by the other limits on that authority." *Id*.

The first portion of Plaintiff's claim for injunctive relief is directly aimed at the government's enforcement, implementation, or carrying out of covered provisions of the

---

[2] In *Aleman Gonzalez*, the Supreme Court overturned injunctions entered by two district courts that had, as a matter of statutory interpretation, required the government to provide bond hearings for noncitizens detained under 8 U.S.C. § 1231(a)(6). *Aleman Gonzalez*, 142 S.Ct. at 2065. The Court held that "[t]hose orders 'enjoin or restrain the operation' of § 1231(a)(6) because they require officials to take actions that (in the Government's view) are not required by §1231(a)(6) and to refrain from actions that (again in the Government's view) are allowed by §1231(a)(6)." *Id*. Because "[t]hose injunctions thus interfere with the Government's efforts to operate §1231(a)(6)" in its chosen manner, they were barred by § 1252(f)(1). *Id*. The Court squarely held that § 1252(f)(1) applies where, as here, a plaintiff alleges that "the Government [i]s misinterpreting and misapplying a covered statutory provision." *Id.* at 2067.

INA, and therefore falls squarely within the Supreme Court's decision in *Aleman Gonzalez* and *Texas*. The second portion of Plaintiff's claim for injunctive relief clearly implicates section 1229, which governs the initiation of removal proceedings, including the creating of charging documents, and therefore also falls within the scope of those decisions. And the third portion of Plaintiff's claim for injunctive relief, although facially addressed to section 1182(d)(5), also concerns section 1225 because section 1182(d)(5) explicitly states that parole is available only for applicants for admission, and thus parole under section 1182(d)(5) is the mechanism for releasing noncitizens detained pursuant to section 1225 (*see* infra at point (iii)). Thus, each aspect of Plaintiff's request for injunctive relief would affect the enforcement, implementation, or carrying out of section 1225 or section 1229 of the INA, and thus would impermissibly "require officials to take actions that (in the government's view) are not required by [those provisions] and to refrain from actions that (again in the government's view) are allowed by [those provisions]." *Aleman Gonzalez*, 142 S. Ct. at 2065.

Thus, *Texas*, which makes clear that the holding from *Aleman Gonzalez* applies to claims brought by States, prohibits this Court from issuing one aspect of the relief that Plaintiff seeks—an injunction. Accordingly, the Court should dismiss Plaintiff's claim for injunctive relief. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006); *Gonzalez v. Immigr. & Customs Enf't*, No. CV1304416BROFFMX, 2014 WL 12605369, at *6 (C.D. Cal. Oct. 24, 2014).

(ii) *Texas* confirms that Plaintiff's challenge to Defendants' alleged "en masse" parole practices and NTR and Parole + ATD guidance does not challenge "final agency action" subject to judicial review.

*Texas* also confirms that the alleged policies challenged in this case are not final agency action, thus requiring dismissal of the Complaint in full. As *Texas* reaffirmed, agency action is "final" for APA review purposes where the challenged action "'mark[s] the 'consummation' of the agency's decision making process'" and result[s] in 'rights and

obligations [being] determined.'" *Texas*, 142 S. Ct. at 2544–45 (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)).

As Defendants argued in their motion to dismiss, the actions that Plaintiff challenges in this case are not final agency action. First, with respect to Plaintiff's challenge to an alleged non-detention policy, as explained, Plaintiff fails to plead with any plausibility the existence of such a policy for purpose of APA finality. Instead, Plaintiff challenges an amalgam of individual parole determinations made by DHS at the southwest border. But parole is an individual discretionary determination made on a "case-by-case basis." 8 U.S.C. § 1182(d)(5)(A). And to the extent any rights or obligations are determined by such a determination, they occur with respect to individual noncitizens only, not to Plaintiff or any other sovereign entity. *See, e.g.*, *Nat'l Min. Ass'n v. McCarthy*, 758 F.3d 243, 253 (D.C. Cir. 2014) (Kavanaugh, J.) (to constitute final agency action, policy guidance must be applied to a regulated parties in a particular case). Indeed, as the *Texas* court explained, a district court cannot "postulate[] the existence of an agency decision wholly apart from any 'agency statement of general or particular applicability ... designed to implement' that decision." *Texas*, 142 S.Ct. at 2545. Likewise, here, the Court cannot postulate the existence of a policy from an amalgamation of individual parole determinations absent any guiding policy document.

