BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
EREZ REUVENI
Assistant Director
ELISSA FUDIM
Trial Attorney
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 598-6073
Email: elissa.p.fudim@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Mark Brnovich, in his official capacity as Attorney General of Arizona, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> Joseph R. Biden in his official capacity as President of the United States, *et al.* <br><br> *Defendants*. | Civil Action No. 2:21-CV-1568-MTL |

**DEEFENDANTS' THIRD NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendants submit this notice to advise the Court of a recent Sixth Circuit Court of Appeals decision relevant to Defendants' pending Motion to Dismiss (ECF No. 146): *Arizona v. Biden*, ___ F. 4th ___, 2022 WL 2437870, at *1 (6th Cir. July 5, 2022) (Arizona (Ohio)).

\*\*\*

On April 19, 2022, Defendants submitted a (First) Notice of Supplemental Authority to advise the Court of an April 12, 2022 decision issued by the Sixth Circuit Court of Appeals granting the Government's motion for a stay pending appeal of a preliminary injunction issued by an Ohio district court partially enjoining the government from carrying out certain immigration enforcement priorities as set forth in guidance issued September 30, 2021, titled "Guidelines for the Enforcement of Civil Immigration Law" (the September Guidance). *See* ECF No. 186, (citing *Arizona v. Biden*, 31 F.4th 469 (6th Cir. 2022)).[1] The September Guidance set forth a prioritization scheme for the apprehension and removal of certain removable noncitizens who fit within three categories: those who pose a threat to national security, public safety, and border security. *See* https://www.ice.gov/doclib/news/guidelines-civilimmigrationlaw.pdf at 2–3. The September Guidance was necessitated by the fact that the government lacks the resources to apprehend and remove every removable noncitizen. *Id*.

By way of reminder, in *Arizona (Ohio)*, the plaintiffs (the States of Arizona, Ohio and Montana) alleged—as does Plaintiff Arizona here—that certain provisions of the Immigration and Nationality Act (INA) compel the Department of Homeland Security (DHS) to detain certain noncitizens pending the completion of those proceedings or their removal from the country. The first of those provisions, codified at 8 U.S.C. § 1226(a), states that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States," and that "[the Secretary] shall take into custody"

---

[1] Defendants filed an unrelated Second Notice of Supplemental Authority on May 3, 2022, ECF No. 192.

1

certain noncitizens inadmissible or deportable for having committed certain crimes. 8 U.S.C. § 1226(a), (c)(1). The second of those provisions, codified at 8 U.S.C. § 1231, states, "[W]hen an alien is ordered removed, the [Secretary] shall remove the alien from the United States" and "[d]uring the removal period, the [Secretary] shall detain the alien." 8 U.S.C. §§ 1231(1)(a) and 1231(2). The plaintiff States argued, as Plaintiff does here, that Congress's use of the word "shall" creates a mandate, requiring the detention of all covered noncitizens, that is enforceable in federal court, and that the September Guidance violated these provisions. *See Arizona (Ohio)*, 21-CV-00314, Complaint, ECF No. 1, at ¶¶ 6, 67, 70. The States sought a preliminary injunction to enjoin enforcement of the September Guidance, and asserted claims under the INA, Administrative Procedure Act (APA), and Constitution. *Id*., at Claims for Relief. The States sought to assert Article III standing based on their contention that the September Guidance would result in fewer removals and, therefore, the States would incur monetary harm associated with social welfare expenses like education and medical care, as well as increased law enforcement costs. *Id*. at ¶¶ 42-47, 51, 62-63. In issuing a preliminary injunction, the district court found that the States had standing and were likely to succeed on the merits. *Arizona v. Biden*, ___ F. 3rd ___, 2022 WL 839672, at *9-10 (S.D. Ohio Mar. 22, 2022).

As Defendants informed the Court in their April 19, Notice of Supplemental Authority, on April 12, 2022, the Sixth Circuit Court of Appeals granted the government's motion to stay the preliminary injunction pending appeal in full. *Arizona*, 31 F.4th 469. *See* Notice of Supplemental Authority, ECF No. 186, discussing the stay decision.

On July 5, 2022, the Sixth Circuit reversed the district court's grant of injunctive relief. *Arizona (Ohio)*, 2022 WL 2437870, at *1. At the outset, the Court found that the plaintiff States (including Arizona) could not establish Article III standing. The Court found that "[s]peculation abounds" over whether the September Guidance injures the States, and noted that "[c]ontingent injuries, especially those arising from the impact of regulations on third parties not before the Court, rarely create cognizable cases or

controversies." *Arizona (Ohio)*, 2022 WL 2437870, at *3. The Court went on to note that the plaintiffs' theory of standing, which was based on data concerning immigration, arrests and removals, "starts with conjecture and returns to it over and over," *id*., and that the district court "did not connect the dots" between the challenged policy and the alleged costs allegedly sustained by the States. *Id*. Here, Plaintiff relies upon the same type of speculative harm to support standing. *See* Motion to Dismiss, ECF No. 146, at 5-7.

