**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Joseph A. Kanefield (No. 15838)
Brunn (Beau) W. Roysden III (No. 28698)
Drew C. Ensign (No. 25463)
James K. Rogers (No. 27287)
2005 N. Central Ave
Phoenix, AZ 85004-1592
Phone: (602) 542-8540
Joseph.Kanefield@azag.gov
Beau.Roysden@azag.gov
Drew.Ensign@azag.gov
James.Rogers@azag.gov

*Attorneys for Plaintiffs Mark Brnovich and the State of Arizona*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Mark Brnovich, in his official capacity as Attorney General of Arizona; *et al.*,<br><br>Plaintiffs,<br>v.<br>Joseph R. Biden in his official capacity as President of the United States; *et al.*,<br><br>Defendants. | No. 2:21-cv-01568-MTL<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

SUPPLEMENTAL BRIEF ..................................................................................................... 1

I.    Section 1252(f)(1) Does Not Strip This Court of Jurisdiction ......................................... 1

II.    Section 1252(f) Does Not Prevent APA Review, and Vacatur and Declaratory and Injunctive Relief Are Available Remedies Here ............................................................ 2

    A.    This Court Has the Power to Enter a Declaratory Judgment as to All of The State's Claims ............................................................................................ 3

    B.    This Court Has Power Under 5 U.S.C. § 706 to Vacate the Non-Detention and Parole Policies as Unlawful Administrative Action ...................................... 5

    C.    This Court Has the Power to Enjoin the Federal Government's Unlawful Parole Policies ................................................................................................... 6

III.    The Federal Government's Non-Detention and Parole Policies are Illegal ................... 6

    A.    Section 1182(d)(5) Forbids the Federal Government's Programmatic Parole Policy ................................................................................................................ 7

    B.    "Shall Be Detained" in Section 1225(b) Means "Must Be Detained" ................ 8

        1.    The Defendants Cannot Claim Lack of Detention Capacity As An Excuse, Because They Intentionally Caused the Shortage ...................... 9

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

*Abbott Laboratories v. Gardner*,
  387 U.S. 136 (1967) .................................................................................................... 3

*Alli v. Decker*,
  650 F.3d 1007 (3d Cir. 2011) ..................................................................................... 4

*Allied-Signal, Inc. v. NRC*,
  988 F.2d 146 (D.C. Cir. 1993). ................................................................................. 6

*Barnhart v. Sigmon Coal Co.*,
  534 U.S. 438 (2002) .................................................................................................... 5

*Biden v. Texas*,
  142 S. Ct. 2528 (2022) ............................................................................. 1, 2, 3, 4, 6, 7, 8, 9

*Bowen v. Michigan Acad. of Fam. Physicians*,
  476 U.S. 667 (1986) .................................................................................................... 3

*Brito v. Garland*,
  22 F.4th 240 (1st Cir. 2021) ...................................................................................... 4

*Citizens for Responsibility & Ethics v. Fed. Elec. Comm'n*,
  993 F.3d 880 (D.C. Cir. 2021) ................................................................................... 3

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
  140 S. Ct. 1891 (2020) ................................................................................................ 3

*Glossip v. Gross*,
  576 U.S. 863 (2015) ............................................................................................. 1, 10

*Jennings v. Rodriguez*,
  138 S.Ct. 830 (2018) ................................................................................................... 4

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998) ...................................................................................................... 6

*Long Island Power Auth. v. FERC*,
  27 F.4th 705 (D.C. Cir. 2022) ................................................................................... 6

*Mach Mining, LLC v. E.E.O.C.*,
  575 U.S. 480 (2015) .................................................................................................... 3

*Make the Road N.Y. v. Wolf*,
  962 F.3d 612 (D.C. Cir. 2020) ............................................................................... 4, 5

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 139 (2010) .................................................................................................... 5

*National Parks Conservation Ass'n v. Semonite*,
  925 F.3d 500 (D.C. Cir. 2019) ................................................................................... 2

*Nielsen v. Preap*,
  139 S. Ct. 954 (2019) .................................................................................................. 4

*Reno v. American-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) .................................................................................................................. 2

*Reno v. Cath. Soc. Servs., Inc.*,
  509 U.S. 43 (1993) .................................................................................................................... 3

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) .................................................................................................. 4

