**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Joseph A. Kanefield (No. 15838)
Brunn (Beau) W. Roysden III (No. 28698)
Drew C. Ensign (No. 25463)
James K. Rogers (No. 27287)
2005 N. Central Ave
Phoenix, AZ 85004-1592
Phone: (602) 542-8540
Joseph.Kanefield@azag.gov
Beau.Roysden@azag.gov
Drew.Ensign@azag.gov
James.Rogers@azag.gov

*Attorneys for Plaintiffs Mark Brnovich
and the State of Arizona*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Brnovich, in his official capacity as Attorney General of Arizona; *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> Joseph R. Biden in his official capacity as President of the United States; *et al.*, <br><br> Defendants. | No. 2:21-cv-01568-MTL <br><br> **PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY** |

**NOTICE**

Plaintiffs ("the State") respectfully provide notice of four supplemental authorities.

*First*, attached as Exhibit A is the federal government's June 2022 monthly report to the court in *Texas v. Biden* ("*Texas MPP*"), No. 21-cv-00067, ECF. 143 (N.D. Tex. July 15, 2022). That case is a challenge to DHS's attempt to end the Migrant Protection Protocols ("MPP"), also known as the "Remain in Mexico" policy. After a full bench trial, the court in that case ordered the federal government to file monthly reports providing detailed statistics about alien encounters at the southern border. *Texas v. Biden*, 554 F. Supp. 3d 818, 857-58 (N.D. Tex. Aug. 13, 2021), *aff'd*, 20 F.4th 928 (5th Cir. 2021), *cert. granted*, 142 S. Ct. 1098 (2022), *rev'd and remanded*, 142 S. Ct. 2528 (2022).

The attached report shows that during the month of June, "the total number of applicants for admission under Section 1225 paroled into the United States was 54,894." Ex. A at 3. Here, the State first asserted claims against Defendants' Non-Detention and Parole policies in the State's First Amended Complaint ("FAC"), filed on October 22, 2021. (Doc 14 ¶¶ 146-164.) According to the federal government's reports in the *Texas MPP* case, DHS paroled 321,888 aliens between November 2021 and June 2022, which roughly corresponds to the period of time since the State filed its FAC here. *See Texas*, ECF Nos. 119, 124, 129, 133, 136, 139, 140, and 143. The number of aliens paroled into the United States since Arizona filed its First Amended Complaint is thus fast approaching half a million.

Even worse, as border security increasingly collapses, the government apparently has been accelerating the pace of its *en masse* parole program. In February 2022, it paroled "only" 13,413 aliens into the United States; in March 2022, it paroled 36,777 aliens; and in April it paroled 91,250. *Texas*, ECF Nos. 133, 136, and 139.

This data is relevant to show that the federal government is exercising its parole powers on a programmatic, not case-by-case, basis. It also illustrates the magnitude of harms the Parole and Non-Detention Policies have caused Arizona, thus supporting the State's standing.

*Second*, is a decision of the Northern District of Florida in *Florida. v. United States*, No. 21-CV-1066, 2022 WL 2431414 (N.D. Fla. May 4, 2022). That order denied the federal

1

government's motion to dismiss. Florida's claims there closely parallel the State's, and the *Florida* court's reasoning thus supports the State's arguments here. In particular:

- "[T]he Court is wholly unpersuaded by Defendants' position that they have unfettered discretion to determine how (or if) to comply with the immigration statutes and that there is nothing that Florida or this Court can do about their policies even if they contravene the immigration statutes…. Thus, if Florida's allegations that Defendants are essentially flaunting the immigration laws are proven to be true, the Court most certainly can (and will) do something about it." *Id.* at *1.

- Florida's standing was supported by the State being "entitled to 'special solicitude' here because its quasi-sovereign interests are affected by the challenged policies and Congress conferred a procedural right to challenge the policies under the APA." In addition, Florida's claimed injuries were not too attenuated or uncertain and "[n]one of Defendants' other standing arguments [we]re persuasive." *Id.* at *5-*8

- "[T]he cited provisions of §1225 expressly require aliens to be detained until removal proceedings have concluded, and … §1182(d)(5)(A) does not authorize Defendants to circumvent the mandatory detention requirement as it is allegedly doing through the challenged policies." *Id.* at *8-*9.

- "[I]t defies logic and common sense to suggest that there is no overriding policy against detaining aliens when hundreds of thousands have been paroled or otherwise released into the country, and it would be highly improbable (if not statistically impossible) for this to have resulted by happenstance from an 'amalgamation' of individual case-by case decisions rather than a policy directive." *Id.* at 10.

