BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
Civil Division
WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section
EREZ REUVENI
Assistant Director
ELISSA FUDIM
Trial Attorney
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 598-6073
Email: elissa.p.fudim@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Mark Brnovich, in his official capacity as Attorney General of Arizona, *et al.*, <br> *Plaintiffs*, <br> v. <br> Joseph R. Biden in his official capacity as President of the United States, *et al.* <br> *Defendants*. | Civil Action No. 2:21-CV-1568-MTL |

**DEEFENDANTS' OPPOSITION, IN PART, TO PLAINTIFF'S MOTION TO SUPPLEMENT THE THIRD AMENDED COMPLAINT**

Recognizing that "Courts should not, and indeed cannot, review broad, generalized agency policies in the abstract. Nor can they separate an agency's decision from the statement intended to implement that decision," ECF No. 219 at 14, on September 23, 2022, this Court dismissed Plaintiff's "APA claims challenging a general mass parole policy." *Id*. at 27. Notwithstanding the Court's decision, Plaintiff seeks to revive its "general policy claims," *id*. at 23, in its proposed Supplemental Pleading. The Court should not permit it to do so. Nor should the Court permit Plaintiff to supplement its pleading to make allegations that predate the filing of the Third Amended Complaint ("TAC"), are redundant of allegations in the TAC, are mere rhetoric, or are unnecessary.

**Background**

In its TAC, Plaintiff[1] alleged a series of claims under the Administrative Procedure Act ("APA"), Immigration and Nationality Act ("INA"), and Constitution, premised upon injuries it has allegedly sustained from (i) the government's Notice to Report ("NTR") policy, and (ii) the government's alleged unwritten, general, "en masse" parole and non-detention policy (which the Court has referred to as Plaintiff's "general policy claims," ECF 219 at 23). *See generally*, ECF No. 134, ¶ 114 et seq.  In its Motion to Dismiss, Defendants argued, *inter alia*, that Plaintiff lacks standing to assert its claims, the NTR policy is moot because it was replaced by Parole Plus Alternatives to Detention ("PATD"), and Plaintiff's "general policy claims" cannot be litigated under the APA. *See generally*, ECF No. 146, 174.

While the Motion to Dismiss was pending, on June 20, 2022, the Supreme Court issued its decision in *Biden v. Texas*, 142 S. Ct. 2528 (2022). That case concerned the Secretary of Homeland Security's termination of the Migrant Protection Protocols ("MPP") in a June 1, 2021 memorandum, and later in an October 29, 2021 memorandum. The Fifth Circuit ruled, *inter alia*, that the October 29 memorandum terminating MPP did

---

[1] As Mark Brnovich, in his official capacity as Attorney General of Arizona, and the State of Arizona, are a single party in interest, and as Defendants have consistently referred to Plaintiff in the singular in its motions to date, Defendants do so here as well.

1

not constitute final agency action, because it was merely evidence of the Secretary's separate decision to terminate MPP, and that only the Secretary's decision had legal effect. *Texas v. Biden*, 20 F.4th 928, 951, 950-58 (5th Cir. 2021). The Supreme Court reversed. It held that the Fifth Circuit committed reversable error by "postulating the existence of an agency decision wholly apart from any 'agency statement of general or particular applicability ... designed to implement' that decision." *Texas*, 142 S. Ct. at 2545. The Supreme Court explained, "[t]o the extent that the Court of Appeals understood itself to be reviewing an abstract decision apart from specific agency action, as defined in the APA, that was error." *Id*.

On September 23, 2022, this Court issued its decision on Defendants' Motion to Dismiss. The Court held, *inter alia*, that (i) Plaintiff has sufficiently pleaded standing, (ii) the challenge to the NTR policy is not moot, (iii) Plaintiff's "general policy claims" are subject to dismissal per the Supreme Court's holding in *Texas*, and (iv) Plaintiff's Constitutional claims asserted in Count XIII are dismissed. ECF No. 219. The Court also declined to *sua sponte* grant Plaintiff leave to amend, as Plaintiff had made no argument seeking such relief. *Id*. at 27. Plaintiff did not move for reconsideration of any portion of the Court's order.

