**MARK BRNOVICH**
**ATTORNEY GENERAL**
(Firm State Bar No. 14000)

Joseph A. Kanefield (No. 15838)
Drew C. Ensign (No. 25463)
James K. Rogers (No. 27287)
2005 N. Central Ave
Phoenix, AZ 85004-1592
Phone: (602) 542-8540
Joseph.Kanefield@azag.gov
Drew.Ensign@azag.gov
James.Rogers@azag.gov

*Attorneys for Plaintiffs Mark Brnovich*
*and the State of Arizona*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Mark Brnovich, in his official capacity as Attorney General of Arizona; *et al.*,<br><br>                    Plaintiffs,<br>     v.<br>Joseph R. Biden in his official capacity as President of the United States; *et al.*,<br><br>                    Defendants. | No. 2:21-cv-01568-MTL<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO SUPPLEMENT THE PLEADINGS** |

# INTRODUCTION

Rather than cite to any governing standard that might defeat the State's Motion for Leave to Supplement the Pleadings, or claim that they will suffer any actual prejudice, Defendants instead resort to inuendo and mischaracterizations of the State's Proposed Supplemental Pleading. However, contrary to Defendants' claims, the State does not seek to re-litigate this Court's dismissal of any generalized claims about parole and non-detention policies. Rather, the Proposed Supplemental Pleading makes allegations based on under-oath admissions of Defendant Border Patrol Chief Raul Ortiz that he made when testifying as Defendants' own 30(b)(6) witness in another case, which were never previously considered by this Court—the justiciability of which was thus incontestably not adjudicated by this Court previously. And in that testimony, Chief Ortiz admitted that Defendants make policy by telephone and email, and not merely formal memoranda. The contours and details of those policies will become clearer during discovery in this case, and the State should be allowed to challenge them. But such policies are not immunized from review simply because Defendants have carefully avoided committing them to formal writings (or writing at all). Furthermore, none of the State's allegations in the Proposed Supplemental Pleading are procedurally improper.

"The five factors commonly used to evaluate the propriety of a motion for leave to ... to supplement are: (1) undue delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure of previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. Absent prejudice or a 'strong showing' of any other *Foman* factor, there is a presumption in favor of granting leave to supplement." *Lyon v. USCIS*, 308 F.R.D. 203, 214 (N.D. Cal. 2015). Defendants did not even argue prejudice, and none of the other *Foman* factors apply here. The State's Motion should therefore be granted and the State should be given leave to file its Proposed Supplemental Pleading *in toto*.

# ARGUMENT

"The clear weight of authority ... in both the cases and the commentary, permits the bringing of new claims in a supplemental complaint to promote the economical and speedy

disposition of the controversy.... The purpose of Rule 15(d) is to promote as complete an adjudication of the dispute between the parties as possible by allowing the addition of claims which arise after the initial pleadings are filed." *Keith v. Volpe*, 858 F.2d 467, 473–74 (9th Cir. 1988) (cleaned up).

The State's Proposed Supplemental Pleading amply fulfills the purposes of Rule 15(d), and leave to supplement should therefore be granted. Indeed, "[i]n the Ninth Circuit, motions to amend under Rule 15(d) should be granted liberally." *Ctr. for Biological Diversity v. Provencio*, No. CV-10-330, 2014 WL 12771122, at *1 (D. Ariz. Jan. 14, 2014).

"Rule 15(d) permits a supplemental pleading to ... circumvent[] 'the needless formality and expense of instituting a new action when events occurring after the original filing indicated a right to relief.'" *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1044 (9th Cir. 2015), as amended (Apr. 28, 2015) (quoting Wright & Miller, § 1505). "One of the basic policies of the rules ... is that a party should be given every opportunity to join in one lawsuit all grievances against another party regardless of when they arose… Moreover, the usual effect of denying leave to file a supplemental pleading ... is to force plaintiff to institute another action and move for consolidation under Rule 42(a) in order to litigate both claims in the same suit, a wasteful and inefficient result." Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1506 (3d ed.).