Second, as previously argued in the motion to dismiss, Plaintiff's challenge of U.S. Customs and Border Protection's (CBP) use of Notices to Report (NTRs) is moot because CBP has ended the use of NTRs.[3] ECF No. 146, at 5. While the defunct NTR guidance, and the Parole + ATD guidance that replaced it, guide the actions of officials within CBP

---

[3] On November 2, 2021, CBP issued a memorandum ceasing the use of NTRs, which now defunct guidance Plaintiff challenges in this case, *see* TAC at ¶ 133, 135. *See* ECF No. 146, Exh. A. It further states that where "an alternative path is necessary to prevent urgent crowding and excessive Time-In-Custody," CBP officers, can, "exercise their discretion" to process certain noncitizens under Parole + ATD—guidance which Plaintiff does not even challenge in the TAC. But, even if it did, the November 2 guidance does create legal rights nor imposes legal obligations on anyone, let alone on Arizona. *See* ECF No. 146, at 12-14. (On July 18, 2022, CBP issued a memorandum superseding the November 2 memorandum, creating new parameters for the use of Parole + ATD.)

in specific circumstances, they do not change anyone's legal rights. To the contrary, the Parole + ATD guidance creates additional requirements for parole under this pathway and does not require CBP officers to take any specific action in any specific circumstance. Rather, it clearly states that "[U.S. Border Patrol] agents may exercise their discretion" as to whether to use it. *See id.* at Exh.A.[4] Further, the agency retains the discretion to alter or revoke the guidance at will (as indeed occurred on July 18, 2022 when the agency superseded the guidance), so the guidance is nonfinal notwithstanding any expectation that rank-and-file officers will comply with it while it is in effect. *Syncor Int'l Corp. v. Shalala*, 127 F.3d 90, 94 (D.C. Cir. 1997) (An agency retains the discretion "to change its position—even abruptly—in any specific case because a change in its policy does not affect the legal norm. We thus have said that policy statements are binding on neither the public, nor the agency."); *Cf. Wilderness Soc'y v. Norton*, 434 F.3d 584, 596 (D.C. Cir. 2006). Because Plaintiff does not challenge final agency action, claims 9-13 of the TAC should be dismissed.

(iii) *Texas* casts doubt on the merits of Plaintiff's claim that section 1225(b) requires the detention of virtually all inadmissible applicants for admission, and that the government's use of parole under section 1182(d)(5) is unlawful.

*Texas* also undermines the central premise of Plaintiff's merits claims with respect to section 1225(b). Plaintiff contends that inadmissible noncitizens apprehended at the border are subject to mandatory detention under section 1225(b)(1) or (2). *See* TAC at ¶¶ 137-138, 218, 232. Plaintiff claims "[t]here are only two exceptions to this mandatory detention rule"—return to a contiguous country under section 1225(b)(2)(C) or temporary parole into the United States under section 1182(d)(5). *See* Plaintiff's Opposition to Motion to Dismiss, ECF No. 167, at 10. But, Plaintiff alleges, "the government 'cannot use that power to parole aliens en masse.'" *Id*. (quoting Texas, 20 F.4th at 997). Plaintiff explicitly bases its claim that the government must detain all inadmissible applicants for admission

---

[4] The motion to dismiss refers to the November 2, 2021 CBP Guidance, and notes it is available at 3:21-cv-01066, ECF No. 62 (Northern District of Florida). It should say ECF, No. 6, Ex. 2, not ECF No. 62.

encountered at the border—and hence all five of its claims directed at the government's alleged parole policies—on the Fifth Circuit's decision in *Texas*. *See* TAC at ¶ 138 ("The Administration has even been found to have violated Section 1225(b)'s detention requirements, *the same requirements Arizona claims the government is violating here*.") (emphasis added).