The Sixth Circuit Court of Appeals also rejected the States' argument—the same argument Arizona makes in this case—that "*Massachusetts v. EPA*, 549 U.S. 497 (2007), relaxed the Constitution's standing requirements if the litigant is a sovereign." *Arizona (Ohio)*, 2022 WL 2437870, at *5. *Massachusetts* "does not remove Article III's imperative of a cognizable case or controversy or the requirements of injury, causation, and redressability." *Id*. And, the Court of Appeals held the plaintiffs' alleged injuries did not fall within *Massachusetts v. EPA*'s compass in any event. *Id*. "They do not protest regulation of them as States or preemption of local lawmaking authority. They do not protest any threatened incursions on their property or territory. And they do not involve the classic sovereign case, public nuisances, in which a State invokes a desire to safeguard its domain and its health, comfort and welfare." *Id*. (internal citations omitted). Rather, the Court continued, the States' "main objection is to indirect fiscal burdens allegedly flowing from the Guidance. But why would that humdrum feature of a regulation count as a uniquely sovereign harm? Most regulations have costs. A State has no more, and no less, reason to fear harms to its bottom line from federal regulations than a person or a business does." *Id*. at *6. In short, the Court rejected the plaintiffs' attempt to sidestep standing by relying upon its status as a sovereign. The same logic applies here.

With regard to reviewability under the APA, the Court found that the September Guidance did not constitute final agency action because it did not impose liability on a regulated party, create legal rights, or mandate, bind, or limit other government actors. *Id*. at *7-8. *Arizona (Ohio)*, 2022 WL 2437870, at *8 ("Confirming that the Guidance lacks

1  legal effect is the reality that it is difficult to see how any noncitizen—or any person at
2  all—could invoke it to establish legal protection."). Further, the Court noted that "[t]he
3  combined realities that the relevant statutes have many moving parts, the Guidance leaves
4  considerable discretion in implementing it, and the Guidance does not create any legal
5  rights for noncitizens all suggest it is not reviewable." *Id*. at *9. For the same reasons, the
6  Court found that the September Guidance was not subject to notice and comment. *Id*. at
7  *12. That reasoning applies equally here:  the government's now-discontinued practice of
8  issuing Notices to Report (NTR) that Plaintiff challenges in this case, and the Parole +
9  ATD guidance that superseded the NTR guidance (which Plaintiff does not challenge in
10 this case), likewise demonstrate that immigration officials had/have considerable discretion
11 in their implementation. Further, no one, neither a non-citizen, a private party, or a
12 sovereign State, could invoke the NTR guidance, or the Parole + ATD guidance, to
13 establish legal protection, confirming that the guidance does not constitute final agency
14 action.  And Plaintiff's challenge to Defendant's alleged "non-detention" and "en-masse"
15 parole policies is based entirely on the language of sections 1225(b) and 1182(d)(5), which,
16 like the statutes at issue in *Arizona (Ohio)*, "have many moving parts" and afford
17 immigration officers considerable discretion in making case-by-case determinations.

18    On the merits, and as relevant to this litigation, the Sixth Circuit Court of Appeals
19 recognized that there is "considerable discretion" embedded in the immigration system, *id*.
20 at *9, and further stated that, although both sections 1226(c) and 1231(a) use the word
21 "shall"—as does the statute at issue in this litigation, 8 U.S.C. § 1225(b)—the use of the
22 word "shall" does not automatically create a "judicially enforceable mandate," *id*.,
23 particularly where law enforcement discretion is involved, *id*. at *10. The Court's holding
24 is equally applicable here, as Plaintiff asserts that section 1225(b)'s use of the term "shall"
25 creates a judicially enforceable mandate to detain all such noncitizens.

26    Finally, the Court of Appeals acknowledged the reality that the Government has
27 limited resources. *Id*. at *9. As the Court noted, "[t]his would not be the first administration
28

to use triage in enforcing immigration laws." *Id*. This holding is equally relevant here, where DHS has applied a consistent resource prioritization scheme concerning detention capacity for decades, and every Presidential administration since the INA was amended to include sections 1225, 1226, and 1231 has relied on resource constraints in making removal and detention decisions. *See* Motion to Dismiss, ECF No. 146, at 20-21.

Dated:  July 22, 2022

                                                                          Respectfully submitted,

                                                                          BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

*/s/ Elissa Fudim*
ELISSA FUDIM
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-6073
Email: elissa.p.fudim@usdoj.gov

*Counsel for Defendants*