*Rodriguez v. Marin*,
  909 F.3d 252 (9th Cir. 2018) .................................................................................................... 4

*Steffel v. Thompson*,
  415 U.S. 452 (1974) .............................................................................................................. 2, 4

*Texas v. Biden*,
  20 F.4th 928 (5th Cir. 2021) ..................................................................................................... 8

*United Steel v. Mine Safety & Health Admin.*,
  925 F.3d 1279 (D.C. Cir. 2019) ................................................................................................ 6

*Weinberger v. Romero-Barcelo*,
  456 U.S. 305 (1982) .................................................................................................................. 5

**STATUTES**

28 U.S.C. § 2201 ............................................................................................................................ 5

5 U.S.C. § 559 ................................................................................................................................ 3

5 U.S.C. § 702 ................................................................................................................................ 6

5 U.S.C. § 703 ................................................................................................................................ 5

5 U.S.C. § 706 ............................................................................................................................ 3, 6

8 U.S.C. § 1182 .............................................................................................................................. 7

8 U.S.C. § 1252 .............................................................................................................................. 5

S.Rep. No. 752, 79th Cong., 1st Sess. (1945) ............................................................................... 3

**OTHER AUTHORITIES**

Black's Law Dictionary (11th ed. 2019) ....................................................................................... 5

DHS Off. of Inspector Gen., ICE Spent Funds on Unused Beds, Missed COVID-19
  Protocols and Detention Standards while Housing Migrant Families in Hotels (April
  12, 2022) ................................................................................................................................. 10

Eileen Sullivan, *Biden to Ask Congress for 9,000 Fewer Immigration Detention Beds*, NEW
  YORK TIMES (Mar. 25, 2022), https://nyti.ms/3vOI00F ......................................................... 9

Priscilla Alvarez, *Biden administration to close two immigration detention centers that came under
  scrutiny*, CNN (May 20, 2021), https://cnn.it/3KcxGol ......................................................... 9

Rae Ann Varona, *ICE Agrees To Restrictions In COVID-19 Hot Spot Settlement*, LAW360
  (July 7, 2022), https://www.law360.com/articles/1509393/ice-agrees-to-
  restrictions-in-covid-19-hot-spot-settlement ....................................................................... 10

**SUPPLEMENTAL BRIEF**

The Supreme Court's recent decision in *Biden v. Texas*, 142 S. Ct. 2528 (2022) confirms that this Court has jurisdiction here and that the relief sought by Plaintiffs (collectively "the State") remains available. As relevant here, *Biden* only stands for the narrow proposition that injunctive relief is not available for claims asserted "under sections 1221 through 1232 of the INA." *Id.* at 2539. The State, however, is asserting claims about the federal government's programmatic parole policies under section 1182(d)(5), which is not covered by the limitations of section 1252(f)(1). Injunctive relief, therefore, is still available for all of the State's claims as they relate to the federal government's parole policies.

Furthermore, Supreme Court precedent and the plain text of the APA make clear that vacatur and declaratory relief are still available remedies for all of the State's immigration claims. Because the State's claims about mandatory detention arise under section 1225(b) of the INA, *Biden*'s only effect on this case is to clarify that this Court lacks authority to enter injunctive relief as to the State's claims about mandatory detention.

Beyond just its clarification that the INA does not strip jurisdiction from this court, there are three other aspects of *Biden* that are relevant here. *First*, *Biden* held that the federal government's exercise of its parole power is subject to APA review. *Second*, reasoning in both the majority opinion and Justice Alito's dissent supports the State's claims here.

And *third*, a key distinguishing fact not addressed in *Biden* recently came to light, which is that Defendants do not come to this issue with clean hands, because they have affirmatively acted to degrade their own detention capacity. For Defendants to now claim they lack the capacity to comply with the command of 8 U.S.C. § 1225(b) that aliens be detained thus "calls to mind the man sentenced to death for killing his parents, who pleads for mercy on the ground that he is an orphan." *Glossip v. Gross*, 576 U.S. 863, 898 (2015) (Scalia, J., concurring).