- Section "1252(a)(2)(B)(ii) and § 1225(g) …. do not bar judicial review of the challenged policies or the claims asserted in the amended complaint because they only preclude review of individual immigration decisions." Additionally, section 1252(f)(1) "is inapposite" in part because "'part IV' of the immigration subchapter of the INA only includes §§1221 through 1232, so … [section 1252(f)(1)] would not preclude an order retraining or enjoining the use of parole under §1182 since that statute is in a different part (part II) of the immigration

subchapter." *Id.* at *11

- None of Florida's claims for relief should be dismissed for failure to state a claim because "the Court is not persuaded by Defendants' statutory interpretation arguments" and Florida had made sufficient factual allegations to state valid claims. *Id.* at *12-*13.

- Florida's Take Care Clause claim survived dismissal because, even though some district courts have opined that "the Take Care Clause does not provide a private right of action...., there is no binding authority on this point, and the Court sees no reason why such a claim could not be pursued at least in circumstances where (as alleged here) the executive branch has completely abdicated its responsibility to enforce the law as written." *Id.* at *13-*14.

*Third*, is *Texas v. United States* ("*Texas I*"), __ F.Supp.3d __, No. 6:21-CV-00016, 2022 WL 2109204 (S.D. Tex. June 10, 2022), *stay denied* 40 F.4th 205 (5th Cir. 2022), *stay denied and cert. granted before judgment*, No. 22A17, 2022 WL 2841804 (U.S. July 21, 2022). This opinion interprets the meaning of "shall" in the context of detention statutes in the INA similar to the one at issue here. The court explained that "the core of the dispute is whether the Executive Branch may require its officials to act in a manner that conflicts with a statutory mandate imposed by Congress. It may not…. True, the Executive Branch has case-by-case discretion to abandon immigration enforcement as to a particular individual. This case, however, does not involve individualized decisionmaking. Instead, this case is about a rule that binds Department of Homeland Security officials in a generalized, prospective manner—all in contravention of Congress's detention mandate. It is also true that the Executive Branch may prioritize its resources. But it must do so within the bounds set by Congress. Whatever the outer limits of its authority, the Executive Branch does not have the authority to change the law." *Id.* at *1-*2.

The *Texas I* court found relevant that, at the same time DHS was claiming resource limitations as a justification for why it could not comply with the INA's detention mandate, it was also affirmatively cutting detention capacity. *Id.* at *4-*5. The court also found that the State plaintiffs had standing and that the DHS policies at issue constituted reviewable, final agency action. *Id.* at 16-25. The court engaged in a detailed analysis of the relevant statutes—

which are similar to the detention statute at issue in this case—and found that "shall" in those INA detention statutes means "must." *Id.* at *25-*33. And because the DHS rule at issue in the case had treated the INA's "shall"s as discretionary, the rule was "arbitrary and capricious, contrary to law, and fail[ed] to observe procedure under the Administrative Procedure Act," and the court vacated the DHS rule. *Id.* at *44-*47 (S.D. Tex. June 10, 2022).

*Fourth* is *Texas v. United States* ("*Texas II*"), 40 F.4th 205 (5th Cir. 2022), in which the Fifth Circuit denied a stay pending appeal of the *Texas I* judgment. Notably, the Fifth Circuit held that Texas had standing because, *inter alia*, it was entitled to special solicitude and because "Texas has actually absorbed, or at least will imminently absorb, the costs of providing public education and state-sponsored healthcare to aliens who would otherwise have been removed pursuant to federal statutory law." *Texas II*, 40 F.4th at 217. The Fifth Circuit also held that *Heckler v. Chaney*, 470 U.S. 821 (1985) did not apply because, *inter alia*, "DHS's interpretation of the governing statutes seems obviously inconsistent with their meaning as a matter of linguistics, text, and context" and thus the challenged DHS rule in that case gave "every indication of being 'a general policy that is so extreme as to amount to an abdication of its statutory responsibilities.'" *Texas II*, 40 F.4th at 222. The Fifth Circuit also upheld the district court's reasoning in *Texas I* that "shall" in the INA statutes at issue was "incontrovertibly mandatory." *Texas II*, 40 F.4th at 223–26.

RESPECTFULLY SUBMITTED this 12th day of August, 2022.

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By: /s/ *James K. Rogers*
Joseph A. Kanefield (No. 15838)
Brunn W. Roysden III (No. 28698)
Drew C. Ensign (No. 25463)
James K. Rogers (No. 27287)

*Attorneys for Plaintiffs Mark Brnovich and the State of Arizona*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of August, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. Counsel for all Defendants who have appeared are registered CM/ECF users and will be served by the CM/ECF system pursuant to the notice of electronic filing.

                                         /s/ *James K. Rogers*
                                         *Attorney for Plaintiffs Mark Brnovich, in his official capacity as Attorney General of Arizona; and the State of Arizona*