On November 10, 2022, Plaintiff provided Defendants with a proposed supplemental pleading—the same proposed supplemental pleading Plaintiff has filed as an exhibit to its motion. *See* ECF No. 234-1. Defendants reviewed the proposed supplemental pleading in a good faith attempt to reach agreement on amendment that would obviate the need for motion practice and permit the parties to proceed with assembly of the record and discovery, as ordered by the Court in its October 28 Scheduling Order, ECF No. 231. To that end, and as Defendants communicated to Plaintiff, Defendants do not oppose Plaintiff supplementing the TAC to challenge the PATD policy under the APA and INA.[2] But, as

---

[2] Defendants do not oppose supplementation of ¶¶ 3-4, 6 (the last sentence), 12, 20-24, 44 (the last sentence), 45 (the last sentence), and 49-62.

set forth below, Plaintiff's proposed supplemental pleading goes well beyond challenging the PATD policy under the APA and INA, and to that extent, Defendants object.

### Argument

**(1) The Court should not permit Plaintiff to supplement its pleading to assert claims based on a legal theory the Court has rejected.**

Rule 15(d) permits a party to move the Court to supplement a pleading to allege facts pertaining to "any transaction, occurrence or event that happened after the date of the pleading to be supplemented." Fed. Rule Civ. P. 15(d). Although the PATD policy was announced on November 2, 2021, after Plaintiff filed the TAC, Defendants do not object to Plaintiff supplementing the TAC to challenge the PATD policy because the original November 2, 2021 PATD policy was replaced by an updated PATD policy on July 18, 2022, after the TAC was filed. However, Plaintiff's proposed supplemental pleading goes beyond adding factual allegations pertaining to the PATD policy and asserting claims based upon those facts. Plaintiff alleges not only that the NTR and PATD policies violate the APA and INA, but also that the two policies are *evidence* of a broader, undefined, general policy of "en masse" parole and non-detention. *See e.g.* ECF No. 234, at 2-3 ("The federal government's Non-Detention and Parole Policies were first instantiated through its practice of issuing a 'notice to report,'…[and later] with a policy called 'Parole+ATD.'"); at 3 ("Defendants' Parole+ATD policy is merely another name for a continuation of the substantive Non-Detention and Parole policies."); ECF No. 234-1 at ¶ 31 ("the Parole and Non-Detention Policies exist; they were not necessarily memorialized in formal memos, or even in writing at all."); ¶ 44 ("Parole+ATD is a new name for the same prior Non-Detention and Parole Policies that Defendants first instantiated through their unlawful policy of issuing 'Notices to Report.'"). But the Court already rejected this theory of liability as implausible on its face:

> To the extent Plaintiffs contend their claims are directed at

>Defendants' "mass-parole and non-detention" policies in general, however, rather than any specific agency decision or document, they misunderstand the scope of judicial review under the APA. Courts should not, and indeed cannot, review broad, generalized agency policies in the abstract. Nor can they separate an agency's decision from the statement intended to implement that decision. *See Texas*, --- U.S. ---, 142 S. Ct. at 2545 (courts cannot "postulat[e] the existence of an agency decision wholly apart from any 'agency statement of general or particular applicability . . . designed to implement' that decision" (quoting 5 U.S.C. § 551(4))). That is because an agency's statement is in fact the "action" that the APA permits courts to review…. The Supreme Court's language applies with equal force in this case… Accordingly, Plaintiffs' APA claims related to the NTR policy are reviewable, but to the extent Plaintiffs attempt to challenge amorphous parole policies, those APA claims must be dismissed.

ECF 219 at 16.

Because the Court has already ruled upon the impropriety of Plaintiff's "amorphous" "general policy claims," it should not permit Plaintiff to reassert those claims now. *Planned Parenthood v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (The goal of Rule 15(d) is to "promote judicial efficiency."); *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725–26 (9th Cir.2000) ("A district court acts within its discretion to deny leave to amend when amendment would be futile[.]"); *Erskine v. Fenn*, No. CV-20-08123-PCT-JJT, 2021 WL 321892, at *5 (D. Ariz. Feb. 1, 2021), *aff'd,* No. 21-15373, 2022 WL 260872 (9th Cir. Jan. 27, 2022) (denying "Plaintiff's motion to supplement the pleadings under Fed. R. Civ. P 15(d) because any supplemental filing would be futile."). Here, the Court's decision dismissing Plaintiff's "general policy claims" was based upon a ruling from the Supreme Court, and thus, Plaintiff's continued attempt to allege "general policy claims untethered to a specific agency statement," ECF No. 219, at 23, should be denied as futile.