That is precisely the case here. Denying the State's Motion for Leave would create unnecessary inefficiency. Defendants never argue that the allegations of the Proposed Supplemental Pleading are unrelated to those here. There is thus no reason they cannot be resolved here. If leave is denied, then the State will need to file a separate action and then file a motion to transfer and/or consolidate. This would be an inefficient and unnecessary waste of the State's, the Federal Government's, and this Court's resources. Indeed, it would serve little purpose other than to aggrandize the filing fees collected by the Clerk's office.

**I.   The State Should Be Allowed to Challenge Specific Decisions Made by Defendants in Violation by of the APA that Were Made By Telephone or Email.**

Defendants argue that the State's Proposed Supplemental Pleading would be "futile," by mischaracterizing it as an attempt to revive "amorphous general policy claims" dismissed

by this Court. Opp. at 4 (cleaned up). Not so. The State does not seek reconsideration of this Court's determination that "to the extent Plaintiffs attempt to challenge amorphous parole policies, those APA claims must be dismissed." (Doc. 219 at 17.) While Defendants repeatedly point to this aspect of this Court's Order, they are selectively quoting it. This Court also stated that it *was* appropriate for the State to challenge "specific agency decision[s] or document[s]." *Id.* at 16. And making allegations about specific agency decisions is the only thing that the Proposed Supplemental Pleading seeks to do.[1] Specifically, the Proposed Supplemental Pleading relies on Chief Ortiz's statements, made under oath as DHS's own 30(b)(6) witness, in which he admits that many aspects of the Federal Government's parole and non-detention policies were made through telephone calls and informal emails, rather than through formal memoranda.

Chief Ortiz's testimony appears to establish that DHS has been circumventing the APA by avoiding the creation of a paper trail about its parole and non-detention policies. Based on Chief Ortiz's testimony, it appears that the July Memo, the November Memo, and the Scott Memo are only the tip of the iceberg as to the Federal Government's parole and non-detention policies. Discovery in this case will almost certainly reveal more.

Defendants, apparently, were not expecting Chief Ortiz to be so forthcoming and candid in his testimony. The State's Proposed Supplemental Pleading does not seek to challenge an "amorphous" policy, but rather, to challenge *all* aspects of Defendants' "specific decisions" as implemented in telephone calls, emails, and as-yet unproduced memos (such as the Scott Memo). None of this is hypothetical or amorphous—Chief Ortiz testified that such phone calls *were* made and that such emails *do* exist. DHS itself produced (accidentally) a draft of the Scott Memo.

Defendants' opposition to the State's Proposed Supplemental Pleading appears to be nothing more than damage control targeted at artificially limiting the State's ability to discover

---

[1] Indeed, the State explained this in its Motion for Leave (at 5-6): "The State is not making allegations about the Non-Detention and Parole Policies to attempt a do-over of the Motion to Dismiss briefing, but because the federal government's own witness, who is a defendant in this case, made crucial and highly relevant admissions under oath about the Policy and how it is communicated by telephone or outside of official channels," yet Defendants ignored entirely the State's argument in this regard.

3

and challenge the full scope of Defendant's hidden parole and non-detention policies. Defendants' attempt to hide their clandestine policy-making is hardly a basis for denying supplementation.

The State recognizes that it cannot make only generalized allegations about undefined policies. However, the Federal Government should not be allowed to escape review of its unlawful actions just because it intentionally refused to commit its decisions to writing in formal memoranda and instead communicated them only through telephone or email. The State should be able to inquire into the content of those phone calls and emails and challenge any "specific decisions" taken via phone or email that violate the APA.

### A. Defendants' Characterization of the Ortiz Testimony and Scott Memo Are Irrelevant at This Stage of the Proceedings

Defendants next argue (at 6) against supplementation by offering their own interpretation of the Ortiz Testimony as being merely about "operations" and policy "implementation." Defendants are free to make those arguments at trial, but they are procedurally inappropriate now. "Courts generally do not examine the substantive merits of the supplemental pleading at the time leave is requested, and ... inquiry into the merits [is] irrelevant to the question whether to allow the pleading." Wright and Miller, 6A Fed. Prac. & Proc. Civ. § 1510 (3d ed.).