In *Texas*, the Supreme Court held that section 1225(b)(2)(C) plainly confers a discretionary authority to return noncitizens to Mexico. The Court observed that if Congress had wanted section 1225(b)(2)(C) to be mandatory, "it would not have conveyed that intention through an unspoken inference in conflict with the unambiguous, express term 'may.'" *Texas*, 142 S. Ct. at 2541. Rather, the contiguous-territory return authority in section 1225(b)(2)(C) is discretionary—and "remains discretionary notwithstanding any violation of section 1225(b)(2)(A)." *Id*. at 2544. The Court also observed that "the availability of parole as an alternative means of processing applicants for admission, *see* 8 U. S. C. § 1182(d)(5)(A), additionally makes clear that the Court of Appeals erred in holding that the INA required the Government to continue implementing MPP." *Id*. Thus, *Texas* forecloses Plaintiff's argument that Defendants must return certain noncitizens to Mexico under the contiguous territory return authority rather than releasing them on parole.

While the Supreme Court declined to resolve whether section 1225(b)(2)(A) compels mandatory detention or must be read in light of traditional principles of law enforcement discretion, and whether the government is lawfully exercising its parole authority under section 1182(d)(5), *id.* at 2542 n.5, *Texas* casts serious doubt on Plaintiff's argument that that the government cannot consider detention capacity when making case-by-case parole determinations.

The Supreme Court acknowledged the persistent reality that the government lacks sufficient resources to detain all applicants for admission. It observed that "at the time of [the] enactment [of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996] and in the decades since, congressional funding has consistently fallen well short of

9

the amount needed to detain all land-arriving inadmissible aliens at the border." *Id*. at 2543. Here, Plaintiff tries to reconcile the supposedly mandatory language of section 1225(b)(2)(A) and the consistent lack of detention capacity, by arguing that that Congress created section 1225(b)(2)(C)—the contiguous territory return authority—to act as a safety valve, allowing the federal government to require inadmissible noncitizens arriving on land at the southern border to be returned to Mexico while their removal proceedings are pending. *See* Plaintiff's Opposition to Motion to Dismiss, ECF No. 167, at 20. But the Supreme Court rejected that argument in whole. *Texas*, 142 S.Ct. at 2542-43. Rather, the Supreme Court observed that the government has another mechanism for reconciling the language of section 1225(b)(2)(A) and the reality of lack of detention capacity: "the INA expressly authorizes DHS to process applicants for admission under a third option: parole." *Id*. at 2543.

Simply put, and as argued in Defendants' motion to dismiss, detention capacity must be a factor in parole decisions because Congress has not appropriated enough funds to detain everyone potentially subject to detention under section 1225. *See* ECF No. 146, at 21-24. Given the Supreme Court's observation that the government lacks adequate detention space, its decision that the government is not obligated to rely on section 1225(b)(2)(C) whenever it lacks the detention capacity necessary to detain all inadmissible applicants for admission, and its recognition that parole is an available alternative, Plaintiff's argument that the government must detain all inadmissible applicants for admission and cannot parole them even if the government lacks any means of detaining them cannot be correct. *Texas* supports Defendants' argument in its motion to dismiss that sections 1225(b)(1) and (2) do not require the government to initiate removal proceedings or detain every inadmissible noncitizen encountered at or near the border. Rather, as Defendants argued, sections 1225(b)(1) and (2) must be read in the context of traditional principles of law enforcement discretion. Accordingly, claims 9 and 12 of the Plaintiff's TAC should be dismissed on the merits.

Dated: July 22, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

*/s/ Elissa Fudim*
ELISSA FUDIM
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-6073
Email: elissa.p.fudim@usdoj.gov

*Counsel for Defendants*