**I.     Section 1252(f)(1) Does Not Strip This Court of Jurisdiction**

One of the central questions in *Biden* was "whether section 1252(f)(1) strips the lower courts of subject matter jurisdiction over … claims brought under sections 1221 through 1232 of the INA." *Biden,* 142 S. Ct. at 2538-2539. The Supreme Court held that "the answer to that

question is no ... because section 1252(f)(1) withdraws a district court's 'jurisdiction or authority' to grant a particular form of relief. It does not deprive the lower courts of all subject matter jurisdiction." *Id.* at 2539. This Court, therefore, has subject matter jurisdiction over Counts IX through XIII of the TAC. (The "Immigration Claims," *see* TAC ¶¶ 216-234.)

The Supreme Court emphasized "the narrowness of [section 1252(f)(1)'s] scope," explaining that "section 1252(f)(1) bears no indication that lower courts lack power to hear any claim brought under sections 1221 through 1232. If Congress had wanted the provision to have that effect, it could have said so in words far simpler than those that it wrote." *Id.*

## II. Section 1252(f) Does Not Prevent APA Review, and Vacatur and Declaratory and Injunctive Relief Are Available Remedies Here

Unlike other provisions in section 1252 that might entirely prohibit judicial review, section 1252(f)(1) stands out as merely limiting the available remedies that lower courts can award to prevailing parties. Section 1252(f)(2) similarly sets an evidentiary standard via a prohibition on "enjoin[ing] the removal of any alien pursuant to a final order under this section" unless that standard is met. Accordingly, neither section 1252(f)(1) nor section 1252(f)(2) implicates the declaratory relief sought by the State. *See Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999) ("*AADC*") ("By its plain terms, and even by its title, [section 1252(f)] is nothing more or less than a limit on injunctive relief.").

A bar on injunctive relief does not ordinarily strip the courts of authority to issue other forms of relief, such as vacatur or declaratory relief.[1] *See Steffel v. Thompson*, 415 U.S. 452, 472 (1974) ("[T]he only occasions where this Court has ... found that a preclusion of injunctive relief inevitably led to a denial of declaratory relief have been cases in which principles of federalism militated altogether against federal intervention in a class of adjudications.").

Thus, just as section 1252(f) does not affect this Court's jurisdiction, it similarly does

---

[1] Both vacatur and declaratory relief are traditional APA remedies. Indeed, "vacatur is the default remedy to correct defective agency action." *Nat'l Parks Conservation Ass'n v. Semonite*, 925 F.3d 500, 501 (D.C. Cir. 2019).
 The TAC expressly sought declaratory relief as to the Non-Detention and Parole Policies. *See* Doc. 134 at 68 ¶ F. The State further invoked this Court's authority to "'hold unlawful and set aside agency action'" with respect to Defendants' Non-Detention and Parole Policies. *Id.* ¶¶ 217, 223 (quoting 5 U.S.C. § 706(2)(A), (C)). Finally, the State asked this Court to "[g]rant[] any and all other relief as the Court finds appropriate." *Id.* at 69 (¶ K).

2

not preclude review under the APA. "[T]here is a 'well-settled presumption favoring interpretations of statutes that allow judicial review of administrative action,' and we will accordingly find an intent to preclude such review only if presented with 'clear and convincing evidence." *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 63–64 (1993) (citations omitted); *see also Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1905 (2020). Indeed, the APA provides that a "[s]ubsequent statute may not be held to supersede or modify ... chapter 7 ... except to the extent that it does so expressly." 5 U.S.C. § 559; *see also, e.g., Citizens for Responsibility & Ethics v. Fed. Elec. Comm'n*, 993 F.3d 880, 889 (D.C. Cir. 2021) (the relevant statute "cannot alter the APA's limitation on judicial review unless it does so expressly.").

"It has never been the policy of Congress to prevent the administration of its own statutes from being judicially confined to the scope of authority granted or to the objectives specified. Its policy could not be otherwise, for in such a case statutes would in effect be blank checks drawn to the credit of some administrative officer or board." *Bowen v. Michigan Acad. of Fam. Physicians*, 476 U.S. 667, 671 (1986) (quoting S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)). Accordingly, the government bears a "heavy burden" to show that Congress precluded the State's APA claims. *See Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015).

Subsection 1252(f)(1) contains no express indication of intent to limit or modify the remedial authority granted by section 706. Nor does it contain "clear and convincing" evidence that Congress intended to deny APA review of executive branch action. The command that a court "shall" "set aside" unlawful agency action thus remains intact. 5 U.S.C. § 706.