To persuade the Court otherwise, Plaintiff argues in its motion that "Defendants'

own Rule 30(b)(6) witness,[3] U.S. Border Patrol Chief Raul Ortiz" testified that "DHS often communicated policies about parole and detention by telephone and by email, rather than by issuing formal memos or official guidance." ECF No. 234 at 5. And in the proposed supplemental pleading, Plaintiff alleges that "Chief Ortiz made a number of admissions in his deposition that provide concrete evidence confirming . . . the existence of the Parole and Non-Detention Policies." ECF 234-1 ¶ 25. Plaintiff contends that Chief Ortiz confirmed that "when the Biden Administration took office, the new Parole Policy was initially communicated telephonically or through e-mail coordination between Border Patrol headquarters and the sector." ECF. No. 234-1 at ¶ 27. But Plaintiff's argument in its motion, and allegations in its proposed supplemental pleading, are facially inaccurate, not to mention, misleading. Chief Ortiz testified that there were *internal* Customs and Border Protection ("CBP") emails and phone calls about *operations*, and the implementation of the *NTR and PATD policies*; he did not testify that DHS, or any policy maker, conveyed to CBP—via phone, email, or otherwise—that there was a "new Parole Policy" of "en masse parole and non-detention." *See Florida. v. United States*, No. 21-CV-1066 (N.D. Fla. 2021), ECF No. 78-3, at 176:8-10 ("[M]ost of the coordination" "between Border Patrol headquarters and the sector" "occurred either telephonically or through e-mail coordination."); *Id*. at 177:1-8 ("[W]e had a couple ways of communicating with the field components. Every Tuesday we have a chiefs' call where we coordinate directly with the sector chiefs and the deputy chiefs. And then the operations directorate would also communicate with the sectors if there were specific issues centered around coordination, operational coordination that had to happen."); *id.* at 198:9-12 ("[the NTR guidance] was sent out and distributed through multiple platforms. Initially we had a telephonic call with all the associate chiefs. We also asked that the operations directorate send out an e-mail.").

---

[3] Chief Ortiz's testimony to which Plaintiff cites in its proposed supplemental pleading (pages 173-176, 198, 212, and 224-225 of Chief Ortiz's testimony) was given in his personal capacity, not in his capacity as a Rule 30(b)(6) witness. *Florida. v. United States*, No. 21-CV-1066 (N.D. Fla. 2021), ECF No. 78-3, at 10 (Deposition of Raul Ortiz, Chief of the U.S. Border Patrol, "Ortiz Depo.")

To be clear, there is a marked difference between testimony that establishes the unremarkable fact that in the mid-Twenty-First century, CBP used telephone and email to facilitate communication about its daily operations and the implementation of written policies, and what Plaintiff alleges—that DHS communicated a "new Parole Policy" of "en masse parole and non-detention" via email and telephone. Chief Ortiz never testified to the latter.

Neither does a draft memo, titled "Notice to Report," authored sometime in June 2021 by former Chief of Border Patrol Rodney Scott relate to a "New Policy" of "en masse parole and non-detention" as Plaintiff claims. ECF No. 234-1 ¶¶ 16-19. Chief Scott's draft memo explicitly relates to the *NTR policy*.[4] And even if "the Chief of Border Patrol believed there was a preference to release migrants," as Plaintiff alleges, ECF No. 234-1 ¶ 19, Chief Scott's *beliefs* do not constitute a policy that is reviewable under the APA. *Texas*, 142 S. Ct. at 2545. Moreover, contrary to Plaintiff's allegation, the draft memo does not "set[] forth DHS's position," ECF No. 234-1 ¶ 17, about a policy of en masse parole and non-detention; it does not set forth DHS's position about anything. Chief Scott worked for CBP, not DHS, and the memo does not even mention DHS, let alone its positions. Rather, the memo is a draft of an internal CBP communication, concerning the NTR policy. The government became aware that the draft memo was inadvertently produced in FOIA litigation after counsel in the Florida parole litigation filed it as an exhibit to a motion to reopen discovery, *Florida. v. United States*, No. 21-CV-1066 (N.D. Fla. 2021), ECF No. 89-1. The government issued a clawback letter in the FOIA litigation. Exhibit A, hereto. Defense counsel in the Florida parole case opposed plaintiff's motion to reopen discovery based upon the draft memo, *see* 21-CV-1066 at ECF No. 92, and the Court in Florida denied the plaintiff's motion. *Id*. at ECF No. 94. In short, the Scott memo is a deliberative draft, that predates the TAC by many months, is privileged, is subject to a clawback letter,

---

[4] *Florida. v. United States*, No. 21-CV-1066 (N.D. Fla. 2021), ECF No. 89-1, "Subject: Notice to Report."

and does not even reference DHS—much less communicate DHS policy as to some amorphous "en masse parole and non-detention" policy. Indeed, the draft memo relates only to the NTR policy.[5]. This Court should not permit Plaintiff to supplement its pleading to make misleading allegations pertaining to the content of a privileged draft memo, in support of a legal theory the Court has already rejected

In short, this Court has already held that Plaintiff cannot challenge "broad, generalized agency policies in the abstract." ECF No. 219, at 16. There is no basis for the Court to reconsider its prior decision (nor has Plaintiff ever sought reconsideration). The Court should deny Plaintiff's motion to supplement its pleading to reassert a legal theory this Court has already rejected.