Thus, at this stage "the allegations in the [pleading] are taken as true and construed in the light most favorable to the" Plaintiff. *San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 568 (9th Cir. 2019) (reversing district court's denial of leave to amend complaint); *Acosta v. Austin Elec. Servs. LLC*, 325 F.R.D. 325, 330 (D. Ariz. 2018) (explaining that "the standard for Rule 15(d) supplementation and Rule 15(a) amendment are the same"). Defendants' instant efforts to characterize the allegations of the Proposed Supplemental Pleading in the light most favorable to themselves is thus unavailing—and indeed a complete inversion of the proper standard of review. For purposes of this motion, this Court must accept as true the State's well-pleaded and plausible allegation that the Ortiz testimony was referring to policymaking and not mere policy implementation.

Furthermore, Chief Ortiz was testifying as the Federal Government's *own 30(b)(6)*

*witness*. Defendants cannot now attempt to argue that Chief Ortis did not really mean to say what he said. His admissions are party admissions that are binding on Defendants.

As to the Scott Memo, Defendants contend (at 6) that it merely contains the opinions of Rodney S. Scott. However, at the time the Scott Memo was drafted, Mr. Scott was *Chief of the U.S. Border Patrol.* And the Scott Memo has all the indicia of being a draft of an official agency action. Indeed, Defendants have already offered to "provide the final 'Scott Memo' in the record for this case." Mot. at 4. And tellingly, Defendants have never claimed that the final version of the Memorandum says anything substantively different than the draft version that they already produced. There is every reason to believe that the final version of the memo will evince the same "preference to release migrants" as stated in the draft memo. (Doc. 234-1 ¶ 19.) And Defendants can hardly argue with a straight face that a final draft of an official agency memo is merely stating the personal "beliefs" of the drafter.

Furthermore, Defendants make the puzzling argument (at 6) that the Scott Memo "does not set forth DHS's position about anything" because "Chief Scott worked for CBP, not DHS." CBP, however, is a component agency *of DHS*. Chief Scott, therefore, quite literally *did* work for DHS. And Defendants' point here is irrelevant in any case, as CBP itself is a party to this case because the State has named as a Defendant in this action Troy Miller in his official capacity as Senior Official Performing the Duties of the Commissioner of CBP.

## II. None of the Allegations of the Proposed Supplemental Pleading Are Procedurally Improper

Courts should "liberally construe Rule 15(d) absent a showing of prejudice to the defendant." *Keith*, 858 F.2d at 475. Thus, courts should not engage in "[a] strict interpretation of Rule 15(d) [that] would emphasize the formality of pleading over substance." *Id.* (citation omitted). However, the last third of Defendants' Opposition is dedicated to doing exactly the opposite—exalting form over substance. And even just looking at form, rather than at substance, as they urge this Court to do, their arguments still fail.

Defendants claim (at 7) that "many of the allegations in the proposed supplemental pleading relate to events that allegedly occurred earlier," and argue that they are therefore "procedurally improper." In spite of their rhetoric about the Proposed Supplemental Pleading

5

containing "many" such improper allegations, Defendants actually only cite three: 1) a reference in Paragraph One to the number of parole grants during President Trump's last full month in office; 2) allegations in Paragraph Two "based on articles from March and July 2021"; and 3) allegations in Paragraph 13 "pertaining to alleged statements by President Biden in 2019 and citing an article from 2019." (at. 7.)

None of these examples has any merit.

*First*, the operative complaint, the Third Amended Complaint (Doc. 134 "TAC"), makes the exact same allegation about the number of parole grants in President Trump's last full month in office—that only 17 grants were made for the whole month. (*Compare* TAC ¶ 131 *with* Doc. 234-1 ¶ 1.) The *rest* of Paragraph One, however, goes on to allege that "[i]n September 2022, President Biden's Border Patrol released 104,957" aliens by parole. (Doc. 234-1 ¶ 1.) It beggars belief that Defendants would characterize as improper the State's mention of this statistic—a statistic that *is in the TAC* and that has been cited numerous other times in this case (*e.g.* Doc. 167 at 1)—and that, when read in context, is clearly being cited for purposes of comparison with facts that occurred after the filing of the TAC. And thus, Paragraph One demonstrates that, since the State filed the TAC, the Administration has grown even more brazen in its application of the unlawful Parole and Non-Detention Policies—the monthly number of aliens whom the Federal Government is paroling into the United States has increased by 6,174 times, or by an astounding 617,400%, from December 2020 to September 2022.