Judicial review is therefore available under the APA. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140 (1967). Indeed, the Supreme Court in *Biden* specifically remanded to the district court for it to consider the remaining APA issues—an outcome that is nonsensical if all forms of relief were unavailable. *Biden*, 142 S. Ct. at 2548 ("On remand, the District Court should consider ... whether the October 29 Memoranda comply with section 706 of the APA.").

A.   **This Court Has the Power to Enter a Declaratory Judgment as to All of The State's Claims**

The Supreme Court held in 2019 that "under § 1252(f)(1) ... the [district] court had jurisdiction to entertain the plaintiffs' request for declaratory relief." *Nielsen v. Preap*, 139 S. Ct.

3

954, 956 (2019). The *Biden* court reaffirmed this holding: "Most relevantly, the Court previously encountered a virtually identical situation in *Nielsen v. Preap*, 139 S.Ct. 954 (2019). There, as here, the plaintiffs sought declaratory as well as injunctive relief in their complaint, and there, as here, the District Court awarded only the latter. Yet this Court proceeded to reach the merits of the suit, notwithstanding the District Court's apparent violation of section 1252(f)(1), by reasoning that 'whether the District Court had jurisdiction to enter such an injunction is irrelevant *because the District Court had jurisdiction to entertain the plaintiffs' request for declaratory relief*." *Biden*, 142 S. Ct. at 2540 (quoting *Nielson,* 139 S.Ct., at 962) (cleaned up) (emphasis added). *Biden* also quoted a prior Justice Breyer dissent for the proposition "that 'a court could order declaratory relief' notwithstanding section 1252(f)(1)." *Biden*, 142 S. Ct. at 2540 (quoting from *Jennings v. Rodriguez*, 138 S.Ct. 830, 875 (2018), (Breyer, J., dissenting).

The Ninth Circuit agrees: "It is simply not the case that Section 1252(f) bars ... declaratory relief." *Rodriguez v. Hayes*, 591 F.3d 1105, 1119 (9th Cir. 2010); *see also Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) (holding that even if section 1252(f)(1) could be interpreted as foreclosing injunctive relief, "it does not affect classwide declaratory relief"). The D.C., First, and Third Circuits are all in accord as well. *See Brito v. Garland*, 22 F.4th 240, 251-252 (1st Cir. 2021) (citing *Steffel* and holding "that declaratory relief remains available under section 1252(f)(1). In so holding, we reach the unremarkable conclusion that Congress meant only what it said -- and not what it did not say."); *Make the Road N.Y. v. Wolf*, 962 F.3d 612, 635 (D.C. Cir. 2020) (section 1252(f) "does not proscribe issuance of a declaratory judgment"); *Alli v. Decker*, 650 F.3d 1007, 1013 (3d Cir. 2011) ("viewing the provision in context and then taking into consideration the heading of the provision, it is apparent that the jurisdictional limitations in § 1252(f)(1) do not encompass declaratory relief").

Declaratory relief is distinct from injunctive relief and is not even conceivably precluded by section 1252(f). Though a declaratory judgment binds the parties, "Congress plainly intended declaratory relief to act as an alternative" to injunctive relief, *Steffel*, 415 U.S. at 466, because declaratory relief does not directly coerce any party or enjoin any action.

Section 1252(f)(1)'s silence regarding declaratory relief stands in contrast to the

preceding subsection, which explicitly enumerates "declaratory, injunctive, or other equitable relief." 8 U.S.C. § 1252(e)(1)(A). The APA similarly distinguishes between "declaratory judgments" and "writs of prohibitory or mandatory injunction." 5 U.S.C. § 703. Yet, section 1252(f)(1) refers to injunctive relief alone. "[W]hen Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) (cleaned up).

A court granting declaratory relief merely "declare[s] the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201; *see Make the Road N.Y.*, 962 F.3d at 635 ("[Section 1252(f)] does not proscribe issuance of a declaratory judgment.").

Thus, even though section 1252(f)(1) limits injunctive relief, it provides no limitation on this Court's power to issue declaratory relief.