**(2) The Court should deny Plaintiff leave to supplement its pleading to add allegations pertaining to facts that predate the TAC, that are redundant of allegations in the TAC, are merely rhetoric, or are otherwise unnecessary.**

The Court should deny Plaintiff's motion to supplement its complaint to the extent it seeks to allege "transaction[s], occurrence[s] or event[s]," Fed.R.Civ.P. 15(d), that predate the operative complaint. *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010) (Rule 15(d) not available to add allegations pertaining to facts that existed before the complaint was filed.). Plaintiff filed the TAC in December 2021, ECF No. 134, but many of the allegations in the proposed supplemental pleading relate to events that allegedly occurred earlier. *See, e.g.*, ECF No. 234-1, at ¶ 1 (discussing President Trump's last month in office in 2020), ¶ 2 (making allegations based on articles from March and July 2021), ¶ 13 (allegations pertaining to alleged statements by President Biden in 2019 and citing an article from 2019). Supplementation to add these paragraphs is procedurally improper.

Other allegations are redundant of those already pleaded in the TAC. *Compare, e.g.,* TAC ¶¶ 139-140 (alleging the Biden administration reduced its own detention capacity)

---

[5] Defendants advised Plaintiff's counsel that Defendants would produce the final, circulated version of the Scott Memo, but additional investigation has determined that the Scott Memo was not finalized nor circulated.

*with* ECF No. 234-1 ¶¶ 8, 10 (same).

And many other paragraphs in the proposed supplemental pleading do not allege new facts at all—they are simply argument and rhetoric. *See, e.g.*, ECF 234-1 ¶ 1 ("The Southwest border is in crisis, with record numbers of migrants illegally entering our country."); ¶ 13 ("[T]his Administration's misguided—and frequently *unlawful*— policies are the cause of the surge at the border in the first place. The actions of the President, Secretary Mayorkas, and other Administration officials have made clear that the intent of the Administration's immigration policies is to incentivize illegal immigration."); ¶ 14 ("The Biden Administration continues to publicly tout its lax border policies.").

Similarly unnecessary, and procedurally improper, are those paragraphs of the proposed supplemental pleading pertinent to standing. *See e.g.* ECF No. 234-1 ¶ 32 ("The Non-Detention and Parole Policies harm Arizona."); ¶ 33 ("Arizona spends millions per year just on incarcerating aliens unlawfully present in the U.S. generally (and the State specifically), who commit crimes within Arizona's borders."); ¶ 36 ("The number of parolees in Arizona will cause quantifiable financial harm to the State, and the exact magnitude of those harms will become clear in discovery."). These paragraphs, and the others like them, are procedurally improper because they do not allege facts that post-date the TAC. Indeed, they do not allege facts at all; they are simply argument. They are also unnecessary because (i) they are redundant of the allegations in the TAC, *see, e.g.*, TAC ¶¶ 144-149, (ii) the Court already ruled that Plaintiff sufficiently pleaded standing, ECF No. 219, and (iii) under the Notice Pleading standard of Rule 8, and this Court's Case Management Order, ECF No. 231, Plaintiff can defend its position on standing at summary judgment without supplementing the pleading.

## Conclusion

At its core, the proposed supplemental complaint seeks to do that which this Court already held Plaintiff cannot—assert a "general policy claim," "untethered to a specific agency statement" (ECF No. 219, at 23) that "that the federal government has an unlawful

policy of failing to detain aliens who have illegally entered the United States and also has an unlawful policy of programmatically granting parole en masse to such aliens." ECF No. 234, at 2. The Court should deny Plaintiff's motion on this basis.

The Court should also deny Plaintiff permission to supplement the TAC to allege facts that predate the TAC, are redundant of the allegations in the TAC, are mere rhetoric, or are unnecessary. According, the Court should issue an order denying Plaintiff's motion to supplement the TAC as drafted, and instead grant the motion only as limited to paragraphs 3-4, 6 (only the last sentence), 12, 20-24, 44 (only the last sentence), 45 (only the last sentence), and 49-62.

Dated:  November 25, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

WILLIAM C. PEACHEY
Director

EREZ REUVENI
Assistant Director

*/s/ Elissa Fudim*
ELISSA FUDIM
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation,
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 598-6073
Email: elissa.p.fudim@usdoj.gov

*Counsel for Defendants*