*Second*, Defendants take issue with the State's citation of two articles in Paragraph Two that are from March and July 2021. But once again, those articles were also cited in the TAC. (TAC ¶¶ 117, 133.) And those articles are cited for an entirely legitimate and proper purpose—to set the stage for the allegations in Paragraph Three about the Administration's continued (post-TAC) lawless behavior.

*Third*, the allegations in Paragraph 13 (which are about the Biden Administration's history of incentivizing illegal immigration) provide necessary context for the allegations of Paragraph 14, which contains allegations about public comments by Secretary Mayorkas from

January 2022 (post-TAC) about the Administration's intentionally lax border policies.

And even if this Court were to credit Defendants' arguments about the Proposed Supplemental Pleading containing allegations that predate the TAC, Defendants would essentially be arguing merely that the Proposed Supplemental Pleading should be treated as an amended complaint under 15(a). This is a distinction without a difference. "Parties and courts occasionally confuse supplemental pleadings with amended pleadings and mislabeling is common. These misnomers are not of any significance, however, and they do not prevent the court from considering a motion to amend or supplement under the proper portion of Rule 15. Indeed, the distinction between amended and supplemental pleadings is sometimes ignored completely. Inasmuch as the discretion exercised by the court in deciding whether to grant leave to amend is similar to that exercised on a motion for leave to file a supplemental pleading, the court's inattention to the formal distinction between amendment and supplementation is of no consequence." Wright & Miller, § 1504. It is for this reason that the Ninth Circuit has held that Rule 15(d) should be applied "to minimize technical obstacles to a determination of the controversy on its merits." *U. S. for Use of Atkins v. Reiten*, 313 F.2d 673, 675 (9th Cir. 1963).

Defendants then argue (at 8) that others of the State's allegations are "simply argument and rhetoric," but Defendants cite to no authority that holds that a plaintiff's supplemental pleading may not contain argument and rhetoric. By Defendants' conjured no-argument-or-rhetoric-allowed standard, nearly every complaint filed in federal court would be improper. There is no basis to deny supplementation because Defendants disagree with the State's rhetorical choices.

Defendants similarly argue that the supplemental pleading is improper because it makes additional standing allegations that the Defendants believe are "redundant" because this Court denied Defendants' standing arguments in their Motion to Dismiss. However, "a plaintiff who employs a supplemental pleading ... is not bound by the original theory of relief, but may assert new facts in support of an entirely different legal theory or remedy." Wright & Miller, § 1505. It was thus entirely appropriate for the State to make new standing allegations in its Proposed

Supplemental Pleading.

Moreover, just because the State survived a standing challenge during the motion to dismiss stage does not mean that the State will not face an additional standing challenge at the dispositive motion stage or at trial. The State's additional standing allegations are therefore not redundant. In the midst of their complaints about purportedly redundant standing arguments, Defendants did *not* commit to forgo any further challenges to standing in this case (or on appeal). Standing thus remains a live issue in this case, and the State's additional standing arguments are entirely proper.

## CONCLUSION

Thus, for the foregoing reasons, the State's Motion should be granted.

RESPECTFULLY SUBMITTED this 2nd day of December, 2022.

**MARK BRNOVICH**
**ATTORNEY GENERAL**

By: /s/ *James K. Rogers*
　　Joseph A. Kanefield (No. 15838)
　　Drew C. Ensign (No. 25463)
　　James K. Rogers (No. 27287)

*Attorneys for Plaintiffs Mark Brnovich and the State of Arizona*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of December, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Arizona using the CM/ECF filing system. Counsel for all Defendants who have appeared are registered CM/ECF users and will be served by the CM/ECF system pursuant to the notice of electronic filing.

　　　　　　　　　　　　　　　　　　　　/s/ *James K. Rogers*
　　　　　　　　　　　　　　　　　　　　*Attorney for Plaintiffs Mark Brnovich, in his official capacity as Attorney General of Arizona; and the State of Arizona*