**B.     This Court Has Power Under 5 U.S.C. § 706 to Vacate the Non-Detention and Parole Policies as Unlawful Administrative Action**

Section 1252(f)(1) also does not affect a district court's authority under 5 U.S.C. § 706 to vacate and remand the federal government's unlawful non-detention and parole policies. This is because, as with declaratory relief, vacatur is distinct from injunctive relief. A district court's authority to set aside or vacate administrative action under 5 U.S.C. § 706 differs from its power to enjoin unlawful action. In *Monsanto Co. v. Geertson Seed Farms*, the Supreme Court distinguished vacatur as a "less drastic remedy" than an injunction. 561 U.S. 139, 165-66 (2010). An order vacating administrative action does not "enjoin or restrain" the INA's operation because vacatur alone does not enjoin anything at all. The relief authorized by section 706(2) is not an injunction, but an order vacating—that is, "hold[ing] unlawful and set[ting] aside"—agency action. *See* Black's Law Dictionary (11th ed. 2019) (defining "set aside" as "to annul or vacate").

Whereas an injunction is an "extraordinary" equitable remedy as to which a court has considerable discretion, *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982), "setting aside" is a statutory remedy under the APA that is normally available when agency action is unlawful.

5

*Long Island Power Auth. v. FERC*, 27 F.4th 705, 717 (D.C. Cir. 2022). Indeed, the APA mandates that the reviewing court "*shall* ... hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2) (emphasis added); see *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (stating that "shall" "normally creates an obligation impervious to judicial discretion"). Although the APA elsewhere grants courts discretion to withhold the remedy otherwise required by section 706, *see* 5 U.S.C. § 702, exercise of that discretion is appropriate only in carefully defined circumstances not applicable here. *See Allied-Signal, Inc. v. NRC*, 988 F.2d 146, 151 (D.C. Cir. 1993).

Thus, when a reviewing court determines that agency regulations are unlawful, "[t]he ordinary practice is to vacate unlawful agency action." *United Steel v. Mine Safety & Health Admin.*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) (citing 5 U.S.C. § 706(2)).

    **C.**    **This Court Has the Power to Enjoin the Federal Government's Unlawful Parole Policies**

The federal government's parole authority derives entirely from 8 U.S.C. § 1182(d)(5), which is located in part II of subchapter II of 8 U.S.C. The limitation on injunctions in section 1252(f)(1) only applies to "the operation of the provisions of part IV of [the] subchapter," or, as the Supreme Court explained, "sections 1221 through 1232 of the INA." *Biden*, 142 S. Ct. at 2539. Injunctive relief, therefore, is an available remedy for the State's claims that the federal government's parole policies are unlawful. *See* TAC ¶¶ 216-234. The Supreme Court's holding in *Biden* thus has no effect on the State's requested remedy that this Court "[e]njoin Defendants from ... paroling aliens without engaging in case-by-case adjudication or abiding by the other limits on that authority." TAC at 68-69 ¶ I.

**III.**    **The Federal Government's Non-Detention and Parole Policies are Illegal**

The majority in *Biden* did not address "whether the Government is violating the immigration laws generally," but only the narrower question of "whether the INA requires the government to continue implementing [the Migrant Protection Protocols]." *Biden*, 142 S. Ct. at 2542 n.6. Thus, the majority declined to "resolve the parties' arguments regarding whether section 1225(b)(2)(A) must be read in light of traditional principles of law enforcement

discretion, and whether the Government is lawfully exercising its parole authorities pursuant to sections 1182(d)(5)." *Id.* at 2544. Indeed, the majority specifically instructed that their opinion should *not* be read as answering the question of whether "the Government [may] release aliens subject to detention under section 1225(b)(2)(A)." *Id.* at 2542 n.5.

The majority did, however, provide some interpretation about the limits of the government's parole power under section 1182(d)(5) and also clarified that the federal government's exercise of that power is subject to APA review. Furthermore, Justice Alito's dissent offered persuasive authority that the Parole and Non-Detention Policies that the State is challenging in this case are unlawful.

### A. Section 1182(d)(5) Forbids the Federal Government's Programmatic Parole Policy

*Biden* has this to say about the limits of the federal government's parole power: "Importantly, the [parole] authority is not unbounded: DHS may exercise its discretion to parole applicants 'only on a case-by-case basis for urgent humanitarian reasons or significant public benefit.' *And under the APA, DHS's exercise of discretion within that statutory framework must be reasonable and reasonably explained.*" *Biden*, 142 S. Ct. at 2543 (quoting 8 U.S.C. § 1182(d)(5)(A)) (emphasis added); *accord id.* at 2549 (Kavanaugh, J., concurring).

The *Biden* majority thus establishes that DHS's exercise of the parole power is subject to the limitations of the APA and that any exercise of that power "must be reasonable and reasonably explained." As amply outlined in the TAC and the State's other briefing in this case, the federal government's Parole Policy is unreasonable and lacks reasoned explanation. *See* TAC ¶¶ 117, 123-124, 131-134, 148-149, 218-219, 232 and Doc 167 at 1-4, 18-23, 25-35. *Biden* held that the various memoranda at issue in that case "constituted final agency action," *Biden*, 142 S. Ct. at 2544, even though the federal government had argued they were not. Defendants' arguments in this case about final agency action are very similar, and they should be rejected here, just as they were in *Biden*. The Non-Detention and Parole Policies are similar to the policy at issue in *Biden* in scope and effect and in what they require of DHS agents in the field. Therefore, just as the memoranda in *Biden* constituted final agency action, the policies at issue in this case exist and constitute final agency action. (*See* Doc. 167 at 16-19.)

Justice Alito's dissent, which was joined by Justices Thomas and Gorsuch, explained how the federal government's current exercise of the parole authority violates section 1182(d)(5): "the number of aliens paroled each month...—more than 27,000 in April of this year—gives rise to a strong inference that the Government is not really making these decisions on a case-by-case basis.... At argument, however, the Solicitor General argued that the case-by-case determination requirement can be met simply by going through a brief checklist for each alien. Even the rudimentary step of verifying that an alien does not have a criminal record is not performed in every case. *Such procedures are inconsistent with the ordinary meaning of "case-by-case" review*, and as the Court of Appeals pointed out, the circumstances under which § 1182(d)(5)(B)) was adopted bolster that conclusion." *Biden*, 142 S. Ct. at 2554–55 (Alito, J., dissenting) (emphasis added). Justice Alito's dissent demonstrates an effective and compelling use of "large-scale statistics and figures," *Texas v. Biden*, 20 F.4th 928, 971 (5th Cir. 2021), to establish that the federal government is violating the parole statute.

Justice Alito also observed that "the majority emphasizes the fact that prior administrations have also failed to detain inadmissible aliens, but that practice does not change what the law demands. The majority cites no authority for the doctrine that the Executive can acquire authority forbidden by law through a process akin to adverse possession." *Biden*, 142 S. Ct. at 2557 (Alito, J., dissenting). The federal government has made the same adverse possession-type argument here (Doc. 146 at 1, 20, 23 and Doc. 174 at 15, 17) and it should also be rejected.

**B.     "Shall Be Detained" in Section 1225(b) Means "Must Be Detained"**

Justice Alito pointed out in his dissent that the Supreme Court already held in *Jennings* that section 1225(b) makes detention of aliens mandatory, and that the federal government itself argued in *Jennings* for this mandatory interpretation: "The language of 8 U.S.C. § 1225(b)(2)(A) is unequivocal.... Six years ago, the Government argued strenuously that this requirement is mandatory, and its brief could hardly have been more categorical or emphatic in making this point.... The *Jennings* Court correctly accepted that argument, which was central to our holding. *See* 138 S.Ct. at 842 ('Read most naturally, §§ 1225(b)(1) and (b)(2) thus

8

mandate detention of applicants for admission until certain proceedings have concluded')…. The Government was correct in *Jennings* and is wrong here. '[S]hall be detained' means 'shall be detained.'" *Biden*, 142 S. Ct. at 2553–54 (Alito, J., dissenting).

The *Biden* majority expressly disclaimed any attempt to offer any additional interpretation of the mandatory detention provisions of section 1225(b). *Id.* at 2542. The Supreme Court's prior interpretation in *Jennings* is thus still controlling, and "shall" really does mean "shall." Because the federal government is not detaining aliens as required by Congress's command, then the Non-Detention Policy is unlawful.

### 1. The Defendants Cannot Claim Lack of Detention Capacity As An Excuse, Because They Intentionally Caused the Shortage

Justice Kavanaugh's concurrence claimed that there has been a "multi-decade inability of the political branches to provide DHS with sufficient facilities to detain noncitizens who seek to enter the United States pending their immigration proceedings." *Id.* at 2549 (Kavanaugh, J., concurring). Similarly, Justice Alito wrote in his dissent that: "The Government points out that it lacks the facilities to detain all the aliens in question, and no one questions that fact." *Id.* at 2554 (Alito, J., dissenting). The State now questions that "fact"—and particularly whether much of that shortage was intentionally caused by Defendants.

After the State filed its TAC, additional facts have come to light that demonstrate that the federal government has affirmatively degraded its own detention capacity. Astonishingly, at the same time the federal government was claiming that it lacked sufficient detention capacity for aliens, and thus that it had no alternative but to parole aliens into the country *en masse*, the federal government submitted a budget request to Congress that would decrease DHS's alien detention capacity by 25%.[2] The federal government further affirmatively degraded its own detention capacity by cancelling contracts with private detention facilities and by closing detention facilities.[3] In addition, even where DHS has capacity, it has often

---
[2] Eileen Sullivan, *Biden to Ask Congress for 9,000 Fewer Immigration Detention Beds*, NEW YORK TIMES (Mar. 25, 2022), https://nyti.ms/3vOI00F.
[3] *Id.*; Priscilla Alvarez, *Biden administration to close two immigration detention centers that came under scrutiny*, CNN (May 20, 2021), https://cnn.it/3KcxGol.

9

failed to utilize it. For example, an April 12, 2022 DHS Inspector General Report explains how DHS acquired detention capacity from hotels from no-bid contracts and then inexplicably failed to use it: indeed, DHS "spent approximately $17 million for hotel space and services at six hotels that went largely unused between April and June 2021" and "did not adequately justify the need for the sole source contract to house migrant families."[4] Moreover, DHS has entered into settlement agreements with ideologically aligned groups to hobble its detention capacity further.[5]

Thus, new facts that were not before the Supreme Court or the lower courts in *Biden* make clear that the federal government is coming to this question with unclean hands. It claims not to have the capacity to detain aliens and thus must parole them—ignoring its own role in ensuring that its detention capacity would be insufficient. This rationale "calls to mind the man sentenced to death for killing his parents, who pleads for mercy on the ground that he is an orphan." *Glossip,* 576 U.S. at 898 (Scalia, J., concurring). Whatever discretion DHS might enjoy with its limited parole authority, it plainly does not reach DHS simultaneously hobbling its detention capacity and then relying upon its intentionally degraded capacity to take actions that would otherwise be unlawful even in DHS's own telling.

## CONCLUSION

*Biden* makes plain that this Court continues to have jurisdiction over the State's claims. Controlling Supreme Court and Ninth Circuit precedent further make clear that vacatur and declaratory relief are available for all of the State's claims. Furthermore, injunctive relief is available for the State's claims about DHS's Parole Policy.

And because "shall" in section 1225(b) really means "shall," and "case-by-case" in section 1182(d)(5) really means "case-by-case," and also because the federal government lacks detention capacity because it has affirmatively degraded that capacity, then the Non-Detention Policy and Parole Policy are unlawful and should be vacated.

---

[4] DHS Off. of Inspector Gen., *ICE Spent Funds on Unused Beds, Missed COVID-19 Protocols and Detention Standards while Housing Migrant Families in Hotels* at 3, 5 (April 12, 2022) https://www.oig.dhs.gov/sites/default/files/assets/2022-04/OIG-22-37-Apr22.pdf
[5] *See, e.g.,* Rae Ann Varona, *ICE Agrees To Restrictions In COVID-19 Hot Spot Settlement*, LAW360 (July 7, 2022), https://www.law360.com/articles/1509393/ice-agrees-to-restrictions-in-covid-19-hot-spot-settlement.

10

RESPECTFULLY SUBMITTED this 22nd day of July, 2022.

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By: /s/ *James K. Rogers*
    Joseph A. Kanefield (No. 15838)
    Brunn W. Roysden III (No. 28698)
    Drew C. Ensign (No. 25463)
    James K. Rogers (No. 27287)

*Attorneys for Plaintiffs Mark Brnovich and the State of Arizona*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of July, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. Counsel for all Defendants who have appeared are registered CM/ECF users and will be served by the CM/ECF system pursuant to the notice of electronic filing.

      /s/ *James K. Rogers*
*Attorney for Plaintiffs Mark Brnovich, in his official capacity as Attorney General of Arizona; and the State of Arizona*